| DATE | | DESCRIPTION | QTY | RATE | TOTAL |
|---|---|---|---|---|---|
| | | monthly retainer (prorated) | | | |
| 11 21 2020 | Virtual Nurse Observers | Virtual Nurse Observers for COVID testing (billed monthly - prorated) | 126 | 41.50 | 5,229.00 |
| 11 23 2020 | COVID IIPP | COVID IIPP | 1 | 2,750.00 | 2,750.00 |
| 11 29 2020 | Kwamane Liddell | Consultancy: COVID IIPP, AED, OHN, CLIA lab, reasonable suspicion, respiratory care plan, biosafety plan | 1 | 7,440.00 | 7,440.00 |
| 11 30 2020 | Britt Stillwell | consultancy (complimentary) | 10 | 0.00 | 0.00 |
| 11 30 2020 | Britt Stillwell | consultancy - discounted rate | 57.50 | 175.00 | 10,062.50 |
| 12 01 2020 | Dr. Xie - lab director | Lab director monthly retainer | 1 | 1,500.00 | 1,500.00 |
| 12 01 2020 | Dr. Rene Hinton - medical director | medical director monthly retainer | 1 | 1,500.00 | 1,500.00 |
| 12 01 2020 | FN COVID lab supervisors (PhD and PharmD) | FN COVID lab supervisors (Dr. Cruzen, PhD and Dr. Scott, PharmD - billed monthly) | 540 | 50.00 | 27,000.00 |
| 12 01 2020 | Virtual Nurse Observers | Virtual Nurse Observers for COVID testing (billed monthly) | 540 | 41.50 | 22,410.00 |
| 12 02 2020 | LG Consulting | AED program consultant: AHA CPR & 1st aid training program at FN, negotiated fees attached | 1 | 750.00 | 750.00 |
| 12 19 2020 | Steve Connor | OHN consultant | 8 | 55.00 | 440.00 |
| 12 19 2020 | Britt Stillwell | consultancy - discounted rate | 30 | 175.00 | 5,250.00 |

ONH & COVID lab fees 7 2020 - 12 19 2020

Consulting Discounts

*Complimentary consulting - 10hrs mo from 7 2020 - 11 2020

| | |
|---|---|
| SUBTOTAL | 95,201.15 |
| TAX | 35.63 |
| TOTAL | 95,236.78 |
| PAYMENT | $1,937.38 |

*Discounted consultant rate (Britt Stillwell) rate discounted from $300 hr to $175/hr

BALANCE DUE                    $55,179.20

LINE 6: WorkCare Invoice Attached

LINE 7: WorkCare Invoice Attached

LINE 8: Invoice Attached

LINE 9: Invoice Attached

LINE 10: Invoice Attached

LINE 11: Invoice Attached - 8 RNs hired and trained for FN COVID lab - FN billed for (8) nurses covering 18hours of testing, 7 days week (18hours* 7 days * 8RNs = 320 hrs) RNs were scheduled to work 9hours shifts, per client request

LINE 16: Invoice Attached

LINE 17: Invoice Attached

LINE 18: Invoice Attached

LINE 19: Invoice Attached

12 31 2020 Payment of $40,057.58 applied to this invoice

Compliant Care Staffing
1055 W 7th Street, 33rd Floor
Los Angeles, CA 90017
+1 7472712100
billing@thecompliancefirm.com
www.thecompliancefirm.com


Compliant Care
Staffing

# INVOICE

**BILL TO**

FN Logistics, Inc.
12588 Florence Avenue
Santa Fe Springs, CA 90670
USA

**INVOICE #** 1040
**DATE** 12 28 2020
**DUE DATE** 01 12 2021
**TERMS** Net 15

**PMT METHOD**
Cash

| WEEK END DATE | EMPLOYEE | DESCRIPTION | LABOR TYPE | HRS | RATE | TOTAL |
|---|---|---|---|---|---|---|
| 12 26 2020 | iPad for virtual observer | iPad for virtual observer | | 4 | 400.00 | 1,600.00T |
| 12 26 2020 | Verizon - Internet | Verizon - Internet | | 1 | 656.97 | 656.97T |
| 12 26 2020 | Steve Connor | Employee Health Specialist | | 20 | 0 00 | 0 00 |
| 12 26 2020 | Britt Stillwell | consultancy - discounted rate | | 33.50 | 175.00 | 5,862.50 |
| 12 26 2020 | EHR - build out / implementation | EHR - build out implementation | | 1 | 10,000.00 | 10,000.00 |
| 12 26 2020 | Virtual Monitoring System | Virtual Monitoring System | | 1 | 300.00 | 300.00T |

COVID lab fees weekending 12 26 2020

*Discounted consultant rate (Britt Stillwell) rate discounted to $175 hr

LINE 3: Steve Connor - Employee Health Specialist, complimentary - no fee charged

DEPOSIT APPLIED: $2,400 deposit from Invoice 1022 applied. Deposit balance: $12,000

DEPOSIT APPLIED: $5,000 deposit from Invoice 1029 applied. Deposit balance: $65,000

| | |
|---|---|
| SUBTOTAL | 18,419.47 |
| TAX | 242.91 |
| TOTAL | 18,662.38 |
| DEPOSIT | 7,400.00 |
| BALANCE DUE | **$11,262.38** |

Compliant Care Staffing
1055 W 7th Street, 33rd Floor
Los Angeles, CA  90017
+1 7472712100
billing@thecompliancefirm.com
www.thecompliancefirm.com

 Compliant Care
Staffing

# INVOICE

**BILL TO**

FN Logistics, Inc.
12588 Florence Avenue
Santa Fe Springs, CA  90670
USA

**INVOICE #**  1043
**DATE**  01 04 2021
**DUE DATE**  01 19 2021
**TERMS**  Net 15

**PMT METHOD**
Cash

| WEEK END DATE | EMPLOYEE | DESCRIPTION | LABOR TYPE | HRS | RATE | TOTAL |
|---|---|---|---|---|---|---|
| 01 01 2021 | FN COVID lab supervisors (PhD and PharmD) | FN COVID lab supervisors (PhD and PharmD (billed monthly) | | 540 | 50.00 | 27,000.00 |
| 01 02 2021 | Dr. Xie - lab director | Lab director monthly retainer | | 1 | 1,500.00 | 1,500.00 |
| 01 02 2021 | Dr. Rene Hinton - medical director | medical director monthly retainer | | 1 | 1,500.00 | 1,500.00 |
| 01 02 2021 | Virtual Nurse Observers | Virtual Nurse Observers for COVID testing | | 540 | 41.50 | 22,410.00 |
| 01 02 2021 | Steve Connor | Employee Health Specialist | | 20 | 55.00 | 1,100.00 |
| 01 02 2021 | Britt Stillwell | consultancy - discounted rate | | 11.50 | 175.00 | 2,012.50 |
| 01 02 2021 | FN COVID lab technicians (LVN) | FN COVID lab technicians (LVNs) | | 160 | 50.00 | 8,000.00 |

COVID lab fees weekending 01 02 2020

LINES 1-4 services billed monthly - invoice attached

LINE 4: Discounted consultant rate (Britt Stillwell) rate discounted from
$300/hr to $175/hr

LINE 7 - 20 LVN techs hired and trained 8hrs  for FN COVID lab but unable
to work the new 3pm - 3am schedule that was changed with less than 24hours
notice on 12 29 2020.

DEPOSIT APPLIED: $34,352.00 deposit from Invoice 1029 applied. Deposit

| | |
|---|---|
| TOTAL | 63,522.50 |
| DEPOSIT | 34,352.00 |
| BALANCE DUE | **$29,170.50** |

Compliant Care Staffing
1055 W 7th Street, 33rd Floor
Los Angeles, CA 90017
+1 7472712100
billing@thecompliancefirm.com
www.thecompliancefirm.com

 Compliant Care
Staffing

# INVOICE

**BILL TO**

FN Logistics, Inc.
12588 Florence Avenue
Santa Fe Springs, CA 90670
USA

**INVOICE #** 1045
**DATE** 01 11 2021
**DUE DATE** 01 26 2021
**TERMS** Net 15

**PMT METHOD**
Cash

| WEEK END DATE | EMPLOYEE | DESCRIPTION | LABOR TYPE | HRS | RATE | TOTAL |
|---|---|---|---|---|---|---|
| 12 29 2020 | FN COVID lab technicians (LVN) | FN COVID lab technicians (LVNs) | | 160 | 50.00 | 8,000.00 |
| 01 09 2021 | Steve Connor | Employee Health Specialist | | 15 | 55.00 | 825.00 |
| 01 09 2021 | Britt Stillwell | consultancy - discounted rate | | 25 | 175.00 | 4,375.00 |
| 01 09 2021 | FN COVID lab technicians (LVN) | FN COVID lab technicians (LVNs) | | 256 | 50.00 | 12,800.00 |

COVID lab fees weekending 01 09 2020

LINE 2: Discounted consultant rate (Britt Stillwell) rate discounted from $300/hr to $175/hr

LINE 3 - on 1 3 21 - 8 new lab techs hired and trained 8hrs to work the new 3pm - 3am schedule; from 1 3 21 - 1 6 21, the techs worked 32hrs (8techs * 32hrs = 256hrs)

LINE 4 - 20 LVN techs hired and trained 8hrs for FN COVID lab but unable to work the new 3pm - 3am schedule that was changed with less than 24hours notice on 12 29 2020.

DEPOSIT APPLIED: $22,199.57 deposit from Invoice 1029 applied. Deposit balance: $0.00

| | |
|---|---|
| TOTAL | 26,000.00 |
| DEPOSIT | 22,199.57 |
| BALANCE DUE | **$3,800.43** |

## CERTIFICATE OF SERVICE BY MAIL

1

2       I am a citizen of the United States and employed in Los Angeles County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 300 S. Grand Avenue, Suite 4100, Los Angeles, CA 90071-3151.  I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service.  On July 14, 2021, I placed with this firm at the above address for deposit with the United States Postal Service a true and correct copy of the within document(s):

### APPLICATION FOR DEFAULT JUDGMENT BY CLERK; PROPOSED JUDGMENT

in a sealed envelope, postage fully paid, addressed as follows:

> The Compliance Firm LLC d/b/a
> Compliant Care Staffing
> Authorized Agent
> 1267 Willis Street, Ste. 200
> Redding, CA  96001

       Following ordinary business practices, the envelope was sealed and placed for collection and mailing on this date, and would, in the ordinary course of business, be deposited with the United States Postal Service on this date.

       I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 14, 2021, at Los Angeles, California.


_Heidi Gutierrez_

PROOF OF SERVICE

1　Staci Jennifer Riordan (Bar No. 232659)
　　　sriordan@nixonpeabody.com
2　Aaron M. Brian (Bar No. 213191)
　　　abrian@nixonpeabody.com
3　Harsh P. Parikh (Bar No. 281402)
　　　hparikh@nixonpeabody.com
4　NIXON PEABODY LLP
　　300 South Grand Avenue, Suite 4100
5　Los Angeles, CA 90071
　　Tel: (213) 629-6000
6　Fax: (213) 629-6001

7　Attorneys for Plaintiff
　　FN LOGISTICS, LLC.
8

9　　　　　　　　UNITED STATES DISTRICT COURT

10　　　　　　　CENTRAL DISTRICT OF CALIFORNIA

11

12　FN LOGISTICS, LLC　　　　　　Case No. 2:21-cv-03312-GW-MAR

13　　　　　　Plaintiff,　　　　　　**[PROPOSED] DEFAULT JUDGMENT**

14　　　vs.

15　THE COMPLIANCE FIRM LLC
　　d/b/a/ COMPLIANT CARE
16　STAFFING; and DOES 1 through 10,

17　　　　　Defendants.

18

19　　　　Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, and based on

20　the application and declarations submitted by Plaintiff FN LOGISTICS, LLC

21　("Plaintiff"), judgment is hereby entered in favor of Plaintiff and against Defendant

22　THE COMPLIANCE FIRM LLC d/b/a/ COMPLIANT CARE STAFFING

23　("Defendant") in the amount of $363,260.35.

24　Dated this ___ day of _____, 2021.
25

26

27　　　　　　　　　　　　　　　　　　Clerk of Court

28

# EXHIBIT V

Staci Jennifer Riordan (Bar No. 232659)
 sriordan@nixonpeabody.com
Aaron M. Brian (Bar No. 213191)
 abrian@nixonpeabody.com
Harsh P. Parikh (Bar No. 281402)
 hparikh@nixonpeabody.com
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071
Tel: (213) 629-6000
Fax: (213) 629-6001

Attorneys for Plaintiff
FN LOGISTICS, LLC.

**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FN LOGISTICS, LLC<br><br>Plaintiff,<br><br>vs.<br><br>THE COMPLIANCE FIRM LLC<br>d/b/a/ COMPLIANT CARE<br>STAFFING; and DOES 1 through 10,<br><br>Defendants. | Case No. 2:21-cv-03312-GW-MARx<br><br>**DEFAULT JUDGMENT** |

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, and based on the application and declarations submitted by Plaintiff FN LOGISTICS, LLC ("Plaintiff"), judgment is hereby entered in favor of Plaintiff and against Defendant THE COMPLIANCE FIRM LLC d/b/a/ COMPLIANT CARE STAFFING ("Defendant") in the amount of $363,260.35.

Dated this 15th day of ___July___, 2021.

*Margo Mead*
Deputy Clerk, Margo Mead

[PROPOSED] JUDGMENT
CASE NO. 2:21-cv-03312-GW-MAR

# EXHIBIT W

Query   **Reports** ⌄   **Utilities** ⌄   Help   Log Out

ACCO,(MARx),CLOSED,DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
# CIVIL DOCKET FOR CASE #: 2:21-cv-03312-GW-MAR

FN Logistics, LLC v. The Compliance Firm LLC
Assigned to: Judge George H. Wu
Referred to: Magistrate Judge Margo A. Rocconi
Demand: $503,000
Cause: 28:1332 Diversity-Other Contract

Date Filed: 04/16/2021
Date Terminated: 07/15/2021
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**FN Logistics, LLC**                    represented by   **Staci Jennifer Riordan**
Nixon Peabody LLP
300 South Grand Avenue Suite 4100
Los Angeles, CA 90071
213-629-6000
Fax: 213-629-6001
Email: sriordan@nixonpeabody.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aaron M Brian**
Nixon Peabody LLP
300 South Grand Avenue Suite 4100
Los Angeles, CA 90071
213-629-6000
Fax: 213-629-6001
Email: abrian@nixonpeabody.com
*ATTORNEY TO BE NOTICED*

**Harsh P Parikh**
Nixon Peabody LLP
300 South Grand Avenue Suite 4100
Los Angeles, CA 90071
213-629-6000
Fax: 213-629-6001
Email: hparikh@nixonpeabody.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**The Compliance Firm LLC**
*doing business as*
Compliant Care Staffing

**Defendant**

**Does**
*1 through 10*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/16/2021 | 1 | COMPLAINT Receipt No: ACACDC-31131531 - Fee: $402, filed by Plaintiff FN LOGISTICS, LLC. (Attorney Staci Jennifer Riordan added to party FN LOGISTICS, LLC(pty:pla))(Riordan, Staci) (Entered: 04/16/2021) |
| 04/16/2021 | 2 | CIVIL COVER SHEET filed by Plaintiff FN LOGISTICS, LLC. (Riordan, Staci) (Entered: 04/16/2021) |
| 04/16/2021 | 3 | NOTICE of Interested Parties filed by Plaintiff FN LOGISTICS, LLC, identifying FN Logistics, LLC; The Compliance Firm LLC; Brittany Ann Stillwell. (Riordan, Staci) (Entered: 04/16/2021) |
| 04/16/2021 | 4 | Request for Clerk to Issue Summons on Certificate/Notice of Interested Parties 3 , Complaint (Attorney Civil Case Opening) 1 , Civil Cover Sheet (CV-71) 2 filed by Plaintiff FN LOGISTICS, LLC. (Riordan, Staci) (Entered: 04/16/2021) |
| 04/16/2021 | 5 | NOTICE OF ASSIGNMENT to District Judge George H. Wu and Magistrate Judge Margo A. Rocconi. (lh) (Entered: 04/16/2021) |
| 04/16/2021 | 6 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (lh) (Entered: 04/16/2021) |
| 04/16/2021 | 7 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendant The Compliance Firm LLC. (lh) (Entered: 04/16/2021) |
| 04/19/2021 | 8 | STANDING ORDER RE FINAL PRE-TRIAL CONFERENCES FOR CIVIL JURY TRIALS by Judge George H. Wu, (lc) (Entered: 04/19/2021) |
| 04/22/2021 | 9 | PROOF OF SERVICE Executed by Plaintiff FN Logistics, LLC, upon Defendant The Compliance Firm LLC served on 4/19/2021, answer due 5/10/2021. Service of the Summons and Complaint were executed upon McKayla Sides, Registered Agent in compliance with Federal Rules of Civil Procedure by personal service.Original Summons returned. (Brian, Aaron) (Entered: 04/22/2021) |
| 06/14/2021 | 10 | REQUEST for Clerk to Enter Default against defendant The Compliance Firm LLC filed by Plaintiff FN Logistics, LLC. (Riordan, Staci) (Entered: 06/14/2021) |
| 06/14/2021 | 11 | DEFAULT BY CLERK F.R.Civ.P.55(a) as to The Compliance Firm LLC dba Compliant Care Staffing. (lom) (Entered: 06/14/2021) |

| 07/14/2021 | 12 | APPLICATION for Default Judgment against Defendant The Compliance Firm LLC d/b/a Compliant Care Staffing filed by Plaintiff FN Logistics, LLC. (Attachments: # 1 Exhibit A-C, # 2 Proposed Judgment, # 3 Certificate of Service) (Riordan, Staci) (Entered: 07/14/2021) |
| --- | --- | --- |
| 07/15/2021 | 13 | DEFAULT JUDGMENT by Clerk entered in favor of plaintiff FN Logistics, LLC against defendant The Compliance Firm LLC in the principal amount of $363,260.35, interest in the amount of $0.00, attorneys fees of $0.00, costs of $0.00 for a total judgment of $363,260.35. Related to: Clerks Entry of Default (CV-37) - optional html form 11 . MD JS-6, Case Terminated. (mrgo) (Entered: 07/15/2021) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| **Transaction Receipt** | | | |
| 08/27/2021 10:39:52 | | | |
| **PACER Login:** | bastillw | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:21-cv-03312-GW-MAR End date: 8/27/2021 |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

# EXHIBIT X

EEOC Form 161 (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Brittany Stillwell**<br>**1055 W 7th St, 33rd FL**<br>**c/o The Compliance Firm**<br>**Los Angeles, CA 90017** | From: | **Los Angeles District Office**<br>**255 E. Temple St. 4th Floor**<br>**Los Angeles, CA 90012** |
|---|---|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **480-2021-00039** | **Brandon Mancia,**<br>**Investigator** | **(213) 785-3014** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☒ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Garrett D. Hoover**   Digitally signed by Garrett D. Hoover
Date: 2021.08.18 14:45:48 -07'00'   For

**Rosa M. Viramontes,**
**District Director**

August 18, 2021

(Date Issued)

Enclosures(s)

cc:   **Erica Meierhans**
**General Counsel**
**FN LOGISTICS, INC./FASHIONNOVA INC.**
**2801 E 46th St, Legal Dept,**
**Vernon, CA 90058**

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS  --  Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you **receive** this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS  --  Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION  --  Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE  --  All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*



Enclosures(s)

cc:

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at** http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now include **the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➢ **Only one** major life activity need be substantially limited.

➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.   Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# EXHIBIT Y

registered agent number **26943**

lodging party or agent name **DEED DOT COM DOT AU PTY LTD**

address **PO BOX 7963**
**BAULKHAM HILLS NSW 2153**

DX no          DX location

Electronic lodgement

Document No. **1EUA47434**

Lodgement date/time 23/10/2020 17:14:47
Message trace no. 1352427126

Australian Securities and Investments Commission

form **201**

Application for
**registration as an Australian company**

Corporations Act 2001
117

## Application

I/We apply for registration of the company under the Corporations Act 2001, and nominate as the State or Territory in which the company will be taken to be registered.   NSW

## Proposed details of the company

Does the company have a proposed company name?   yes [X]   no [ ]

**if yes,** proposed company name   **FASHIONNOVA PTY LTD**

Name reservation number (if any)

**if no,** the company name on registration will be its Australian Company Number (ACN).
Legal elements to apply:

**Is the proposed name identical to a registered business name(s)?**   yes [ ]   no [X]   ABN

**if yes**, provide business name(s) registration details

**I DECLARE** that I own, or am registering the company for the owner(s) of the identical business name(s),the registration details of which are listed.

| type and class of company | type of company | class of company | sub class of company |
|---|---|---|---|
| | [X] proprietary company | [X] limited by shares | [ ] home unit proprietary company |
| | | [ ] unlimited with share capital | [ ] non profit proprietary company |
| | | | [X] proprietary company |
| | | | [ ] superannuation trustee prop |
| | [ ] public company | [ ] limited by shares | [ ] entitled to omit "LIMITED" under S.150 |
| | | [ ] limited by guarantee | [ ] unlisted public company - non profit |
| | | [ ] unlimited with share capital | [ ] non profit unlisted public & superannuation |
| | | [ ] no liability | [ ] unlisted public company |

[ ] I DECLARE that this company is a special purpose company as defined under Regulation 3 of the Corporations (Fees) Regulations 2003.

**governance of a public company**

Will the company rely entirely on replaceable rules?   yes [ ] **or**
Does the company have a constitution?   yes [ ]

**A proposed public company which has adopted a 'constitution' must lodge a copy of the constitution with this application**

If the proposed company is to be a public company **limited by guarantee**, state the amount of the guarantee that each member agrees to.

**The amount of the member's guarantee is: $**

**registered office**   **125 COCKATIEL CCT**
**GREEN VALLEY NSW 2168**

Does the company occupy these premises?   yes [X]   no [ ]

if no, name of occupier

[ ] *The occupier of the premises has consented in writing to the use of the specified address as the address of the registered office of the company and has not withdrawn that consent.*

page   1

**office hours**
(public company)

(a) ☐ Registered office is open to the public each business day from at least 10am to 12 noon and 2pm to 4pm

(b) ☐ Registered office is open to the public each business day for at least 3 hours between 9pm to 5pm

if (b), insert hours

**principal place of business**
**in Australia**

```
125 COCKATIEL CCT
GREEN VALLEY NSW 2168
```

---

**Ultimate Holding Company**

☐ Yes

Company Name

ACN/ARBN/ABN

Country of incorporation

☒ No

---

## Director and Secretary Details

name
address

```
AL SNEID, SAM
125 COCKATIEL CCT
GREEN VALLEY NSW 2168
```

birth details
office
office

```
10/01/1997 BAGHDAD IRAQ
DIRECTOR
SECRETARY
```

name
address

```
AL SNEID, ARAM MAZIN SH
308
3 GEORGE STREET
LIVERPOOL NSW 2170
```

birth details
office

```
27/07/1993 BAGHDAD IRAQ
DIRECTOR
```

**Share Structure Table**

| class code | title | total number issued | total amount paid | total amount unpaid |
|---|---|---|---|---|
| **ORD** | **ORDINARY** | **100** | **100.00** | **0.00** |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**Members**

| Members full name and address | class of share | No of shares taken up | Amount agreed to pay per share | total $ paid on these shares | amount unpaid per share | total $ unpaid on these shares | are shares fully paid | are shares beneficially owned |
|---|---|---|---|---|---|---|---|---|
| shareholding member name address | ORD AL SNEID, SAM 125 COCKATIEL CCT GREEN VALLEY NSW 2168 | 50 | 1.00 | 50.00 | 0.00 | 0.00 | Y | Y |
| | ORD AL SNEID, ARAM MAZIN SH 308 3 GEORGE STREET LIVERPOOL NSW 2170 | 50 | 1.00 | 50.00 | 0.00 | 0.00 | Y | Y |

## Shares issued other than for cash

For a public company that is limited by shares or is an unlimited company; will any shares be issued for a non-cash consideration?          yes ☐   no ☐

**If yes** and the issue of shares is not under a written contract, then attach to this application a **form 208** giving details of the prescribed particulars about the share issue; **OR,**

**If yes** and the shares will be issued under a written contract, then attach a copy of the contract to this application plus a **Form 207Z** certifying compliance with stamp duty law

## Details of the applicant

name of applicant   **ABICHANDANI, VANDNA**

address of applicant   **UNIT 4 287 VICTORIA ROAD**
**QUANTUM CORPORATE PARK**
**RYDALMERE NSW 2116**

I apply for the registration of a company on the basis of the information in this form and any attachments. I have the necessary consents and agreements referred to in this application concerning the members and officeholders and I shall give the consents and agreements to the company after the company becomes registered. The information provided in this application and in any annexures is true and correct at the time of signing.

## Signature

name   **ABICHANDANI, VANDNA**

capacity                    date  **23/10/2020**

page  3

# EXHIBIT Z

# Agenda Report

City Council

**Date:**     December 10, 2019

**To:**       Brian Saeki, City Manager

**From:**     Conal McNamara, Director of Community Development

**Subject:**  Approval of an Economic Development Subsidy Agreement, Pursuant to Government Code Section 53083, with UFF, LLC and Affiliates

## RECOMMENDATION

1) Approve an Economic Development Subsidy Agreement, entitled Operating Covenant Agreement, with UFF, LLC and Affiliates; and
2) Authorize the City Manager to execute the Operating Covenant Agreement with UFF, LLC in substantially the form provided.

## BACKGROUND

On April 23, 2019, the Council approved an agreement with Robert E. Cendejas and Associates for business development consulting. Staff was approached by Mr. Cendejas, a consultant who provides business development consulting services and who also is a tax attorney specializing in business development with large companies. He has consulting agreements with a number of other cities in California. After meeting with staff, he met with the Fiscal Sustainability Ad Hoc Committee, which recommended that staff bring a professional services agreement to the Council for consideration. Mr. Cendejas' role would augment the City's economic and business development functions by attracting larger corporations that are not readily approachable through the City's usual channels. As part of his consulting agreement, Mr. Cendejas would receive a fee equal to 20% of any sales tax revenue received by the City of Whittier, less the amount paid to the business coming from an agreement brought in by him.

## DISCUSSION

Economic development in Whittier is a City Council priority. In addition to economic benefits of new business attraction, such as increased sales tax generation, additional shopping activity within the City, and investment in our residential neighborhoods, new businesses also offer residents the variety of options and healthy balance of uses that mature communities have come to expect.

Mr. Cendejas recently brought to staff for consideration an opportunity with UFF, LLC and Affiliates.  Per Mr. Cendejas, UFF is one of the fastest growing fashion brands in the US. They were the #1 most-searched fashion brand on Google in 2018. The company provides affordable clothing for men and women, including dresses, jeans, swimsuits, active wear, shoes, and accessories both in-store and online.

As part of the attached Economic Development Subsidy Agreement, entitled Operating Covenant Agreement, with UFF, LLC and Affiliates would establish the company's operation, credit check, and point of sale in Whittier, thus generating retail sales tax.  In return, the 20-year Operating Covenant Agreement (with an automatic 20-year extension period) would guarantee the City's payment to the UFF, LLC and Affiliates for each Computation Quarter during the Eligibility Period that the City receives Sales Tax Revenue. The payment is an amount equal to the sum of fifty percent (50%) of the Sales Tax Revenues attributable to annual taxable sales for the year plus an amount equal to fifty percent (50%) of the Sales Tax Revenues attributable to Owner's self-accrual of use tax which is directly allocated to the City, including, without limitation, in connection with Owner's purchase of machinery and equipment from outside of California during such Computation Quarter.

Notice of the public hearing was conducted by publishing the notice and report in the *Whittier Daily News* on November 22, 2019. The notice and report was additionally posted on the City Website, and posted in the City Hall bulletin board on November 22, 2019.

## FISCAL IMPACT

While sales revenues cannot be precisely forecast, Mr. Cendejas estimates that the City could receive sales tax revenues in excess of $2,000,000 annually as a result of this agreement.

Based on receipt by City of $2,000,000 in sales tax revenues generated by UFF, LLC, City will pay UFF, LLC an amount equal to one half of said sales tax revenues ( $1,000,000). In addition, City would pay Mr. Cendejas a consulting fee in the amount of $200,000.

## ATTACHMENTS

A.  Operating Covenant Agreement with UFF, LLC and Affiliates
B.  Notice and Report

# EXHIBIT AA



**Secretary of State**
**Certificate of Surrender**
(Foreign Qualified Corporation ONLY)

**SURC**

# FILED

### Secretary of State
### State of California

**D1623167**

Filing Number

**04/22/2021**

Filing Date

**This Space For Office Use Only**

---

**IMPORTANT —** Read Instructions **before completing this form.**

There is **No Fee** for filing a Certificate of Surrender

**Copy Fees –**  First page $1.00; each attachment page $0.50;
Certification Fee - $5.00

*Note:* For information about Franchise Tax Board final tax return
requirements, go to ftb.ca.gov.

---

**1.  Corporate Name**  (Enter the exact name of the corporation as it is recorded with the California Secretary of State.  Note:  If you registered in California using an assumed name, see instructions.)

FN Logistics, Inc.

---

**2.  7-Digit Secretary of State Entity Number**

4168040

**3.  Jurisdiction** (State, foreign country or place where this corporation is formed.)

Delaware

---

**4.  Mailing Address to mail copies of Legal Service** (Enter the **complete** mailing address where the California Secretary of State may forward copies of any legal documents against the corporation that are served on the Secretary of State intended for the corporation.)

| Mailing Address of Corporation | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 2810 E. 46th Street | Vernon | CA | 90058 |

---

**5.  Required Statements** (Do not alter the Required Statements – ALL must be true to file this Certificate of Surrender.)

Statements 5(a) – 5(d) are true:

a)  The corporation surrenders its rights and authority to transact intrastate business in the State of California.

b)  The corporation revokes its designation of agent for service of process in California.

c)  The corporation consents to process against it in any action upon any liability or obligation incurred within the State of California prior to the filing of this Certificate of Surrender may be served upon the California Secretary of State.

d)  All final returns required under the California Revenue and Taxation Code have been or will be filed with the California Franchise Tax Board.

---

**6.  Read and Sign Below** (See Instructions.  Office or title not required.)

I am a corporate officer and am authorized to sign on behalf of the foreign corporation.

Signature

Richard Saghian

Type or Print Name

SURC (REV 03/2021)

2021 California Secretary of State
bizfile.sos.ca.gov

# EXHIBIT BB



## GOVERNOR'S OFFICE OF BUSINESS AND ECONOMIC DEVELOPMENT
### STATE OF CALIFORNIA ◆ OFFICE OF GOVERNOR GAVIN NEWSOM

**CALIFORNIA COMPETES TAX CREDIT ALLOCATION AGREEMENT**

This California Competes Tax Credit Allocation Agreement ("Agreement") is by and between FN Logistics, Inc., a Delaware corporation ("Taxpayer"), and the California Governor's Office of Business and Economic Development ("GO-Biz"), hereinafter jointly referred to as the "Parties" or individually as the "Party." All capitalized terms not defined in this Agreement shall have the same meaning as in California Revenue and Taxation Code ("RTC") sections 17059.2 and 23689, and California Code of Regulations, title 10, section 8000 et seq., as in effect on the Effective Date of this Agreement.

In consideration for the mutual covenants and promises in this Agreement, the Parties agree as follows:

1. **Effective Date.** The effective date ("Effective Date") of this Agreement shall be the date that this Agreement is approved by the California Competes Tax Credit Committee ("Committee").

2. **Total Credit Award.** GO-Biz, upon approval by the Committee and conditioned upon the requirements set forth in this Agreement, will award Taxpayer a California Competes Tax Credit ("CCTC") in the amount of thirteen million dollars ($13,000,000.00) ("Credit"). Specifically, Taxpayer is receiving a CCTC against the "net tax" as defined in RTC section 17039, or the "tax" as defined in RTC section 23036, as applicable, pursuant to RTC section 17059.2 or 23689, as applicable.

3. **Project/Milestones**. Taxpayer provides warehouse, logistics, and distribution services to Fashion Nova, Inc., an online clothing retailer. Taxpayer has certified in its application that absent award of the CCTC, its project may occur in another state. In consideration for the Credit, Taxpayer agrees to hire full-time employees and invest in facilities, tenant improvements, furniture and fixtures, computer equipment, and software licenses as part of its expansion in Santa Fe Springs and a location to be determined in Riverside County or San Bernardino County, California (collectively, the "Project"). Further, Taxpayer agrees to satisfy the milestones as described in Exhibit A ("Milestones"). In addition, Taxpayer must maintain the three (3) employee based Milestones ("Total California Full-Time Employees," "Minimum Annual Wage of California Full-Time Employees Hired," and "Cumulative Average Annual Wage of California Full-Time Employees Hired") for a minimum of three (3) taxable years thereafter. In the event Taxpayer employs more than the number of full-time employees, determined on an annual full-time equivalent basis, than required in Exhibit A, for purposes of satisfying the "Minimum Annual Wage of California Full-time Employees Hired" and the "Cumulative Average Annual Wage of California Full-time Employees Hired," Taxpayer may use the wages of any of the full-time employees hired within the required time period. For purposes of calculating the "Minimum Annual Wage of California Full-time Employees Hired" and the "Cumulative Average Annual Wage of California Full-time Employees Hired," the wage of any full-time employee that is not employed by Taxpayer for the entire taxable year shall be annualized. In addition, the wage of any full-time employee hired to fill a vacated position in which a full-time employee was employed during Taxpayer's Base Year shall be disregarded.

4. **Credit.** The Credit awarded in section 2 of this Agreement will be allocated to Taxpayer by taxable year as set forth in Exhibit A, provided that Taxpayer achieves the Milestones associated with the applicable taxable year, which includes all investments agreed to in the prior years, as set forth in Exhibit A. Taxpayer acknowledges and agrees that, an allocated portion of the Credit is earned by Taxpayer in the taxable year when the Milestones associated with that allocated portion of the Credit are achieved and to avoid recapture, Taxpayer must maintain the three (3) employee based Milestones for three (3) subsequent taxable years. All required Milestones identified on a taxable year basis in Exhibit A, must be met in order to earn the allocated portion of

DocuSign Envelope ID: D2599FCB-A007-4EB-9B8A-1D295A1E485B

the Credit. In the event Taxpayer satisfies the taxable year Milestones in an earlier taxable year than described in Exhibit A (no earlier than taxable year 2019), upon written approval from GO-Biz, Taxpayer may claim the allocated portion of the Credit in the earlier taxable year when the Milestones are achieved. If Taxpayer satisfied certain taxable year Milestones in an earlier taxable year than described in Exhibit A (no earlier than taxable year 2019), and received written approval from GO-Biz to claim the Credit in the earlier taxable year, then Taxpayer need only maintain the three (3) employee based Milestones for three (3) subsequent taxable years to avoid recapture as further described in Section 10. In the event that Taxpayer fails to satisfy each Milestone identified in Exhibit A in the taxable year associated with those Milestones including all Investments agreed to in the prior years, no portion of the Credit will be considered earned in that taxable year, but GO-Biz will not unreasonably deny the Credit to Taxpayer for immaterial variances from the Milestones. In determining whether Taxpayer satisfies each Investment Milestone, Taxpayer may include the aggregate amount of Investment made in prior taxable years (beginning with taxable year 2019) that was in excess of the cumulative Investment Milestones for such taxable years. Any allocated portion of the Credit associated with a specific taxable year in Exhibit A, which is not earned in that year due to failure to achieve the Milestones associated with that taxable year will be earned in the taxable year in which the Milestones are met, but in no event later than the last taxable year identified in Exhibit A.

**5. Taxpayer – Representations and Warranties.** Taxpayer represents and warrants that:

(a) Taxpayer is validly existing and in good standing under the laws of the State of California, has, or will have the requisite power, authority, licenses, permits, and the like necessary to carry on its business as it is now being conducted and as contemplated in this Agreement, and will, at all times, lawfully conduct its business in compliance with all applicable federal, state, and local laws, regulations, and rules.

(b) Taxpayer is not a party to any agreement, written or oral, creating obligations that would prevent Taxpayer from entering into this Agreement or satisfying the terms herein.

(c) All the information in the Application and all materials submitted to GO-Biz in Phase II, including, but not limited to, the Statement Regarding California State Tax Liabilities is true and accurate.

(d) Taxpayer authorizes the California Franchise Tax Board ("FTB") and GO-Biz to do all of the following:

i. To provide and receive information and documents as requested for the purpose of proper determination and administration of the Credit allocated to Taxpayer, including determination of the amount of any recapture of the Credit.

ii. To discuss relevant issues pertaining to proper determination and administration of the Credit allocated to Taxpayer, including determination of the amount of any recapture of the Credit.

(e) Taxpayer has read the applicable RTC sections 17059.2 and 23689 and California Code of Regulations, title 10, section 8000 et seq. and acknowledges and agrees that such sections are hereby incorporated by reference into this Agreement.

(f) None of the Investment identified in Exhibit A will be purchased or leased from a person or entity that is treated as related to Taxpayer under section 267, 318, or 707 of the Internal Revenue Code or from any member of a "controlled group of corporations" (as defined in RTC section 23626) in which Taxpayer is a member.

(g) None of the Investment identified in Exhibit A will be due to Taxpayer's acquisition of, or merger with, another business or due to a conversion from a purchase to a lease or vice versa of real or personal property Taxpayer already controls or has acquired.

(h) None of the net increase of full-time employees identified in Exhibit A will be due to Taxpayer's acquisition of, or merger with, another business unless the net increase of California full-time employees attributable to that business are above the number of California full-time employees employed by the business at the time of acquisition or merger. In addition, if Taxpayer acquires or merges with a business located outside of California, and subsequently moves any or all of acquired or merged with business's employees to California on a full-time basis, such employees shall count towards the net increase of full-time employees identified in Exhibit A, including existing employees at the time of acquisition or merger and any subsequently hired full-time employees.

DocuSign Envelope ID: D2599FCB-A007-4EB-9B94-1DF95A1E485B

(i) None of the net increase of full-time employees identified in Exhibit A will be due to a transfer of employees from a person or entity that is treated as related to Taxpayer under section 267, 318, or 707 of the Internal Revenue Code or from any member of a "controlled group of corporations" (as defined in RTC section 23626) in which Taxpayer is a member, unless the transfer is of an employee employed outside of California by a related person or entity and the employee is transferred to California on a full-time basis.

(j) None of the net increase of full-time employees identified in Exhibit A will be due to employment of any employees that were previously employed by a person or entity that is treated as related to Taxpayer under section 267, 318, or 707 of the Internal Revenue Code or by any member of a "controlled group of corporations" (as defined in RTC section 23626) in which Taxpayer is a member, unless the employment is of an employee that was employed outside of California by a related person or entity.

6. **Reporting Requirements**. On or before the first day of the fourth month after the close of each taxable year as referenced in Exhibit A, and prior to claiming the Credit on its tax return, Taxpayer shall complete a worksheet provided by GO-Biz to verify successful achievement of the applicable Milestones for the prior taxable year. If Taxpayer successfully achieved the Milestones for the prior taxable year, Taxpayer shall retain the worksheet pursuant to section 16 and submit the worksheet to GO-Biz or the FTB upon request. If Taxpayer did not achieve the applicable Milestones for the prior taxable year, Taxpayer shall submit to GO-Biz the worksheet and a written description of any issues or challenges in achieving the Milestones and any corrective actions being taken or anticipated to be taken in subsequent years. Such submission shall be due to GO-Biz by the first day of the fourth month after the close of each taxable year as referenced in Exhibit A.

7. **Franchise Tax Board Review.**

(a) In addition to the reporting requirements in section 6, Taxpayer agrees to comply with the FTB's review of the books and records for purposes of determining if Taxpayer has complied with the requirements of this Agreement.

(b) For any business other than a Small Business, Taxpayer acknowledges that the FTB shall review the books and records of all taxpayers allocated a Credit pursuant to this Agreement to ensure compliance with the terms and conditions of this Agreement and agrees to cooperate with the FTB in such a review. In the case of a taxpayer that is a Small Business, Taxpayer acknowledges that a review of the books and records of a taxpayer shall be made when, in the sole discretion of the FTB, a review of those books and records is appropriate and agrees to cooperate with the FTB in such a review. If the FTB exercises its discretion to review the books and records of a Small Business taxpayer, the review will be conducted to ensure compliance with this Agreement. The guidelines and procedures for these reviews are outlined in the FTB's Notice #2014-2 dated November 7, 2014.

(c) These reviews will not constitute an audit of the tax return under Part 10.2 (commencing with section 18401) of the RTC and the regulations thereunder, and will not preclude the FTB from auditing any issue in any taxable year, including a taxable year included in the term of this Agreement.

(d) If during the review of the books and records, the FTB determines there is a potential material breach of this Agreement by Taxpayer, and notwithstanding RTC section 19542, the FTB shall notify GO-Biz and provide, in writing, detailed information regarding the basis for that determination.

8. **Assignment/Transfer**. The Credit (or a portion thereof as earned) under this Agreement may be assigned to an "Affiliated Corporation" in accordance with RTC section 23663. As stated in RTC section 23689(i)(1), this Agreement shall not restrict, broaden, or alter the ability of Taxpayer to assign the Credit in accordance with RTC section 23663. In order to transfer this Agreement as a result of a sale or merger, prior written consent of GO-Biz must be obtained or the transfer will be void. Such transfer shall be permitted if GO-Biz determines that the transfer would further the purposes of the CCTC program and benefit California. Prior to GO-Biz consenting to the transfer, the new entity must disclose to GO-Biz the number of California full-time employees it employed at the time of acquisition or merger and any other information GO-Biz requests that applicants for a CCTC provide pursuant to a CCTC application.

9. **Material Breach**. A material breach for purposes of this Agreement shall include, but not be limited to:
   (a) Failure to timely furnish the documents described in Section 6 or the information requested by GO-Biz or the FTB relating to Taxpayer's compliance with this Agreement.
   (b) Material misstatements in any information provided to GO-Biz as part of the application process and/or after this Agreement is signed.
   (c) Failure to materially satisfy applicable Milestones as set forth in Exhibit A, materiality of which shall be determined by GO-Biz, by the end of the last taxable year identified in Exhibit A.
   (d) Failure to maintain any of the three (3) employee based Milestones for a minimum of three (3) subsequent taxable years after achieving the Milestone(s).

10. **Recapture**. In the event of a material breach of the requirements of this Agreement, GO-Biz will notify Taxpayer in writing of the breach and provide Taxpayer with the opportunity to cure the breach within thirty (30) calendar days or such longer period as mutually agreed to in writing between the Parties. If Taxpayer fails to cure the breach within the prescribed timeframe, GO-Biz will notify Taxpayer of the failure, the amount of the Allocation that it will recommend to the Committee to be recaptured, and may recommend termination of this Agreement to the Committee. If the material breach is solely the failure of Taxpayer to satisfy Milestones with respect to an Allocation for a particular taxable year, then the recapture will be limited to that particular taxable year's Allocation and in no event shall a recapture under this Agreement include any Allocation or Allocations that Taxpayer had previously earned provided that Taxpayer satisfies its obligation to maintain the three (3) employee based Milestones for three (3) subsequent taxable years. Upon receipt of recommendations from GO-Biz, the Committee will determine whether to accept or reject GO-Biz's recommendation of recapture, the amount thereof, and the termination of this Agreement, based on Taxpayer's failure to fulfill the terms and conditions of this Agreement. Upon approval of the Committee to recapture some or all of the Allocation awarded for failure of Taxpayer to fulfill the terms of this Agreement, GO-Biz will notify the FTB in writing as required under the applicable statutes and regulations. Any amount of additional tax resulting from that recapture shall be assessed by the FTB in the same manner as provided by RTC section 19051. The additional tax resulting from a recapture will be assessed in the taxable year of Taxpayer in which the Committee's recapture determination occurred.

11. **Public Records.** Taxpayer acknowledges that GO-Biz is subject to the California Public Records Act (PRA) (Gov. Code, § 6250 et seq.). This Agreement and materials submitted by Taxpayer to GO-Biz may be subject to a PRA request. In such an event, GO-Biz will notify Taxpayer, as soon as practicable that a PRA request for Taxpayer's information has been received, but not less than five (5) business days prior to the release of the requested information to allow Taxpayer to seek an injunction. GO-Biz will work in good faith with Taxpayer to protect the information to the extent an exemption is provided by law, including, but not limited to, notes, drafts, proprietary information, financial information, and trade secret information. GO-Biz will also apply the "balancing test" as provided for under Government Code section 6255, to the extent applicable. Notwithstanding the foregoing, GO-Biz agrees that any information provided to GO-Biz by the FTB, in connection with this Agreement will be treated as confidential tax information protected by Article 2 (commencing with Section 19542) of Chapter 7 of Part 10.2 of the RTC, assuming that FTB can rely on such a section and shall not be disclosed to any party, other than personnel of GO-Biz or the Committee, without Taxpayer's prior written consent. Taxpayer acknowledges that this Agreement in whole or in part will be made available to the public at least ten (10) calendar days prior to the Committee hearing. Pursuant to RTC sections 17059.2 and 23689, in the event of approval by the Committee of this Agreement, Taxpayer acknowledges and agrees that GO-Biz will post on its website the following information:
   (a) The name of each taxpayer allocated a Credit;
   (b) The estimated amount of the Investment by each taxpayer;
   (c) The estimated number of jobs created or retained;
   (d) The Credit allocated to each taxpayer; and,
   (e) The portion of the Credit recaptured from each taxpayer, if applicable.

DocuSign Envelope ID: B2599FCB-A007-4AEB-9B41-1DB95A1E485B

12. **Media Release**.  Taxpayer may elect to issue a press release related to this Agreement, but any release shall be approved by GO-Biz in writing prior to such release.  Such approval shall not be unreasonably withheld.

13. **Indemnification/Warranty and Disclaimer/Limitation of Liability**.  Taxpayer shall defend, indemnify, and hold GO-Biz and the FTB, its agents or assigns, harmless from and against all claims, damages, and liabilities (including reasonable attorneys' fees) arising from this Agreement due to Taxpayer's breach of this Agreement, or the result of Taxpayer's negligence or willful misconduct.  EXCEPT AS PROVIDED FOR UNDER SECTION 14, UNDER NO CIRCUMSTANCES WILL THE STATE OF CALIFORNIA, GO-BIZ, ITS AGENTS OR EMPLOYEES, THE COMMITTEE MEMBERS, THE FTB OR ANYONE ELSE INVOLVED IN THIS AGREEMENT BE LIABLE TO TAXPAYER FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES THAT ARISE FROM THIS AGREEMENT.

14. **Limitation of Remedy**.  The only remedy that Taxpayer shall have in the event of breach or alleged breach by GO-Biz, shall be the normal administrative and judicial rights accorded to a taxpayer in the state of California who has been denied a tax credit claimed on its return.

15. **Integration.**  This Agreement (including the exhibits hereto and any written amendments hereof executed by the Parties) constitutes the entire Agreement between the Parties related to this Credit and supersedes all prior agreements and understandings, oral and written, between the Parties with respect to this Credit described herein.

16. **Record Retention**.  Taxpayer shall retain a copy of this Agreement, any exhibits related to this Agreement and any other documents that support the achievement of the milestones in connection with Taxpayer's Application and Credit for a period of no less than four (4) years from the end of the last taxable year identified in Exhibit A.

17. **Notice**.  Within thirty (30) days of the effective date of this Agreement, Taxpayer shall notify GO-Biz, in writing, of the name, address, phone number, and email of its contact person for future communication relating to this Agreement.  In addition, Taxpayer agrees to immediately inform GO-Biz of any changes to the name, address, phone number, and email of its contact person.  Any notices required or permitted to be given under this Agreement to GO-Biz shall be emailed to CalCompetes@gobiz.ca.gov or mailed to:

    GO-Biz
    1325 J Street, 18th Floor
    Sacramento, California  95814
    Attention: Deputy Director, California Competes Tax Credit Program

18. **Modification**.  This Agreement may be amended or modified only in writing signed by all parties.  Any modifications to this Agreement that do not alter the amount of the Investment, the net increase in full-time employees, or the minimum and average wages will not require Committee approval.  If Committee approval is necessary, the modification of this Agreement will not be valid until the amendment is approved by the Committee.

19. **Time of the Essence.**  Time is of the essence in respect to all provisions of this Agreement that specify a time for performance; provided, however, that the foregoing shall not be construed to limit or deprive a Party of the benefits of any cure period allowed in this Agreement.

20. **Ambiguities**.  Each Party has had the opportunity to seek the advice of counsel or has refused to seek the advice of counsel.  Each Party and its counsel, if appropriate, have participated fully in the negotiation, drafting, review, and revision of this Agreement.  Any rule of construction to the effect that ambiguities are to be resolved against the drafting Party shall not apply in interpreting this Agreement.  The language in this Agreement shall be interpreted as to its fair meaning and not strictly for or against any Party.

21. **Necessary Acts, Further Assurances**.  The Parties shall at their own cost and expense execute and deliver any further documents and shall take such other actions as may be reasonably required or appropriate to carry out the intent and purposes of this Agreement.

22. **Sections and Other Headings**.  The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

23. **Consultants' and Attorneys' Fees**.  Each of the Parties shall be responsible for, and pay in their entirety, its respective fees, costs, and expenses in connection with the subject matter of this Agreement and any audit that may be conducted as a result of the transaction contemplated herein.  Notwithstanding RTC section 19717, under no circumstances is any Party to this Agreement entitled to attorneys' fees with regard to litigation resulting from this Agreement.

24. **Representation on Authority of Parties/Signatories**.  Each person signing this Agreement represents and warrants that he or she is duly authorized and has legal capacity to execute and deliver this Agreement.  Each Party represents and warrants to the other that the execution and delivery of this Agreement and the performance of such Party's obligations hereunder have been duly authorized and that this Agreement is a valid and legal agreement binding on such Party and enforceable in accordance with its terms.

25. **Severability.**  If any term of this Agreement is to any extent invalid, illegal, or incapable of being enforced, such term shall be excluded to the extent of such invalidity, illegality, or unenforceability; all other terms hereof shall remain in full force and effect.

26. **Approval**.  This Agreement shall not be binding until it has been approved by the Committee during a duly noticed Committee meeting.

27. **Execution**.  This Agreement may be executed in parts, by fax, or other similar electronic means.

28. **Governing Law and Consent to Jurisdiction**.  This Agreement will be governed, construed, and enforced according to the laws of the State of California without regard to its conflict of laws rules.  Each party hereby irrevocably consents to the exclusive jurisdiction and venue of any state court located within Sacramento County, State of California in connection with any matter arising out of this Agreement or the transactions contemplated under this Agreement.

*Remainder of the page is intentionally left blank. Signature page immediately follows.*

**Governor's Office of Business and Economic Development**

By: *Cheryl Akin*

DocuSigned by:
0E439FC05D244AE...

Name:  Cheryl Akin

Title:  Deputy Director

Date:  May 28, 2019 | 08:53 PDT

**TAXPAYER**
**FN Logistics, Inc.**

By: *Ryan Kaneshiro*

DocuSigned by:
83446B629FC54B3...

Name:  Ryan Kaneshiro

Title:  CFO

Date:  May 24, 2019 | 13:40 PDT

## Exhibit A
## Milestones

**Taxpayer:   FN Logistics, Inc.**

| | 2018 Tax Year (Base) | 2019 Tax Year | 2020 Tax Year | 2021 Tax Year | 2022 Tax Year | 2023 Tax Year | Total |
|---|---|---|---|---|---|---|---|
| **Total California Full-Time Employees[1]** | 40 | 233 | 296 | 1,505 | 2,718 | 3,079 | |
| **Net Increase of Full-Time Employees Compared to the Base Year** | | 193 | 256 | 1,465 | 2,678 | 3,039 | |
| **Minimum Annual Wage of California Full-Time Employees Hired** | | $31,200 | $31,200 | $31,200 | $31,200 | $31,200 | |
| **Cumulative Average Annual Wage of California Full-Time Employees Hired** | | $31,200 | $31,200 | $31,200 | $31,200 | $31,200 | |
| **Investments** | | $8,000,000 | $14,048,000 | $43,832,000 | $30,632,000 | $17,432,000 | $113,944,000 |
| **Tax Credit Allocation** | | $825,000 | $275,000 | $5,200,000 | $5,200,000 | $1,500,000 | $13,000,000 |

[1] Determined on an annual full-time equivalent basis

# EXHIBIT CC

STACY R. PROCTER, Cal. Bar. No. 221078
KENNETH H. ABBE, Cal. Bar No. 172416
EMILY WU, Cal. Bar No. 293670
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300; Fax: (310) 824-4380
sprocter@ftc.gov; kabbe@ftc.gov; ewu@ftc.gov

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No.  2:20-cv-03641 |
| Plaintiff, | STIPULATION ON ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT |
| v. | |
| FASHION NOVA, INC., a corporation, | |
| Defendant. | |

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint for Permanent Injunction and Other Equitable Relief ("Complaint"), for a permanent injunction and other equitable relief in this matter, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b. Defendant has waived service of the summons and the Complaint. The Commission and Defendant stipulate to the entry of a Stipulated Order for Permanent Injunction and Monetary Judgment (lodged concurrently herewith) to resolve all matters in dispute in this action between them.

Plaintiff and Defendant hereby stipulate to entry of a Stipulated Order for Permanent Injunction and Monetary Judgment with the following terms:

## FINDINGS

1.     This Court has jurisdiction over this matter.

2.     The Complaint charges that Defendant participated in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and of the Commission's Trade Regulation Rule Concerning the Sale of Mail, Internet or Telephone Order Merchandise (the "Rule"), 16 C.F.R. Part 435, by failing to offer consumers, clearly and conspicuously and without prior demand, an option to consent to a delay in shipment or to cancel an order and receive a prompt refund when Defendant failed to ship properly completed orders for merchandise within the timeframe required by the Rule, and failing to deem an order cancelled and make a prompt refund as required by the Rule.

3.     Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Court Order. Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

4.     Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Court Order, and agrees to bear its own costs and attorney fees.

5.     Defendant and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Court Order.

## DEFINITIONS

For the purpose of this Court Order, the following definitions apply:

A.     "Clearly and Conspicuously" means that a required disclosure (such as an original Shipment date stated in a solicitation) is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed and cadence sufficient for ordinary consumers to easily hear and understand it.

4.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

B.    "Defendant" means Fashion Nova, Inc., and its successors and assigns.

C.    "Eligible Customer" means any consumer who placed an order for merchandise with Defendant and who was provided a gift card instead of a full Refund because Defendant did not ship an item of ordered merchandise, including where such item was out of stock or where Defendant shipped a materially different item.

D.    "Eligible Gift Card Balance" means any unused gift card balance on any gift card Defendant issued to an Eligible Customer instead of a full Refund because Defendant did not ship an item of ordered merchandise, including where such item was out of stock or where Defendant shipped a materially different item.

E.    "Mail, Internet or Telephone Order Sale" means any sale in which the buyer has ordered merchandise from Defendant by mail, via the Internet, or by Telephone, regardless of the method of payment or the method used to solicit the order. Exceptions:

1.    Subscriptions, such as magazine sales, ordered for serial delivery, after the initial Shipment is made in compliance with this Court Order;

2.    Orders of seeds and growing plants;

3.    Orders made on a collect-on-delivery (C.O.D.) basis; and

4.    Transactions that the defendant can demonstrate are governed by the Commission's Trade Regulation Rule entitled "Use of Prenotification Negative Option Plans," 16 C.F.R. Part 425.

F.    "Prompt," in the context of a Refund, means a Refund sent by any means at least as fast and reliable as first class mail within 7 days of the date on which the buyer's right to refund vests under the provisions of this Court Order. Provided, however, that where Defendant cannot provide a Refund by the same method payment was tendered, Prompt Refund means a Refund sent in the form of

cash, check, or money order, by any means at least as fast and reliable as first class mail, within 7 days of the date on which Defendant discovers Defendant cannot provide a Refund by the same method as payment was tendered.

G. "Receipt of a Properly Completed Order" means, where the buyer tenders full or partial payment in the proper amount in the form of cash, check or money order; authorization from the buyer to charge an existing charge account; or other payment methods, the time at which Defendant receives both said payment and an order from the buyer containing all of the information needed by Defendant to process and ship the order. Provided, however, that where Defendant receives notice that a payment by means other than cash or credit as tendered by the buyer has been dishonored or that the buyer does not qualify for a credit sale, Receipt of a Properly Completed Order means the time at which: (1) Defendant receives notice that a payment by means other than cash or credit in the proper amount tendered by the buyer has been honored; (2) The buyer tenders cash in the proper amount; or (3) Defendant receives notice that the buyer qualifies for a credit sale.

H. "Refund" means:

1. Where the buyer tendered full payment for the unshipped merchandise in the form of cash, check, or money order, a return of the amount tendered in the form of cash, check, or money order sent to the buyer;

2. Where there is a credit sale:

a) And Defendant is a creditor, a copy of a credit memorandum or the like or an account statement sent to the buyer reflecting the removal or absence of any remaining charge incurred as a result of the sale from the buyer's account;

b) And a third party is the creditor, an appropriate credit memorandum or the like sent to the third party creditor which will remove the charge from the buyer's account and a copy of

5

the credit memorandum or the like sent to the buyer that includes the date that Defendant sent the credit memorandum or the like to the third party creditor and the amount of the charge to be removed, or a statement from Defendant acknowledging the cancellation of the order and representing that it has not taken any action regarding the order which will result in a charge to the buyer's account with the third party;

c) And the buyer tendered partial payment for the unshipped merchandise in the form of cash, check, or money order, a return of the amount tendered in the form of cash, check, or money order sent to the buyer.

3. Where the buyer tendered payment for the unshipped merchandise by any means other than those enumerated in (1) or (2) of this definition:

a) Instructions sent to the entity that transferred payment to Defendant instructing that entity to return to the buyer the amount tendered in the form tendered and a statement sent to the buyer setting forth the instructions sent to the entity, including the date of the instructions and the amount to be returned to the buyer;

b) A return of the amount tendered in the form of cash, check, or money order sent to the buyer; or

c) A statement from Defendant sent to the buyer acknowledging the cancellation of the order and representing that Defendant has not taken any action regarding the order which will access any of the buyer's funds.

I. "Shipment" means the act by which the merchandise is physically placed in the possession of the carrier.

6

J.     "Telephone" refers to any direct or indirect use of the Telephone to order merchandise, regardless of whether the Telephone is activated by, or the language used is that of human beings, machines, or both.

K.     "Time of Solicitation" of an order means that time when Defendant has: (1) Mailed or otherwise disseminated the solicitation to a prospective purchaser; (2) Made arrangements for an advertisement containing the solicitation to appear in a newspaper, magazine or the like or on radio or television which cannot be changed or cancelled without incurring substantial expense; or (3) Made arrangements for the printing of a catalog, brochure or the like which cannot be changed without incurring substantial expense, in which the solicitation in question forms an insubstantial part.

## **ORDER**

## I.     **INJUNCTION CONCERNING MAIL, INTERNET, OR TELEPHONE MERCHANDISE ORDERS**

IT IS ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Court Order, whether acting directly or indirectly, in connection with Mail, Internet, or Telephone Order Sales are permanently restrained and enjoined from:

A.     the following:

(with regard to the original Shipment date:)

1.     Soliciting any order for the sale of merchandise unless, at the Time of Solicitation, Defendant has a reasonable basis to expect that it will be able to ship any ordered merchandise to the buyer by that original Shipment date, which is either:

i)     Within that time Clearly and Conspicuously stated in any such solicitation; or

7

ii)     If no time is Clearly and Conspicuously stated, within 1 day after Receipt of a Properly Completed Order from the buyer.

(with regard to any revised Shipment date:)

2.     Providing any buyer with any revised shipping date, unless, at the time the representation is made, Defendant has a reasonable basis for making such representation.

3.     Informing any buyer that it is unable to make any representation regarding the length of any delay unless:

i)     Defendant has a reasonable basis for so informing the buyer; and

ii)     Defendant informs the buyer of the reason or reasons for the delay.

B.     in relation to delays:

(with regard to any first notice of inability to ship:)

1.     Where Defendant is unable to ship merchandise by the original Shipment date, failing to offer to the buyer, Clearly and Conspicuously and without prior demand, an option either to consent to a delay in shipping or to cancel the buyer's order and receive a Prompt Refund. Said offer must be made within a reasonable time after Defendant first becomes aware of an inability to ship within the original Shipment date, but in no event later than the original Shipment date.

i)     Any offer to the buyer of such an option must fully inform the buyer regarding the buyer's right to cancel the order and to obtain a Prompt Refund and provide a first definite revised shipping date, but where Defendant lacks a reasonable basis for providing such a first definite revised shipping date

8

the notice must inform the buyer that Defendant is unable to make any representation regarding the length of the delay.

ii)     Where Defendant has provided a first definite revised shipping date which is no more than 30 days later than the original Shipment date, the offer of said option must expressly inform the buyer that, unless Defendant receives, prior to Shipment and prior to the expiration of the first definite revised shipping date, a response from the buyer rejecting the delay and cancelling the order, the buyer will be deemed to have consented to a delayed Shipment on or before the first definite revised shipping date.

iii)    Where Defendant has provided a first definite revised shipping date which is more than 30 days later than the original Shipment date or where Defendant is unable to provide a definite revised shipping date and therefore informs the buyer that Defendant is unable to make any representation regarding the definite length of the delay, the offer of said option must also expressly inform the buyer that the buyer's order will automatically be deemed to have been cancelled unless:

(A)     Defendant has shipped the merchandise within 30 days of the original Shipment date, and has received no cancellation prior to Shipment; or

(B)     Defendant has received from the buyer within 30 days of said applicable time, a response specifically consenting to said shipping delay. Where Defendant informs the buyer that it is unable to make any representation regarding the length of the delay, the buyer must be expressly informed that, should the buyer

9

consent to an indefinite delay, the buyer will have a
continuing right to cancel the buyer's order at any time
after the original Shipment date and receive a Prompt
Refund by so notifying Defendant prior to actual
Shipment.

iv)     Nothing in this Subsection shall prohibit Defendant who
furnishes a definite revised shipping date pursuant to (B)(1)(i)
of this Section, from requesting, simultaneously with or at the
offer of an option pursuant to (B)(1) of this Section, the buyer's
express consent to a further unanticipated delay beyond the
definite revised shipping date in the form of a response from the
buyer specifically consenting to said further delay. Provided,
however, that where Defendant solicits consent to an
unanticipated indefinite delay the solicitation shall expressly
inform the buyer that, should the buyer so consent to an
indefinite delay, the buyer shall have a continuing right to
cancel the buyer's order at any time after the definite revised
shipping date by so notifying Defendant prior to actual
Shipment.

(with regard to any further notice of inability to ship:)

2.     Where Defendant is unable to ship merchandise on or before
the first definite revised shipping date, failing to offer to the buyer,
Clearly and Conspicuously and without prior demand, a renewed
option either to consent to a further delay or to cancel the order and to
receive a Prompt Refund. Said offer must be made within a reasonable
time after Defendant becomes aware of the inability to ship before the
said definite revised shipping date, but in no event later than the
expiration of the definite revised shipping date.

10

Provided, however, that where Defendant previously has obtained the buyer's express consent to an unanticipated delay until a specific date beyond the definite revised shipping date, pursuant to (B)(1)(iv) of this Section or to a further delay until a specific date beyond the definite revised shipping date pursuant to (B)(2) of this Section, that date to which the buyer has expressly consented supersedes the definite revised shipping date for purposes of (B)(2) of this Section.

i)      Any offer to the buyer of said renewed option must provide the buyer with a new definite revised shipping date, but where Defendant lacks a reasonable basis for providing a new definite revised shipping date, the notice must inform the buyer that Defendant is unable to make any representation regarding the length of the further delay.

ii)     The offer of a renewed option must expressly inform the buyer that, unless Defendant receives, prior to the expiration of the old definite revised shipping date or any date superseding the old definite revised shipping date, notification from the buyer specifically consenting to the further delay, the buyer will be deemed to have rejected any further delay, and to have cancelled the order if Defendant is in fact unable to ship prior to the expiration of the old definite revised shipping date or any date superseding the old definite revised shipping date.

Provided, however, that where Defendant offers the buyer the option to consent to an indefinite delay, the offer must expressly inform the buyer that, should the buyer so consent to an indefinite delay, the buyer has a continuing right to cancel the buyer's order at any time and receive a Prompt

11

Refund after the old definite revised shipping date or any date superseding the old definite revised shipping date.

    iii)    Subsection (B)(2) does not apply to any situation where Defendant, pursuant to (B)(1)(iv) of this Section, has previously obtained consent from the buyer to an indefinite extension beyond the first revised shipping date.

    3.    Wherever a buyer has the right to exercise any option under this provision or to cancel an order by so notifying Defendant prior to Shipment, failing to furnish the buyer with a simple mechanism at the Defendant's expense, to exercise such option or to notify the Defendant regarding cancellation.

    4.    Nothing in this Section prevents Defendant where it is unable to make Shipment within the original Shipment date or within a delay period consented to by the buyer, from deciding to consider the order cancelled and providing the buyer with notice of said decision within a reasonable time after becoming aware of said inability to ship, and with a Prompt Refund.

C.    (with regard to failure to cancel:)

failing to treat an order as cancelled and to make a Prompt Refund to the buyer whenever:

    1.    Defendant receives, prior to Shipment, notification from the buyer cancelling the order pursuant to any option, renewed option or continuing option under this Court Order;

    2.    Defendant has, pursuant to (B)(1)(iii), provided the buyer with a first definite revised shipping date which is more than 30 days later than the original Shipment date or has notified the buyer that it is unable to make any representation regarding the length of the delay and Defendant:

        i)     Has not shipped the merchandise within 30 days of the original Shipment date, and

        ii)    Has not received the buyer's express consent to said shipping delay within said 30 days;

3.   Defendant is unable to ship within the applicable time set forth in (B)(2) of this Section, and has not received, within the said applicable time, the buyer's consent to the further delay;

4.   Defendant has notified the buyer of an inability to make Shipment and has indicated the decision not to ship the merchandise;

5.   Defendant fails to offer any option prescribed in this Section and has not shipped the merchandise within the original Shipment date; or

6.   Defendant has provided the buyer with a first definite revised shipping date of 30 days or less than the original Shipment date, and Defendant has not shipped the merchandise or received the buyer's consent to a further delay by the first definite revised shipping date.

D.   (with regard to compliance:)

In any action brought by the FTC alleging a violation of this Court Order, the failure of Defendant to have records or other documentary proof establishing its use of systems and procedures which assure, in the ordinary course of business, the Shipment of merchandise within any applicable time set forth in this Section and compliance with any other requirement of this Section will create a rebuttable presumption that Defendant failed to comply with said requirement.

## II.  INJUNCTION TO PREVENT CERTAIN MERCHANDISE ORDER PRACTICES

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys and all other persons in active concert or participation

with any of them, who receive notice of this Court Order, whether acting directly or indirectly, in connection with Mail, Internet, or Telephone Order Sales, are permanently restrained and enjoined from:

     A.    Making any representation, expressly or by implication, that the merchandise will be shipped faster than 30 days, without disclosing, Clearly and Conspicuously, and before payment, the date by which the merchandise will be shipped or received;

     B.    Failing to provide, and to Clearly and Conspicuously disclose, a simple mechanism for the buyer to cancel any merchandise not received by such date disclosed. The mechanism must not be difficult, confusing, or time consuming, and must be at least as simple as the mechanism the buyer used to order the merchandise;

     C.    Where Defendant must offer a Prompt Refund, offering anything other than a Prompt Refund such as a gift card; and

     D.    Misrepresenting or assisting others in misrepresenting, expressly or by implication:

          1.    The date or speed by which the merchandise will be shipped or received;

          2.    The length of, or reason for, any shipping delay;

          3.    Any material aspect of any refund, return, or cancellation policy; or

          4.    Any other material fact.

### III.   MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

     A.    Judgment in the amount of Nine Million, Three Hundred Thousand Dollars ($9,300,000) is entered in favor of the Commission against Defendant as equitable monetary relief.

B.      Defendant is ordered to pay the Commission Seven Million, Forty Thousand Dollars ($7,040,000), which, as Defendant stipulates, its undersigned counsel holds in escrow for no purpose other than payment to the Commission. Such payment must be made within 7 days of entry of this Court Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

C.      Defendant is ordered to pay the Commission, 7 months from the entry date of this Court Order, the amount of Two Million, Two Hundred Sixty Thousand Dollars ($2,260,000), less any amount of money that Defendant has successfully reimbursed and transferred to Eligible Customers for Eligible Gift Card Balances pursuant to Section V of this Court Order, plus any interest accrued since the entry date of this Court Order on monies held in escrow pursuant this Court Order. Defendant stipulates that it has placed in escrow with a third-party escrow agent the amount of Two Million, Two Hundred Sixty Thousand Dollars ($2,260,000) for no purpose other than securing redress of Eligible Gift Card Balances to Eligible Customers in accordance with this Court Order, with payment of the undistributed remainder, if any, to the Commission.

D.      The agreement governing the escrow fund must provide that: (1) the escrow account is established for the purposes of securing redress for Eligible Gift Card Balances to Eligible Customers and reimbursing Defendant for amounts that it has reimbursed directly to Eligible Customers pursuant to this Court Order; (2) Defendant may only withdraw funds from the escrow account equal to amounts it has successfully reimbursed to Eligible Customers in accordance with Section V of this Court Order; (3) the escrow account transfers all remaining funds (less any amounts Defendant reimbursed to Eligible Customers in accordance with Section V of this Court Order and for which Defendant has not already received reimbursement from the escrow account), including any interest that has accrued in the escrow account, to the Commission at the end of the redress period, which runs

15

for 7 months after the entry date of this Court Order; and (4) as many Eligible Customers as practicable receive reimbursement.

If an agreement governing an escrow account funded pursuant to this Subsection ceases to comply with any of the criteria set forth in this Subsection III.D, or such escrow account ceases to be administered in compliance with all of the criteria stated above, Defendant must immediately pay the escrowed amount directly to the Commission pursuant to Subsection III.C above.

E.      No other amounts will be credited, offset against, or reimbursed or deducted from the amount to be reimbursed to Eligible Customers or to be paid to the Commission pursuant to Subsection III.C above, including: (1) amounts paid by Defendant for the administration or implementation of the redress program; (2) amounts paid by Defendant on reimbursement checks negotiated more than a year from the entry date of this Court Order; or (3) goods or services provided by Defendant to Eligible Customers.

F.      All payments to the Commission must be made by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.

## IV.    ADDITIONAL MONETARY PROVISONS

IT IS FURTHER ORDERED that:

A.      Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Court Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Court Order, such as a nondischargeability complaint in any bankruptcy case.

C.     The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Court Order will have collateral estoppel effect for such purposes.

D.     Defendant acknowledges that its Taxpayer Identification Number or Employer Identification Number, which Defendant must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Court Order, in accordance with 31 U.S.C. § 7701.

E.     All money paid to the Commission pursuant to this Court Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund. If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendant's practices alleged in the Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defendant has no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## V.     NOTICES AND REIMBURSEMENTS TO CUSTOMERS

IT IS FURTHER ORDERED that Defendant must notify and reimburse Eligible Gift Card Balances to Eligible Customers as set forth below:

A.     Defendant must identify all Eligible Customers with an Eligible Gift Card Balance as soon as possible.

      1.     Such Eligible Customers, and their contact information, must be identified to the extent such information is in Defendant's possession, custody or control, such as from third parties, including

Defendant's payment processor(s) and information received from customers themselves.

2.   Such Eligible Customers include those identified at any time, including after the redress period, which runs for 7 months after the entry date of this Court Order.

B.   Defendant must notify and reimburse the full amount of any Eligible Gift Card Balance to each Eligible Customer with an Eligible Gift Card Balance. Defendant will not access the escrow fund to provide such reimbursements, but may withdraw funds from the escrow fund equal to amounts it has successfully reimbursed to Eligible Customers through reverse charges made to the Eligible Customers' financial accounts (e.g., bank accounts, credit cards, PayPal accounts, etc.) and through checks sent to and negotiated by the Eligible Customers. Defendant must notify and provide reimbursement to identified Eligible Customers with an Eligible Gift Card Balance within 30 days after the entry date of this Court Order, and any Eligible Customers with an Eligible Gift Card Balance identified thereafter within 30 days of their identification, not to exceed 7 months after the entry date of this Court Order.

1.   Defendant may attempt to reimburse each Eligible Customer electronically, transmitting the full amount of any Eligible Gift Card Balance directly to the Eligible Customer's last known valid financial account on file with Defendant, including by effectuating a reverse charge on the Eligible Customer's credit card or other financial account.

2.   For each electronic reimbursement, Defendant must cause a notice to be sent to that Eligible Customer's last known email address at least 3 days before the reimbursement is transmitted. Such notices must be in the form shown in **Attachment A,** or in such form approved in writing by the Commission or its designee, and the

subject line shall read "Important: Notice of Refund from Fashion Nova." If the emailed notice is returned as undeliverable or is otherwise not successfully delivered, Defendant must mail or cause the notice to be mailed to the Eligible Customer's last known mailing address.

3.     If the attempted electronic reimbursement is not successful within 10 days, Defendant must cancel the attempted electronic reimbursement and mail or cause to be mailed to the Eligible Customer a one-page notice and check for the full amount of the Eligible Gift Card Balance in accord with Subsections V.B.4 to 6 below.

4.     If an Eligible Customer does not receive reimbursement electronically, Defendant must reimburse the Eligible Customer for the full amount of any Eligible Gift Card Balance by mailed check. Notices for mailed checks must be in the form shown in **Attachment B,** or in such form approved in writing by the Commission or its designee. The envelope containing the notice and check must be in the form shown in **Attachment C.**

5.     For any notices and checks sent by mail, such mailing must be sent by first-class mail, postage prepaid, address correction service requested with forwarding and return postage guaranteed. For any mailings returned as undeliverable, Defendant must use standard address search methodologies such as re-checking Defendant's records and the Postal Service's National Change of Address database and re-mail to the corrected address within 7 days.

6.     The face of each reimbursement check must Clearly and Conspicuously state: "Please cash or deposit this check within 60 days or it may no longer be good." Defendant may void any checks that

have not been negotiated after 90 days from the date that the checks were originally mailed.

7.     Defendant shall not void any Eligible Gift Card Balance unless and until the Eligible Customer has received an electronic reimbursement or negotiated a reimbursement check for the full amount of the Eligible Gift Card Balance.

8.     The mailing or emailing of notices and checks must not include any information not specified in this Court Order, including any enclosures or any written statement, illustration, or deception that promotes the sale of a good or service or is designed to increase consumer interest in a brand, good, or service.

C.     Defendants' notices must include a toll-free number and an email address dedicated to responding to redress inquires. Defendants must respond promptly and accurately to inquiries about redress, including: (1) whether a consumer is an Eligible Customer or has an Eligible Gift Card Balances; (2) and if so, the redress required by this Court Order and steps taken to redress that customer. Defendants must not sell or attempt to sell any good or service through the redress program, including in response to consumer inquiries relating to redress eligibility.

D.     Defendant must report on their notification and redress program under penalty of perjury:

1.     Defendant must submit a first report 60 days after the entry date of this Court Order, summarizing its compliance as of that date. Defendant also must submit, for a period of 7 months thereafter, monthly reports summarizing its compliance as of that date and reporting the following totals and corresponding dollar amounts: (1) Eligible Customers and Eligible Gift Card Balances identified; (2) reimbursements sent electronically (including through reverse charges

to credit cards and other financial accounts); (3) reimbursement checks mailed and negotiated; (4) Eligible Customers who have not been reimbursed for Eligible Gift Card Balances; and (5) for the final report, the amount paid to the Commission at the end of the redress period.

2.     If a representative of the Commission requests any information regarding the redress program, including but not limited to underlying customer reimbursement data, Defendant must submit it within 10 days of the request.

E.     The dollar amount in Subsection III.C of this Court Order shall become immediately due and payable to the Commission if Defendant fails to timely comply with the requirements of Section V of this Court Order.

## VI.     CUSTOMER INFORMATION

A.     IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees and attorneys and all other persons in active concert or participation with any of them who receive notice of this Court Order, are permanently restrained and enjoined from directly or indirectly failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. If a representative of the Commission requests in writing any information related to redress, Defendant must provide it, in the form prescribed by the Commission, within 14 days.

## VII.     ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendant obtain acknowledgments of receipt of this Court Order:

A.     Defendant, within 7 days of entry of this Court Order, must submit to the Commission an acknowledgment of receipt of this Court Order sworn under penalty of perjury.

B.      For 10 years after entry of this Court Order, Defendant must deliver a copy of this Court Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of this Court Order and all agents and representatives who participate in conduct related to the subject matter of this Court Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Court Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which Defendant delivered a copy of this Court Order, Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Court Order.

## VIII.    COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendant make timely submissions to the Commission:

A.      One year after entry of this Court Order, Defendant must submit a compliance report, sworn under penalty of perjury.

1.      Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, whether these businesses involve Mail, Internet or Telephone Order Sales; (d) describe in detail whether and how Defendant is in compliance with each Section of this Court Order; and

(e) provide a copy of each Order Acknowledgment obtained pursuant to this Court Order, unless previously submitted to the Commission.

B.     For 10 years after entry of this Court Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.     Defendant must report any change in: (a) any designated point of contact; or (b) the structure of Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Court Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Court Order.

C.     Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Court Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Court Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Fashion Nova, Inc., Matter No. 1823031.

///

## IX. RECORDKEEPING

IT IS FURTHER ORDERED that Defendant must create certain records for 10 years after entry of this Court Order, and retain each such record for 5 years. Specifically, Defendant must create and retain the following records:

A.    Accounting records showing the revenues from all goods or services sold;

B.    Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.    Records of all consumer complaints and requests for Refunds or reimbursement, whether received directly or indirectly, such as through a third party, and any response;

D.    All records necessary to demonstrate full compliance with each provision of this Court Order, including all submissions to the Commission; and

E.    A copy of each unique advertisement or other marketing material making any representation concerning the shipping, refunds, or returns of merchandise.

## X. COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Court Order and any failure to transfer any assets as required by this Court Order:

A.    Within 14 days of receipt of a written request from a representative of the Commission, Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of

24

the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.    For matters concerning this Court Order, the Commission is authorized to communicate directly with Defendant. Defendant must permit representatives of the Commission to interview any employee or other person affiliated with Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.    The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with Defendant, without the necessity of identification or prior notice. Nothing in this Court Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

## XI. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Court Order.

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:**

Date: _____

_____
STACY R. PROCTER, Cal. Bar. No. 221078
KENNETH H. ABBE, Cal. Bar No. 172416
EMILY WU, Cal. Bar No. 293670
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300; Fax: (310) 824-4380
sprocter@ftc.gov; kabbe@ftc.gov; ewu@ftc.gov

**FOR DEFENDANT:**

Date: 2-12-2020

_____
Richard Saghian, as an owner and officer of
Fashion Nova, Inc.

**FOR DEFENDANT:**

Date: 2-13-2020

_____
JEFFREY D. KNOWLES, ESQ.
ALEXANDRA MEGARIS, ESQ.
Venable LLP
600 Massachusetts Avenue, NW
Washington, D.C. 20001
Telephone 202-344-4860
Facsimile 202-344-8300
jdknowles@venable.com

## XI. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Court Order.

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:**

_____  Date: __April 20, 2020__

STACY R. PROCTER, Cal. Bar. No. 221078
KENNETH H. ABBE, Cal. Bar No. 172416
EMILY WU, Cal. Bar. No. 293670
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300; Fax: (310) 824-4380
sprocter@ftc.gov; kabbe@ftc.gov; ewu@ftc.gov


**FOR DEFENDANT:**

_____  Date: _____

Richard Saghian, as an owner and officer of
Fashion Nova, Inc.


**FOR DEFENDANT:**

_____  Date: _____

JEFFREY D. KNOWLES, ESQ.
ALEXANDRA MEGARIS, ESQ.
Venable LLP
600 Massachusetts Avenue, NW
Washington, D.C. 20001
Telephone 202-344-4860
Facsimile 202-344-8300
jdknowles@venable.com

[Email Subject Line]

      Important: Notice of Refund from Fashion Nova

 [Email Body]

You placed an order with Fashion Nova between [date] and [date] and didn't receive an item you ordered because:

- it was out of stock;
- missing from your order; or
- you received a damaged, used or incorrect item.

When that happened, we sent you a gift card. Instead, we should have refunded the money to the original method of payment you used. As a result, the Federal Trade Commission filed charges against Fashion Nova.

**To settle the lawsuit, we're giving customers refunds of the unused balances on their gift cards. Within the next three days, you'll see the money refunded to the original method of payment you used.** If the electronic refund doesn't go through, we'll send you a refund check via first class mail.

If you have questions about your refund, you can:

- email us at [to be determined@fashionnova.com]
- call [toll free number to be determined]

You can also read more about our settlement with the Federal Trade Commission.

          Attachment A

[Fashion Nova Letterhead]

Date

Customer Name
Street Address
City, ST ZIP Code

Subject: Notice of Refund from Fashion Nova

Dear [Customer Name]:

You placed an order with Fashion Nova between [date] and [date] and didn't receive an item you ordered because:

- it was out of stock;
- missing from your order; or
- you received a damaged, used or incorrect item.

When that happened, we sent you a gift card. Instead, we should have refunded the money to the original method of payment you used. As a result, the Federal Trade Commission filed charges against Fashion Nova.

**To settle the lawsuit, we're giving customers refunds of the unused balances on their gift cards. Your refund check is attached below.** You must cash or deposit the check within 60 days.

If you have questions about your refund, you can:

- email us at [to be determined@fashionnova.com]
- call [toll free number to be determined]

You can also read more about our settlement with the Commission at [www.ftc.gov/to-be-determined].

Sincerely,

[Fashion Nova representative name]

28                                                    Attachment B

Attachment C

29

Fashion Nova
Street Address
City, ST ZIP Code

Important: Notice of Refund from Fashion Nova

Recipient Name
Street Address
City, ST ZIP Code