Brittany A. Stillwell
info@brittstillwell.com
1055 W 7th Street, 33rd Floor
Los Angeles, California 90017
Tel: 702-907-1908
Fax: 213-513-5102
PLAINTIFF APPEARING IN PRO PER

**U.S. DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**BRITTANY A. STILLWELL**, *an individual*

Plaintiff,

v.

**FASHION NOVA, LLC**, *a California Limited Liability Company*; **NIXON PEABODY LLP**, *a New York Limited Liability Partnership*; **INTRIVO DIAGNOSTICS, INC**, *a Delaware Corporation*; **FN LOGISTICS, LLC**, *a Delaware Limited Liability Company*; **RICHARD D. SAGHIAN**, *an individual*; **ERICA A. MEIERHANS**, *an individual*; **STACI J. RIORDAN**, *an individual*; and **REEVE BENARON**, *an individual*

Defendants.

Case No. 2:21-cv-07040-GW-MARx

**FIRST AMENDED COMPLAINT FOR:**

*1)* **FORCED LABOR,** *(18 U.S.C. § 1589(a)(2), 18 U.S.C. § 1595);*
*2)* **FORCED LABOR,** *(18 U.S.C. § 1589(a)(3), 18 U.S.C. § 1595);*
*3)* **FORCED LABOR,** (*18 U.S.C. § 1589(b), 18 U.S.C. § 1595);*
*4)* **CALIFORNIA TRAFFICKING VICTIMS' PROTECTION ACT,** *(Ca. Civil Code Section 52.5);*
5) **CIVIL RICO,** *(18 U.S.C. § 1962(c))*, **Predicate Act: HONEST SERVICES FRAUD,** *(18 U.S.C. § 1346)*;
6) **CIVIL RICO,** *(18 U.S.C. §*

*1962(c)),* **Predicate Act: WIRE FRAUD,** *(18 U.S.C. § 1343);*
*7)* **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

**JURY TRIAL REQUESTED**

Plaintiff BRITTANY STILLWELL alleges as follows:

## I. INTRODUCTION

1. This action arises from the racketeering activities and conspiracies perpetrated against Plaintiff, Brittany A. Stillwell, ("Stillwell"), by the Defendants.

2. While working for Fashion Nova, Plaintiff obtained firsthand knowledge of Fashion Nova's unlawful conduct, such as Fashion Nova's ongoing worker compensation fraud, payroll tax evasion, and its exploitation of undocumented workers.

3. In addition to working for Fashion Nova, Plaintiff's company, The Compliance Firm LLC, ("Compliance Firm") leased employees to Fashion Nova and was eventually hired to provide COVID-19 testing to Fashion Nova's nearly 10,000 employees, contractors, and vendors.

4. From July 2020 to January 2021, at the height of the COVID-19 pandemic, Compliance Firm recruited over 400 employees who worked at Fashion Nova's Santa Fe Springs warehouse and distribution center.

5. In a reckless disregard for human life, Fashion Nova knowingly under-reported and intentionally concealed *hundreds* of positive COVID-19 cases from employees, contractors, and vendors, including multiple COVID-19 outbreaks at its Santa Fe Springs warehouse in November 2020 and December 2020.

6. Fashion Nova intentionally failed to inform employees, contractors, and vendors when they were exposed or close contacts of COVID-19 positive persons. Fashion Nova executives feared employees would stop coming to work if they knew the actual number of positive COVID-19 cases.

7. Fashion Nova encouraged and knowingly allowed symptomatic *and* COVID-19 positive employees to work, citing staffing shortages for this rationale. Fashion Nova's reprehensible actions exposed *thousands* of its nearly 10,000 employees to COVID-19.

8. Plaintiff made multiple complaints to Fashion Nova executives and other government agencies regarding the unlawful conduct described herein.

9. Fashion Nova was concerned that any negative COVID-19 related press or lawsuits would deter investors and adversely affect Fashion Nova's sales and profits.

10. To silence Plaintiff and to shield itself from COVID-19 related litigation, Fashion Nova asked Stillwell to sign a backdated non-disclosure agreement, ("NDA"), which contained an arbitration agreement, and an agreement to indemnify Fashion Nova against future COVID-19 related litigation. The NDA would have been binding for Stillwell *and* Compliance Firm.

11. After Stillwell refused to sign the NDA, Fashion Nova threatened to leverage its "connections" and social media "clout" to "destroy" and "bankrupt" Stillwell and her businesses. Fashion Nova further threatened it had the means to make Plaintiff "disappear" if she ever pursued or participated in any legal claims against Fashion Nova.

12. In January 2021, Fashion Nova owed Compliance Firm over $500,000.00 and refused to pay unless Stillwell signed the NDA. After Stillwell refused to sign to the NDA, Fashion Nova terminated all its contracts with Stillwell and Compliance Firm then refused to pay its outstanding balances and unpaid invoices.

13. In January 2021, Fashion Nova enlisted the help of the Defendants, including several Nixon Peabody attorneys, and began a barrage of harassment, threats, conspiracies, and schemes to harm and intimidate Stillwell.

14. On April 15, 2021, Stillwell sent Fashion Nova a second demand for payment of its outstanding balances and unpaid invoices. The next day, Fashion Nova sued Compliance Firm[1] in federal court for over $600,000.00. The lawsuit, filed by Nixon Peabody, accused Compliance Firm of "misrepresenting itself as a qualified medical services provider and charging Fashion Nova over $600,000 for workforce testing services that were never provided."

15. Nixon Peabody, Fashion Nova, and Intrivo Diagnostics contrived fictious allegations, falsified documents, offered perjured testimony, destroyed evidence, and concealed material facts to prevent Compliance Firm from defending the frivolous FNL Complaint.

16. Fashion Nova's frivolous lawsuit cost Compliance Firm and Stillwell over $10,000,000 after clients canceled COVID-19 testing contracts amidst the false allegations of fraud.

[1] FN LOGISTICS, LLC v. THE COMPLIANCE FIRM LLC, d/b/a COMPLIANT CARE STAFFING; and DOES 1 though 10, Case No. 2:21-cv-03312-GW-MAR, ("**FNL Complaint**").

17. The Defendants' relentless harassment, threats, and conspiracies to defraud Stillwell are ongoing and continue to cause irreparable financial, emotional, and physical harm to Stillwell.

## II. PARTIES

18. Plaintiff, Brittany A. Stillwell, ("Stillwell,") is an individual residing in Los Angeles County, California. Stillwell owns The Compliance Firm LLC and its wholly owned subsidiaries.

19. Defendant, Fashion Nova, LLC, ("FN"), is a California limited liability company with its headquarters at 2801 E 46th Street, Vernon, California 90058.

20. Upon information and belief, Fashion Nova, LLC has three members: Nova 21, LLC, FN Logistics, LLC and Fashion Nova Holdings, LLC.

(a) Nova 21, LLC is a California limited liability company with its business address in Berkeley, California

(b) Upon information and belief, Nova 21, LLC has two members, Fashion Nova, LLC and FN Logistics, LLC.

21. FN Logistics, LLC ("FNL") is a Delaware limited liability corporation with its headquarters at 2801 E 46th Street, Vernon, California 90058.

22. Upon information and belief, FN Logistics, LLC has one member, FNL, Inc. FNL, Inc. is a Delaware corporation with its headquarters at 2801 E 46th Street, Vernon, California 90058.

23. Defendant, Richard D. Saghian, ("Saghian") is an individual residing in Los Angeles County, California. Upon information and belief, Saghian is the founder and CEO of Fashion Nova, LLC and all of its subsidiaries.

24. Defendant, Erica A. Meierhans, ("Meierhans") is an individual residing in Los Angeles County, California. Meierhans is an attorney licensed in California and the General Counsel and Chief Compliance Officer at Fashion Nova LLC and its subsidiaries.

25. Defendant Nixon Peabody LLP, ("Nixon Peabody") is a New York limited liability partnership with its headquarters at 53 State Street, Boston, Massachusetts 02109. Nixon Peabody conducts business in California from an office located at 300 S Grand Avenue #4100, Los Angeles, California 90071.

26. Defendant, Staci J. Riordan, ("Riordan") is an individual residing in Los Angeles County, California. Riordan is an attorney licensed in California and is a partner at Nixon Peabody LLP. Riordan is also the CEO and president of Samicah Corporation, Inc. ("Samicah"), where Riordan provides legal services. Samicah conducts business in California from Nixon Peabody's Los

Angeles office, located at 300 S Grand Avenue #4100, Los Angeles, California 9007.1

27. Defendant Intrivo Diagnostics, Inc ("Intrivo") is a Delaware corporation with its headquarters located at 65 Clyde Road, Somerset, New Jersey 08873. Intrivo Diagnostics, Inc. is **not** a registered or qualified business in California but conducts business in California out of an office located at 2021 Santa Monica Blvd #11, Santa Monica, CA 90404.

28. Defendant, Reeve Benaron, ("Benaron") is an individual residing in Los Angeles County, California. Benaron is a Co-owner and the CEO of Intrivo Diagnostics, Inc.

29. Plaintiff Stillwell is informed and believes, and thereupon alleges that, at all relevant times, FN, FNL, Intrivo, Nixon Peabody, Saghian, Benaron, Meierhans, and Riordan, and each of them, were the principal, agent, servant, employee, vendor, or in some other legal relationship to the others, whereby legal liability is imputed from one party to the others.

30. At all relevant times, FN, FNL, Intrivo, Nixon Peabody, Saghian, Benaron, Meierhans, and Riordan, were acting within the course and scope of their agency, servant, or employment relationship.

## III. JURISDICTION AND VENUE

31. There are two sources of subject matter jurisdiction in this Court:

(a) Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction because the parties' citizenship is diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

(b) Pursuant to Title 28 U.S.C. § 1331, this Court has subject matter jurisdiction because this matter involves questions, issues and/or claims arising under federal law.

32. Defendants Intrivo and Nixon Peabody are diverse parties. Intrivo is incorporated in Delaware and maintains its headquarters in New Jersey. Nixon Peabody is incorporated in New York and maintains its headquarters in Massachusetts. The amount in controversy exceeds $75,000 as to each defendant.

33. This matter involves questions, issues and/or claims arising under federal racketeering laws codified at 18 U.S.C. § 1961 et seq.

34. This Court has personal jurisdiction over all Defendants because each Defendant had, and continues to have, contacts with California that are continuous, systematic, purposeful, and the specific claims in the lawsuit arise from those particular contacts.

35. Pursuant to 18 U.S.C. § 1596(a), this Court has extra-territorial jurisdiction over Plaintiff's claims arising under 18 U.S.C. § 1589.

36. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's related state law claims.

37. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Los Angeles County, which is in this Court's judicial district.

38. Venue is also proper in this Court 28 U.S.C. § 1391(d), because Defendants FN, FNL, Nixon Peabody, and Intrivo transact business in Los Angeles County. Venue is also proper in this Court 28 U.S.C. § 1391(b), because Defendants Saghian, Benaron, Meierhans, and Riordan all reside and work in Los Angeles County, which is in this Court's judicial district.

## IV. FACTUAL BACKGROUND

39. Plaintiff, Stillwell owns The Compliance Firm LLC, ("Compliance Firm") and its wholly owned subsidiaries.

40. Stillwell is an employee of Compliance Firm, and also acts as an agent of Compliance Firm and its subsidiaries. Stillwell also works as a sole proprietor when consulting for certain clients.

41. In California, Compliance Firm does business as Compliant Care Staffing, ("CCS").

42. In June 2020, Compliance Firm and FNL entered into a valid and enforceable Nurse Staffing Agreement ("OHN Agreement") under which Compliance Firm staffed Occupational Health Nurses to provide non-clinical services at FNL's warehouse, located at 12588 Florence Ave., Santa Fe Springs, California, 90670.

43. In July 2020, Compliance Firm entered into a valid and enforceable Employee Leasing Agreement ("Leasing Agreement") with FN and FNL. Under the Leasing Agreement, Compliance Firm recruited and leased employees ("Leased Employees") who worked at FN and FNL's various warehouses.

44. In September 2020, Stillwell, FNL and FN entered into a valid and enforceable Consultancy Agreement ("OHN Consultancy Agreement"), after an Occupational Health Nurse ("OHN") alleged that Fashion Nova was "committing work comp fraud."

45. Under the OHN Consultancy Agreement, Stillwell was asked to review FN's worker compensation claims and processes to determine why the OHN suspected fraud.

46. Stillwell was also asked to assist FN in developing its occupational health clinic and in-house drug screening program. Parties agreed that Stillwell would be paid $175 per hour and work no more than twenty hours per *month*.

47. On November 20, 2020, Stillwell, FNL and FN entered into a second valid and enforceable consultancy agreement ("COVID-19 Consultancy Agreement"), where Stillwell was asked to consult on FN's Injury and Illness Prevention Program ("IIPP"), Emergency Disaster Plan, and assist Fashion Nova with onsite COVID-19 testing.

48. Under the COVID-19 Consultancy Agreement, Parties agreed that Stillwell would be compensated $175 per hour and work no more than 20 hours each *week*[2] as a consultant for FN.

49. On November 25, 2020, Compliance Firm, FNL and FN entered into a valid and enforceable, Joint Venture ("Joint Venture"), where Compliance Firm and FN agreed to build a COVID-19 laboratory at Fashion Nova's Santa Fe Springs Warehouse, located at 12588 Florence Avenue, Santa Fe Springs, California 90670.

50. Under the Joint Venture, FN asked Compliance Firm to obtain the CLIA certificate, recruit, and train laboratory staff, and purchase medical and non-medical supplies. All policies and documents were to be signed off by FN's legal department, who consulted with Nixon Peabody's Health Care Compliance practice.

---

[2] Stillwell was previously working as OHN consultant no more than 20 hours each *month*.

51. Stillwell was an intended third-party beneficiary of the Joint Venture agreement.

52. The OHN Agreement, OHN Consultancy Agreement, Leasing Agreement, Recruiting Agreement, COVID-19 Consultancy Agreement, and Joint Venture were all six separate valid and enforceable agreements.

53. Stillwell entered the OHN Agreement, Leasing Agreement, Recruiting Agreement, and Joint Venture in good faith on behalf of Compliance Firm.

54. From September 2020 to January 2021 FN and FNL concealed hundreds of positive COVID-19 cases from its employees, vendors, contractors, and suppliers. Stillwell reported this conduct to local, State and federal agencies and officials.

55. In addition to the allegations described herein, Stillwell emailed Lori Ott, ("Ott") about serious discrimination, retaliation, and safety complaints that were escalated to Stillwell. Stillwell raised over twenty complaints before Meierhans and Ott told Stillwell to stop *emailing* Ott. Ott is Fashion Nova's Director of Human Resources.

56. Ott and Meierhans made up rumors about Stillwell and created hurdles to sabotage Stillwell success.

57. In August 2020 after Stillwell reported the sexual harassment of a Leased Employee. Ott falsely accused Stillwell of hiring attractive women to solicit attention from male managers and supervisors.

58. Ott informed Stillwell that she was aware Stillwell's past attempts to "sue wealthy men based on allegations of sex trafficking" and wanted to assure Stillwell that those "antics would that work at Fashion Nova."

59. Ott then showed Stillwell an article which detailed Stillwell's sex trafficking experience, as well as links to court documents pertaining to the incident.

60. Ott accused Stillwell of trying to use Fashion Nova to "rebrand" herself from being more than what she was. According to Ott, "the article says you're a prostitute."

61. On different occasions Ott mocked Stillwell by making remarks to Stillwell about "working for free," and stating "I thought working for free with your thing" when Stillwell and Ott discussed Stillwell's compensation. Ott once told Stillwell that she was "shocked" that Stillwell "expected it to be compensated for anything" and told Stillwell to be "thankful" that Ott allowed her to continue providing services for FN.

62. Stillwell repeatedly complained about this behavior to FN and FNL executives.

63. On or about August 27, 2020, Ott threatened to harm Stillwell's reputation and caused Stillwell psychological harm by misrepresenting Stillwell's traumatic sexual assault experience as "prostitution" after Stillwell made several complaints about sexual harassment, safety concerns, and discriminatory hiring practices.

64. On or about August 28, 2020, Ott instructed Stillwell to review the training procedures and safety policies for the cherry pickers and ensure Cal/OSHA compliance.

65. On or about September 8, 2020, Ott, Meierhans, FNL and FN threatened to sue Stillwell and Compliance Firm for breach of contract, negligence, and fraud after Stillwell raised concerns about worker compensation fraud.

66. On or about September 11, 2020, Ott, Meierhans, FNL and FN threatened to terminate all of Stillwell and Compliance Firm's agreements and sue Stillwell and Compliance Firm for breach of contract, negligence, and fraud if Stillwell reported the FN, FNL or the occupational health nurse for their involvement in several worker compensation schemes.

67. Ott then refused to approve any of Stillwell or Compliance Firm's invoices. Ott's refusal to approve invoices resulted in Compliance Firm going nearly 90 days without payment for services Stillwell provided to FN and FNL.

68. On or about October 1, 2020, Ott, Meierhans, FNL and FN threatened to sue Stillwell for breach of fiduciary duties if Stillwell reported FN and FNL for concealing positive COVID-19 cases.

69. On or about October 5, 2020, was instructed to develop a Reasonable Suspicion policy with training materials for the security team.

70. On or about October 7, 2020, Ott asked Stillwell to develop a Department of Transportation ("DOT") compliant drug screen program.

71. On October 20, 2020, Stillwell was instructed to assist with "putting on a Flu clinic." Meierhans and Ott demanded both projects be completed by November 1, 2020.

72. On or about December 28, 2020, Ott, Meierhans, FNL and FN threatened to use fraudulent documents in court against Stillwell and Compliance Firm, if Stillwell continued to refuse to sign the NDA and indemnity agreements, as alleged herein.

73. Stillwell refused to sign the NDA and indemnification agreement. Stillwell never signed an arbitration agreement.

74. On December 31, 2020 Stillwell complained to Ian Dill ("Dill"), Fashion Nova's Director of Safety, about the mistreatment and disrespect she's been forced to endure and complained that Ott and Meierhans unprofessional conduct always went unchecked. Dill warned that FN and FNL would not pay

its outstanding invoices and would sue Stillwell and Compliance Firm for breach of contract if Stillwell "quit the team."

75. On or about January 1, 2021, Stillwell was asked again to sign an NDA and indemnity agreement. Stillwell refused and Meierhans instructed FN finance employees to stop payment on all unpaid invoices submitted by Stillwell and Compliance Firm. FN and FNL also refused to honor oral agreements unless Stillwell signed an NDA that contained an arbitration agreement, and an indemnity agreement.

76. On or about January 3, 2021, Stillwell assisted the laboratory supervisor with training sixteen (16) new lab staff. Twenty (20) CSA Tests were used for training purposes.

77. On January 4, 2021, Dill informed Stillwell that FN CEO, Saghian, wanted his relatives to get tested on January 5, 2021. Stillwell refused because the laboratory was not properly open, and testing required a prescription.

78. Dill informed Stillwell that if she refused to perform testing on January 5, 2021, then FN and FNL would cancel all Compliance Firm contracts, sue her for breach of contracts, then report Stillwell and Compliance Firm for illegally performing COVID-19 testing on January 3, 2021.

79. FN and FNL threatened to use video footage, obtained from the laboratory during Compliance Firm's staff training on January 3, 2021, as proof of Stillwell and Compliance Firm's illegal COVID-19 testing.

80. Dill agreed to delete the lab footage from January 3, 2021, in exchange for Stillwell performing testing for Saghian's relatives on January 5, 2021.

81. Stillwell is a registered nurse, licensed in California, and feared disciplinary action if FN and FNL made false reports about her to the California Board of Nursing or California Department of Public Health.

82. On January 5, 2021 Stillwell performed COVID-19 testing out of fear of being falsely accused of a crime and fear of financial harm.

83. On January 6, 2021, at approximately 10:30AM, Stillwell informed FN that over **forty-five** (45) employees at work reported having COVID-19 symptoms. Of those employees, over five employees reported testing positive for COVID-19 less than a week prior.

84. Stillwell provided FN with the names and contacts of the employees. FNHR Department also always had access to this information, and in real time.

85. On January 6, 2021, approximately 11:30AM, Stillwell informed FN that she would not be conducting any more testing until the lab was properly

functioning. Later that day, Meierhans emailed Stillwell a Notice of Termination for all existing agreements.

86. FN, FNL used threats of financial and reputational harm to coerce Stillwell to comply with their demands, against her will.

87. At all times FN and FNL were in arrears and owed money to Stillwell and Compliance Firm because Ott refused to approve invoices to intentionally cause delays to prevent payment of services.

88. Ott and Meierhans knew that FN and FNL owed Stilwell and Compliance Firm money and often use that to coerce and threaten Stillwell to comply with her unreasonable demands.

89. On or about April 13, 2021, FN, FNL, Meierhans, Riordan and Nixon Peabody agreed, conspired, and did abuse the law or legal process by filing a frivolous lawsuit, FN Logistics, LLC vs. The Compliance Firm LLC *d/b/a* Compliant Care Staffing; and Does 1 through, Case No. 2:21-cv-03312-GW-MAR ("FNL Complaint"), against Compliance Firm.

90. After the FNL Complaint was filed, clients of Stillwell and Compliance Firm emailed and texted screenshots of several articles in which Compliance Firm was accused of fraud, including an article from Law.com, and also an article posted ChamberLitigation.com.

91. The Law.com article stated,

> "Warehouse operator FN Logistics sued Compliant Care Staffing Friday in California Central District Court for alleged fraud and breach-of-contract in connection with COVID-19 testing. The suit, filed by Nixon Peabody, accuses Compliant Care of misrepresenting itself as a qualified medical services provider and charging FN over $600,000 for workforce testing services that were never provided. Counsel have not yet appeared for the defendant. The case is 2:21-cv-03312, FN Logistics, LLC v. The Compliance Firm LLC d/b/a Compliant Care Staffing et al."

92. The Law.com article can be accessed online at the following web address: https://www.law.com/radar/card/fn-logistics-llc-v-the-compliance-firm-llc-d-b-a-compliant-care-staffing-et-al-39858196-0/

93. Below is a screenshot of the Law.com article:



AA law.com

**Access the news you need** to keep up with your clients and stay ahead of the competition all in one place.

GET STARTED FOR FREE

**NEW SUIT**

Warehouse operator FN Logistics sued Compliant Care Staffing Friday in California Central District Court for alleged fraud and breach-of-contract in connection with COVID-19 testing. The suit, filed by Nixon Peabody, accuses Compliant Care of misrepresenting itself as a qualified medical services provider and charging FN over $600,000 for workforce testing services that were never provided. Counsel have not yet appeared for the defendant. The case is 2:21-cv-03312, FN Logistics, LLC v. The Compliance Firm LLC d/b/a Compliant Care Staffing et al.

Feedback

94. The ChamberLitigation.com article stated,

"**California Company Sued for Charging Over $600,000 for Just 40 COVID-19 Tests**.

Overview: FN Logistics, LLC sued The Compliance Firm LLC in California federal court, alleging that it provided COVID-19 tests to only 40 individuals despite receiving $600,000.

**The Complaint:** FN Logistics sought to offer COVID-19 tests to its warehouse employees and retained The Compliance Firm to handle the testing. Instead of providing services quickly, the complaint alleges that The

Compliance Firm went through a time-consuming and expensive process of building COVID-19 testing infrastructure from scratch, passing all costs on to FN Logistics, and ultimately charged over $600,000 to perform just 40 tests. FN Logistics asserts several state-law claims related to its contract."

95. The ChamberLitigation.com article also contains a link to the FNL Complaint. The ChamberLitigation.com can be accessed online at the following web address: https://www.chamberlitigation.com/RoundUp57

96. Below is a screenshot of the ChamberLitigation.com article:

chamberlitigation.com

**4. California Company Sued for Charging Over $600,000 for Just 40 COVID-19 Tests.**

**Overview:** FN Logistics, LLC sued The Compliance Firm LLC in California federal court, alleging that it provided COVID-19 tests to only 40 individuals despite receiving $600,000.

**The Complaint:** FN Logistics sought to offer COVID-19 tests to its warehouse employees and retained The Compliance Firm to handle the testing. Instead of providing services quickly, the complaint alleges that The Compliance Firm went through a time-consuming and expensive process of building COVID-19 testing infrastructure from scratch, passing all costs on to FN Logistics, and ultimately charged over $600,000 to perform just 40 tests. FN Logistics asserts several state-law claims related to its contract.

97. Stillwell's reputation and the reputation of Compliance Firm has been harmed indefinitely due to each of the Defendants' intentional destruction of her and Compliance Firm's reputations.

98. Accusations of fraud affect the cost of Compliance Firm's business insurance premiums and can make Compliance Firm ineligible for certain government grants and contracting opportunities.

99. Accusations of fraud and moral turpitude as alleged in the FNL Complaint can prevent Stillwell's ability to practice law and nursing.

100. The FNL Complaint harmed the Compliance Firm and its subsidiaries, as well as Stillwell's ability to earn a livelihood as an entrepreneur, attorney a registered nurse.

101. Saghian, Meierhans, FN, FNL, Nixon Peabody, and Riordan intentionally tried to destroy Stillwell's ability to earn a living as an entrepreneur, small business owner, attorney, and register nurse.

102. Stillwell provided healthcare consultancy services to FN and FNL in compliance with the Cal/OSHA COVID-19 emergency temporary standards. ("Cal/OSHA ETS")

103. The COVID-19 Consultancy Agreement and OHN Consultancy Agreement created a fiduciary duty between:

a. Stillwell and Saghian,

b. Stillwell and Meierhans,

c. Stillwell and FN,

d. Stillwell and FNL,

e. Stillwell and Riordan, and

f. Stillwell and Nixon Peabody.

104. Saghian, Meierhans, Riordan, FN, FNL and Nixon Peabody were aware that Stillwell was not a licensed attorney and was not in the business of providing legal services.

105. Saghian, Meierhans, Riordan, FN, FNL and Nixon Peabody were aware that Stillwell had no experience or expertise with the Cal/OSHA ETS standards, as these standards were new when they became effective on November 30, 2020.

106. Saghian, Meierhans, Riordan, FN, FNL and Nixon Peabody were aware that Stillwell's COVID-19 testing experience was limited to the COVID-19 pandemic, which was declared a national emergency on March 13, 2020.

107. Meierhans, a licensed attorney in California, and general counsel for FN and FNL, consulted Nixon Peabody law firm to provide legal and expert healthcare consulting and services in connection with the Joint Venture COVID-19 testing lab, and compliance with the Cal/OSHA ETS.

108. Nixon Peabody has a Health Care practice and purports to be experts in health care law.

109. Meierhans, Riordan and Nixon Peabody knew or should've known that Stillwell and Compliance Firm were the intended third-party beneficiaries of Riordan and Nixon Peabody's legal advice to FN, FNL, Saghian, and Meierhans.

110. Meierhans, Riordan and Nixon Peabody knowingly undertook the responsibility to act on behalf of and for the benefit of the Joint Venture, OHN Agreement, OHN Consultancy Agreement, and COVID-19 Consultancy Agreement, in providing COVID-19 testing services at FN and FNL's warehouses.

111. Meierhans, Riordan, and Nixon Peabody did not disaffirm Stillwell's reliance. Meierhans dissuaded Stillwell from seeking independent legal advice and assured Stillwell that Nixon Peabody were experts and FN would not pass off the costs of Nixon Peabody's health care consultancy to Stillwell or Compliance Firm.

112. Stillwell and Compliance Firm reasonably relied upon Meierhans, Riordan and Nixon Peabody's integrity to give honest legal advice and recommendations so she could assist in providing "COVID-19 testing to FN and FNL's "roughly 10,000 warehouse employees."

113. Stillwell reasonably relied upon FN and FNL to act honestly and in good faith and to honor all oral and written agreements.

114. Saghian, Meierhans, Riordan, FN, FNL and Nixon Peabody owed fiduciary duties to Stillwell.

115. Saghian, Meierhans, Riordan, FN, FNL and Nixon Peabody acted in their own financial self-interests and breached their fiduciary duties to Stillwell and by:

(a) Devising and participating in multiple schemes to conceal material facts about Intrivo, FNL and FN's use of the CareStart Antigen COVID-19 Tests, ("CSA Tests");

(b) Falsely alleging that Compliance Firm illegally sold FN and FNL the CSA Tests, despite Stillwell and Compliance Firm's acting pursuant to their reasonable reliance on Meierhans' and Nixon Peabody' legal advice regarding the procurement and use of the CSA Tests; and

(c) Knowingly filing a lawsuit against Compliance Firm that contained false and disparaging allegations with the intention to harm Stillwell and Compliance Firm.

(d) Saghian, Meierhans, Riordan, FN, FNL and Nixon Peabody made false misrepresentations in a lawsuit against Compliance Firm despite having evidentiary support that states otherwise.

116. Plaintiff Stillwell is a "person" within the meaning of 18 U.S.C. § 1961(3), which defines a person as "any individual or entity capable of holding a legal or beneficial interest in property."

117. Plaintiff Stillwell is a "person" within the meaning of 18 U.S.C. § 1964(c), which states:

"Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final."

118. Stillwell has business and property interests in her one hundred percent (100 %) ownership of Compliance Firm and its subsidiaries.

119. Stillwell has a business and property interests for Compliance Firm's accounts receivable and the accounts receivable for Compliance Firm's subsidiaries.

120. Stillwell is an employee of Compliance Firm and has a business interest in her salary from Compliance Firm.

121. Stillwell's base annual salary is $750,000.00 + bonuses.

122. Stillwell's bonuses are ten percent (10%) of Compliance Firm's annual revenue, plus 10% of revenue generated by Compliance Firm's wholly owned subsidiaries. Stillwell has property and business interest in her salary from Compliance Firm.

123. Stillwell has property and business interest in the monies owed to her by FN and FNL for the services Plaintiff provided, as described herein.

124. In January 2021, Stillwell loaned Compliance Firm $350,000.00 that pay operational costs, legal fees and settlements related to employment law cases, that FN and FNL refused to indemnify Compliance Firm against.

125. Stillwell loaned Compliance Firm $350,000.00 in reliance on FN and FNL's promises to pay for the services Stillwell and Compliance Firm provided to FN and FNL.

126. Compliance Firm is unable to repay to Stillwell the $350,000.00 loan, as a direct result and proximate cause of the Defendants' conduct described herein.

127. Compliance Firm has also been unable to pay Stillwell's salary and bonuses.

128. As a direct and proximate result of the Defendants' conducts alleged herein, Compliance Firm's inability to pay Stillwell's base monthly salary of $62,500.00 ($750,000.00/year), has caused Stillwell to be unable to pay for personal living expenses, and business expense, such as employee salaries and operational costs of Compliance Firm's subsidiaries.

129. Further, Stillwell personally guaranteed all of Compliance Firm's lines of credit. When Compliance Firm was unable to pay creditors, Stillwell's personal credit score was adversely affected.

130. Stillwell's expected 2021 salary, with her bonus, was expected to be $5,750,000.00.

131. Defendants' conduct alleged herein deprived Compliance Firm out of an identifiable and specific and ascertainable amount of money in the sum of $3,194,489.20 for monies Compliance Firm paid on behalf of FN and FNL pursuant to the OHN Consulting Agreement, COVID-19 Consulting Agreement, and Joint Venture.

132. Defendants' conduct alleged herein deprived Compliance Firm out of an identifiable and specific and ascertainable amount of money in the sum of $370,753.55 for unpaid invoices, unpaid payroll taxes, plus late fees, interests, and attorney fees to collect payment.

133. Defendants' conduct alleged herein deprived Compliance Firm out of a total of $3,565,242.75, an identifiable and specific and ascertainable amount of money.

134. The Defendants' conduct described Stillwell of honest services.

135. The Defendants' conduct described herein deprived Stillwell of honest services from Compliance Firm in monies that Stillwell loaned Compliance Firm, as described herein. Stillwell reasonably relied on Compliance Firm's repayment.

136. The Defendants' conduct described herein deprived Stillwell of honest services from Compliance Firm for Stillwell's total expected salary. Stillwell reasonably relied on Compliance Firm's payment of her salary and bonuses.

137. The stress caused by the Defendants conduct alleged herein caused Stillwell's blood pressure to become critically elevated, which ultimately caused Stillwell to sustain a spontaneous coronary artery dissection ("SCAD"), which is life threatening and can result in sudden cardiac arrest and death.

138. Stillwell had no previous history of high blood pressure and had never needed medications to manager her stress or blood pressure.

139. While drafting this Complaint, Stillwell frequently broke out in hives and had panic attacks that required Stillwell to medicate with antihistamines and medications that made Stillwell drowsy and often limited her cognitive ability to fully function at work.

140. Stillwell's dangerously elevated blood pressure continues to exacerbate Stillwell's SCAD, which has significantly decreased Stillwell's life expectancy and quality of life.

141. Due to decreased cardiac output, Stillwell is chronically fatigued and struggles to carry out daily tasks such as cooking, cleaning, and work.

142. Stillwell was hospitalized multiple times due to stress induced cardiac related complications, that were directly caused by Defendants' conduct described herein.

**RICO ENTERPRISE #1 – FASHION NOVA ENTERPRISE ("FNE")**

143. Enterprise Members: Fashion Nova Enterprise, ("FNE"), is an "enterprise" within the meaning of 18 U.S.C. §1961(4) whose members are:

(a) Fashion Nova, LLC, ("FN"),

(b) Fashion Nova Holdings, LLC, ("FNH"),

(c) 2801 EAST 46TH STREET, LLC, ("2801-LLC"),

(d) 1360 EAST 17TH STREET, LLC, (“1360-LLC”),

(e) SAM MARCEL COSMETICS, INC, (“SMC”),

(f) FN LOGISTICS, LLC, (“FNL”),

(g) UFF, LLC, (“UFF”), and

(h) FN EXPRESS, INC, (“FNX”)

144. Each member of FNE are “persons” within the meaning of 18 U.S.C. § 1961(3), which defines a person as “any individual or entity capable of holding a legal or beneficial interest in property.”

**FNE RICO ACTORS: NAMED RICO DEFENDANTS**

145. Actors in the Fashion Nova enterprise consist of the following RICO Defendants: Saghian, Meierhans, Riordan, Nixon Peabody, Benaron, Markel, and Intrivo, hereafter (“FNE RICO Defendants”). The FNE RICO Defendants are “persons” within the meaning of 18 U.S.C. § 1961(3).

146. **Defendant Richard Saghian** has been employed by FNE as the CEO of Fashion Nova, LLC and its subsidiaries, affiliates, and foreign branches since 2007.

a) Conduct and Participation in FNE’s affairs: Saghian knowingly devised and intended to devise and participate in multiple schemes and artifices to defraud vendors, investors, customers, and employees of FN and FNL.

b) Bribes and Kickbacks: Saghian received cash bonuses in exchange for his participation in FNE's racketeering activities.

147. **Defendant Erica Meierhans** has been employed by FNE as the general counsel and compliance officer of Fashion Nova, LLC and its subsidiaries, affiliates, and foreign branches since 2018.

a) Conduct and Participation in FNE's affairs: Meierhans knowingly devised and intended to devise and participate in multiple schemes and artifices to defraud vendors, investors, customers, and employees of FN and FNL.

b) Bribes and Kickbacks: Upon information and belief, On or about July 2021, Meierhans was promoted and given a bonus in exchange for her agreement to provide perjured testimony pertaining to the undocumented workers, workers compensation fraud, and OHN program, and for her participation in in FNE's racketeering activities.

148. **Defendant Staci Riordan** is a partner at Nixon Peabody LLP and works out of the Los Angeles, California office. Riordan associates with FNE as a vendor who ordinarily provides legal services to FNE. Riordan has been providing services to FNE since 2018.

a) Conduct and Participation in FNE's affairs: Riordan knowingly devised and intended to devise and participate in multiple schemes and artifices to defraud vendors, investors, customers, and employees of FN and FNL.

b) Bribes and Kickbacks: Riordan received cash bonuses in exchange for her participation in FNE's racketeering activities.

149. **Defendant Nixon Peabody LLP** is a law firm that associates with FNE as a vendor that ordinarily provides legal services to FNE. Nixon Peabody associates with FNE as a vendor who ordinarily provides legal services to FNE. Nixon Peabody has been providing services to FNE since 2018.

(a) Conduct and Participation in FNE's affairs: Nixon Peabody is the employer of at least six attorneys, including at least two partners, and many of other non-named, and "Doe" RICO actors, who directly and indirectly participated in the conduct of FNE's affairs through a pattern of racketeering activity, specifically:

a) Nixon Peabody advised FNE on tax and employment law matters, including aiding with FNE's tax evasion schemes;

b) Nixon Peabody also advised FNE on health law matters, including the Joint Venture and compliance with the Cal/OSHA ETS, as described herein.

c) Bribes and Kickbacks: Nixon Peabody received cash bonuses in exchange for its participation in FNE's racketeering activities.

150. **Defendant Reeve Benaron** is the CEO and a Co-Founder of Intrivo and president of Socialcom.com. Benaron associates with FNE as a vendor who ordinarily provides marketing services to FNE. Benaron has been providing services to FNE since 2018.

a) Conduct and Participation in FNE's affairs: Benaron directly and indirectly participated in the conduct of FNE's affairs through a pattern of racketeering activity, specifically:

1. Benaron agreed to offer perjured testimony in the FNL Complaint;
2. Benaron agreed to assist FN, FNL, Intrivo and Nixon Peabody with reselling the expired CSA Tests.
3. Bribes and Kickbacks: Benaron received cash bonuses in exchange for its participation in FNE's racketeering activities.

151. **Defendant Intrivo Diagnostics, Inc** is a diagnostics company that associates with FNE as a vendor that ordinarily provides marketing of COVID-19 tests. Intrivo has been providing services to FNE since 2021.

(a) Conduct and Participation in FNE's affairs: Intrivo is the employer of at least four attorneys, and many of other non-named, and "Doe" RICO actors, who directly and indirectly participated in the conduct of FNE's affairs through a pattern of racketeering activity, specifically:

1. Intrivo employees concealed the disposition of the CSA Tests from Compliance Firm and Stillwell;
2. Intrivo employees agreed to offer perjured testimony in the FNL Complaint;
3. Intrivo employees agreed to assist FN, FNL, Intrivo and Nixon Peabody with reselling the expired CSA Tests.

(b) Bribes and Kickbacks: Intrivo received cash bonuses in exchange for its participation in FNE's racketeering activities.

**FNE RICO ACTORS: NON-NAMED DEFENDANTS**

152. Actors in the Fashion Nova enterprise consist of the following non-named Defendants:

153. Socialcom.com, doing business as AudienceX, ("AudienceX"), marketed and sold the expired CSA Tests and received kickbacks and bribes for participating in FNE's schemes against Compliance Firm and Stillwell.

154. Brian Aaron, ("Aaron"), is attorney at Nixon Peabody who concealed FN and FNL's use of the CSA Tests, and concealed Intrivo's possession of the CSA Tests from Stillwell and Compliance Firm. Aaron also devised and participated in schemes to defraud Stillwell and Compliance Firm and agreed to offer perjured testimony in the FNL Complaint. Aaron received kickbacks and bribes for participating in FNE's schemes against Compliance Firm and Stillwell.

155. Jill Gordon, ("Gordon"), is partner attorney at Nixon Peabody. Gordon concealed FN and FNL's use of the CSA Tests, and concealed Intrivo's possession of the CSA Tests from Stillwell and Compliance Firm. Gordon also devised and participated in schemes to defraud Stillwell and Compliance Firm and agreed to offer perjured testimony in the FNL Complaint. Gordon received kickbacks and bribes for participating in FNE's schemes against Compliance Firm and Stillwell.

156. Parikah P. Hash, ("Hash") is an attorney at Nixon Peabody. Hash concealed FN and FNL's use of the CSA Tests, and concealed Intrivo's possession of the CSA Tests from Stillwell and Compliance Firm. Hash also devised and participated in schemes to defraud Stillwell and Compliance Firm and agreed to offer perjured testimony in the FNL Complaint. Hash received

kickbacks and bribes for participating in FNE's schemes against Compliance Firm and Stillwell.

157. Andrew Holmes, ("Holmes"), is Intrivo's General Counsel who concealed Intrivo's possession of the CSA Tests from Stillwell and Compliance Firm. Holmes also agreed to offer perjured testimony in the FNL Complaint and received kickbacks and bribes for participating in FNE's schemes against Compliance Firm and Stillwell.

158. Daniel R. Markel, ("Markel") is the CEO of PBG, Pure Blue Health, and a Co-Founder of Intrivo. Markel agreed to offer perjured testimony in the FNL Complaint. Markel agreed to assist FN, FNL, Intrivo and Nixon Peabody with reselling the expired CSA Tests. Markel received cash bonuses in exchange for its participation in FNE's racketeering activities.

159. Jack Sahagian, ("Sahagian") is an attorney at Intrivo who concealed Intrivo's possession of the CSA Tests from Stillwell and Compliance Firm. Sahagian also agreed to offer perjured testimony in the FNL Complaint, and received kickbacks and bribes for participating in FNE's schemes against Compliance Firm and Stillwell.

160. Matt Held, ("Held") is an attorney at Intrivo who concealed Intrivo's possession of the CSA Tests from Stillwell and Compliance Firm. Held also agreed to offer perjured testimony in the FNL Complaint and received

kickbacks and bribes for participating in FNE's schemes against Compliance Firm and Stillwell.

161. Lori Ott, ("Ott") is the Fashion Nova's Director of Human Resources. Ott concealed positive COVID-19 test results and agreed to offer perjured testimony in the FNL Complaint. Ott also received kickbacks and bribes for participating in FNE's schemes against Compliance Firm and Stillwell. Upon information and belief, in July 2021 Ott was promoted in exchange for perjured testimony and participation in FNE's schemes.

162. Kim Herrera, ("Herrera") is Fashion Nova's Human Resources' Senior Business Partner. Herrera concealed positive COVID-19 test results and agreed to offer perjured testimony in the FNL Complaint. Herrera also received kickbacks and bribes for participating in FNE's schemes against Compliance Firm and Stillwell. Upon information and belief, in July 2021 Herrera was promoted in exchange for perjured testimony and participation in FNE's schemes.

**FNE RICO STRUCTURE**

163. Members of FNE function as a continuing unit with an ascertainable structure.

(a) FNE is currently operated and controlled by Saghian and Meierhans.

1. Saghian is the CEO of FN, FNL and their subsidiaries. Saghian has been operating and controlling FNE since its inception on or about, June 18, 2018, when FN Logistics, Inc. was formed.
2. Meierhans is the General Counsel and Chief Compliance Officer of FN, FNL, and their subsidiaries. Meierhans has been operating and controlling FNE since on or about November 2018, when Meierhans began working at FN.

164. **Ordinary Business:** The overall activities and ordinary business of FNE includes manufacturing, marketing, and selling clothes and cosmetics, and shipping clothes and cosmetics worldwide.

165. **Conduct Pattern of Racketeering Activity**: The ordinary business of FNE is distinct from that of the conduct pattern of racketeering activity.

166. **Common Objectives and Purpose:** The objectives and common purpose of FNE is to maximize Fashion Nova, LLC's profits so that FNE owners, investors, shareholders, and RICO Actors can profit through bribes and kickbacks from their participation in FNE's racketeering.

167. **Common Methods:** FNE achieved and continues to achieve its common objectives and common purpose to maximize FN and FNL's profits by

creating schemes and artifices to defraud customers, creditors, vendors, employees, investors, and taxpayers by:

(a) Evading and avoiding payroll and sales taxes to retain maximum profits;

(b) Using undocumented workers to keep labor costs down;

(c) Worker's compensation fraud to decrease cost of insurance premiums;

(d) Using mail fraud and wire fraud to mislead, deceive, and defrauding customers, employees, vendors, creditors, and investors; specifically:

1. Charging customers for services, such as expedited shipping, when the service is known to be unavailable;
2. Charging customers for retail items that are known to be out-of-stock and refusing to refund customers' monies;
3. Non-payment of employee wages, despite employees providing proof of their earned wages;
4. Non-payment of vendor invoices for services provided by vendors;
5. Misrepresentation of financial records to investors, to solicit and raise capital and unregistered securities; and

6. Committing stifling, unfair business practices against competitors, vendors, contractors and suppliers.

168. **Interstate Commerce:** The ordinary business and activities of FNE affect interstate and foreign commerce because wires and mails are used by FNE to market, sell, and ship merchandise. Raw materials to manufacture clothes sold by FNE are purchased from China and shipped to FNE's garment shops located in California.

169. The racketeering activities of FNE affect interstate and foreign commerce because wires and mails are used by FNE to defraud and in furtherance of FNE's schemes, objectives, and common purpose.

170. FN, FNH, 2801-LLC, 1360-LLC, SMC, FNL, UFF, and FNX, hereafter, ("Fashion Nova Enterprise") constitute an "enterprise" within the meaning of 18 U.S.C. §1961(4) because they are corporations and are associated in fact. Members of the Fashion Nova Enterprise, ("FNE"), are indispensable and function as a continuing unit for a common purpose of achieving the objectives of FNE.

171. FNE is an enterprise engaged in activities of which affect interstate and foreign commerce, as defined by 18 U.S.C § 1961(4).

172. FNE's use of deceit and fraudulent means, such as schemes and artifices wire fraud and mail fraud, are the enterprise's regular way of doing business, and capable of repetition.

173. FNE has been in operation as a racketeering enterprise for over two years, since at least June 18, 2018, when FN Logistics, Inc. was formed to avoid and evade taxes. The enterprise has been restructured several times since its inception in 2018, with many RICO actors participating in schemes on and-on-and off basis over the course of more than two years.

174. FNE was most recently restructured in December 2020 for fraudulent and deceptive reasons, including, but not limited to tax evasion and tax avoidance.

175. FN is an entity separate and apart from the pattern of activity in which it engages

176. FNL is an entity separate and apart from the pattern of activity in which it engages

177. Nixon Peabody is an entity separate and apart from the pattern of activity in which it engages

178. Intrivo is an entity separate and apart from the pattern of activity in which it engages

**PATTERN OF RACKETEERING ACTIVITY**

179. Pursuant to 18 U.S.C.§ 1962(c), "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

180. Each of the FNE RICO Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3), which defines a person as "any individual or entity capable of holding a legal or beneficial interest in property."

181. Each of the FNE RICO Defendants are "persons" within the meaning of 18 U.S.C.§ 1962(c).

182. 18 U.S.C. § 1961(4), defines an enterprise as any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity; FNE is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), whose activities affect interstate and foreign commerce.

183. 18 U.S.C. § 1961(1), defines "racketeering activity" as (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act),

which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code…"

184. Wire Fraud in violation of 18 U.S.C. 1343 in an indictable act under title 18 of the United States Code and is considered "racketeering activity" pursuant to 18 U.S.C. § 1961(1)(B).

185. Pursuant to 18 U.S.C. 1343, Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both"

186. The FNE RICO Defendants agreed to and did conduct and participate in the conduct of the FNE enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of using internet and wire to intentionally defraud Compliance Firm and Stillwell of money, in violation of 18 U.S.C. § 1343.

187. The FNE RICO Defendants conducted and participated in the conduct of the affairs of the FNE enterprise through a pattern of racketeering activity in the following specific schemes and instances below:

188. **SCHEME #1: TAX EVASION:** On or about June 2018 Saghian voluntarily and intentionally devised a scheme to evade and state and federal taxes. Saghian acted with the intent to defraud the State of California, the United States of America, and its payroll processors. It was reasonably foreseeable that interstate wire communications would be used. Interstate wire communications were in fact used in furtherance of this scheme on the following dates:

189. **SCHEME #2: X-MOD EVASION**: On or about January 2019, Saghian and Meierhans voluntarily and intentionally devised a scheme to obtain lower worker compensation premiums by misrepresenting claims history, not reporting reportable injuries, creating shell companies to give the impression of a non or low claims history, and by misclassifying employees to obtain workers' compensation coverage at a lower premiums.

190. Saghian and Meierhans acted with the intent to defraud its employees, insurer, CompWest, and the State of California and the United States of America and it was reasonably foreseeable that interstate wire communications

would be used. Wire communications were in fact used in furtherance of this scheme on the following dates:

191. **SCHEME #3: FORCED LABOR TO INCREASE PROFIT IN VIOLATION OF 18 U.S. CODE § 1589:** On or about January 1, 2018, Saghian devised schemes to use undocumented workers in FN and FNL's warehouses in order to increase profit margins and in furtherance of FNE's schemes.

192. **SCHEME #4: FRAUDULENTLY DISPUTE AND WITHHOLD $10M IN FN VENDOR PAYMENTS**: On or about December 1, 2019, Saghian, Meierhans and the Doe Defendants voluntarily and intentionally devised a scheme to fraudulently withhold over $10,000,000.00 in payments that were owed to FN vendors, in order to misrepresent FN's profit margins to investors. Saghian, Meierhans, FN and FNL acted with the intent to defraud FN vendors and contractors, and it was reasonably foreseeable that interstate wire communications would be used. Wire communications were in fact used in furtherance of this scheme on the following dates:

(a) On or about December 1, 2020, Saghian instructed Meierhans to dispute valid invoices to avoid or delay payments to vendors.

(b) On or about December 1, 2020, Meierhans used wire communications to email FN finance employees to withhold payments to Compliance Firm and Stillwell in furtherance of FNE's schemes.

(c) Meierhans also emailed FN executives and supervisors to not approve any more invoices from Compliance Firm or Stillwell

(d) Each email and wire communication from Meierhans and Saghian described herein was in furtherance of FNE's schemes.

(e) Each email and wire communication from Riordan, Aaron, Nixon Peabody, Intrivo, Benaron, and Markel described herein was in furtherance of FNE's schemes.

(f) Each email and wire communication from a FNE RICO Defendant described herein was in furtherance of FNE's schemes.

193. **SCHEME #5: CSA TESTS SCHEME:** On or about January 1, 2021, Saghian, Meierhans, FN, and FNL voluntarily and intentionally devised a scheme to fraudulently dispute the invoice for the CSA Tests.

194. Saghian, Meierhans, FN, and FNL acted with the intent to defraud Stillwell and Compliance Firm, and it was reasonably foreseeable that interstate wire communications would be used. Wire communications were in fact used in furtherance of this scheme on the following dates:

(a) On or about February 1, 2021, Saghian, Meierhans, Nixon Peabody, and Riordan, voluntarily and intentionally devised a scheme to misrepresent the legality of the CSA sale by falsely alleging that.

(b) On February 26, 2021, Riordan emailed Stillwell a letter falsely alleging that Compliant Care Staffing "left approximately 13,000 CareStart COVID-19 Antigen tests at FNL's warehouse." The email was sent in furtherance of FNE's scheme to defraud Stillwell for the costs of the CSA Tests.

(c) At the time of Riordan's February letter, Riordan was aware that FN had used nearly 5,000 of the CSA Tests. However, Riordan continued to conceal this material fact from Compliance Firm and Stillwell.

(d) On March 12, 2021, Riordan emailed Stillwell a second letter stating:

(e) "the CSA Tests are considered "dangerous devices" – pursuant to California Business & Professions Code § 4022 – which can only be handled, stored, warehoused, distributed, or shipped by authorized parties, pursuant to California pharmacy law."

(f) The March 12, 2021 email also stated that Compliance Firm was "required by law to maintain possession of those tests." The email was sent in furtherance of FNE's scheme to defraud Stillwell.

(g) On March 22, 2021, Aaron Brian ("Brian"), an attorney at Nixon Peabody, emailed Stillwell to trick her into collecting the CSA Tests from FN and FNL's warehouse. The email was sent in furtherance of FNE's scheme to defraud Stillwell.

(h) On or about March 23, 2021, Andrew Holmes ("Holmes"), Intrivo's general counsel, used wire communications to contact Stillwell about the CSA Tests. Holmes stated that Intrivo was "only the marketing and branding for Access Bio." Holmes concealed FN, FNL and Intrivo's use of the CSA Tests, despite being informed that the CSA Tests were material to pending litigation.

195. Each email and wire communication from Meierhans and Saghian described herein was in furtherance of FNE's schemes.

196. Each email and wire communication from Riordan, Aaron, Nixon Peabody, Intrivo, Benaron, and Markel described herein was in furtherance of FNE's schemes.

197. Each email and wire communication from a FNE RICO Defendant described herein was in furtherance of FNE's schemes.

198. Saghian, Riordan, Meierhans, Nixon Peabody, FN and FNL, acted with the intent to defraud Stillwell and Compliance Firm, and it was reasonably foreseeable that interstate wire communications would be used. Wire communications were in fact used in furtherance of this scheme, as described herein.

199. **SCHEME #7 FNL COMPLAINT:** On or about March 2021, Saghian, FN, FNL, Meierhans, Nixon Peabody, and Riordan voluntarily and intentionally devised a scheme to defraud Stillwell of the intangible right of honest services of Compliance Firm, FN and FNL.

200. Nixon Peabody, FN, FNL, Saghian, Meierhans, and Riordan acted with the intent to defraud Stillwell and Compliance Firm and it was reasonably foreseeable that interstate wire communications would be used. Wire communications were in fact used in furtherance of this scheme as described herein.

## ONGOING AND REPETITIVE RACKETEERING ACTIVITY

201. The predicate acts set forth above are all indictable act under Title 18 of the United States Code and are considered "racketeering activity" pursuant to 18 U.S.C. § 1961(1)(B). These acts also constitute a pattern of racketeering

activity pursuant to 18 U.S.C. § 1961(5).

202. The conduct of FNE is open and repetition is likely to continue because the racketeering activity is a normal way of doing business for FNE.

203. Each FNE member knew of the others' activities, and each FNE member knew that the other entities were involved in fraud.

204. Each FNE RICO Actor and each FNE RICO Defendant knew of the others' activities, and each FNE RICO Actor knew that the other entities were involved in fraud.

205. The FNE RICO Defendants worked together in an indispensable and integrated manner to mutually engage in wrongful acts, in that: (1) the success of the FNL Complaint could not have occurred without all of them acting together because each of them performed a necessary part of the transaction; (2) each predicate act involved coordination to conceal material facts.

206. Further information regarding the roles of the FNE RICO Defendants' is within the exclusive possession of the Defendants.

207. Each of the FNE members knew about the general nature of the enterprise and knew that the enterprise extended beyond their individual role.

208. Each of the FNE RICO Defendants knew about the general nature of the enterprise and knew that the enterprise extended beyond their individual

role.

209. The nature and structure of FNE's schemes was known to each of the FNE RICO Defendants, as evidenced by their extensive communications described in detail herein.

210. The FNE RICO Defendants knew about the entirety of the enterprise because they hired the vendors used to support the schemes and conspiracies.

211. The FNE Enterprise functioned as a continuing unit because the formal and informal relationships that lasted for a long of period of time, at least from April 2018, until the date this lawsuit was filed on August 30, 2021.

212. FNE also qualifies as a closed-ended enterprise because the predicate acts occurred over a period exceeding a year and a half, from April 2018, to the date suit was filed.

213. The FNE Enterprise qualifies as an open-ended enterprise, in that it was actively continuing to commit predicate acts as of the date of the filing of this lawsuit, including actively enforcing a default judgment against Compliance Firm, that was obtained by the fraud and schemes described herein.

214. FNE's past conduct by its nature poses a threat of repetition not only because the conduct has continued post-suit, but because the FNE

members and FNE RICO Defendants' businesses have been structured around fraud and schemes, as described herein.

215. Committing the racketeering activity described herein has become a regular way of doing business for FNE and the FNE RICO Defendants and is thus repetition likely to recur.

216. The place of origination of the transmissions is unknown, but the FNE members and FNE RICO Actors and FNE RICO Defendants are located in California, and their wire communications were transmitted to each other and unknown persons in the United States via United States wire.

217. Plaintiff is unable to fully plead details of all of FNE's predicate acts because the facts are largely within the possession of the Defendants, but the examples herein are representative and show that the predicate acts committed against Plaintiff were part of a long-running pattern which was ongoing as of the date of filing of this lawsuit and has continued post-suit, and is thus likely to recur.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

<u>FORCED LABOR, 18 U.S.C. § 1589(a)(2) and</u>

<u>CIVIL REMEDY, 18 U.S.C. § 1595</u>

(*Against Defendants Saghian, Meierhans, FN, and FNL*)

218. Plaintiff restates and incorporates the allegations from the above paragraphs as if they were stated in full herein.

219. Plaintiff brings this cause of action against Defendants: (1) Richard D. Saghian, (2) Erica A. Meierhans, (3) Fashion Nova, LLC (4) FN Logistics, LLC ("Count I Defendants") for forced labor in violation of 18 U.S.C. § 1589(a)(2).

220. 18 U.S.C. § 1589(a)(2) provides that it is unlawful to knowingly provide or obtain the labor or services of a person by means of serious harm or threats of serious harm to that person or another person.

221. The term "serious harm" is defined in 18 USC § 1589(c)(2) as

> "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."

222. The Count I Defendants intentionally and knowingly recruited Stillwell for the purpose of obtaining forced labor or services from Stillwell under the Joint Venture, OHN Consultancy Agreement and COVID-19 Consultancy Agreements.

223. The Count I Defendants obtained the labor or services of Stillwell by means of serious harm or threats of serious harm to Stillwell and Compliance Firm, as set described herein and set forth below.

224. From November 1, 2020, to January 5, 2021, Stillwell was asked and provided the following services:

(a) Create a CPR/ First Aid / AED training program

(b) Create a Cal/OSHA compliant COVID-19 IIPP program

(c) Create a respiratory care plan

(d) Life Safety and Fire Safety training program

(e) Emergency Response policy

(f) Create an on-site COVDI-19 testing site

225. Stillwell completed all projects and assignments the Count I Defendants asked of her out of fear of phycological, financial and reputational harm as threatened by the Count I Defendants.

226. Stillwell spent two hundred and forty (240) hours providing the services described herein but was never compensated for her labor or services.

227. Saghian, Meierhans, FN and FNL each knowingly recruited Stillwell for the purposes of obtaining forced labor or services from Stillwell by means of serious harm or threats of serious harm to Stilwell

and Stillwell's company, Compliance Firm.

228. Saghian, Meierhans, FN and FNL each condoned, ratified, and encouraged the unlawful conduct described herein.

229. 18 U.S.C. § 1594(a) provides that whoever attempts to violate 18 U.S.C. § 1589 shall be punishable in the same manner as a completed violation of that section.

230. Saghian, Meierhans, FN and FNL each knowingly attempted to obtain the labor or services of Stillwell by means of serious harm or threats of serious harm to Stilwell and Stillwell's company, Compliance Firm, in violation of 18 U.S.C. § 1589(a)(2).

231. 18 U.S. Code § 1594(b) provides that whoever conspires with another to violate 18 U.S.C. § 1589 shall be punished in the same manner as a completed violation of such section.

232. Saghian, Meierhans, FN and FNL each knowingly conspired to obtain the labor or services of Stillwell by means of serious harm or threats of serious harm to Stilwell and Stillwell's company, Compliance Firm, in violation of 18 U.S.C. § 1589(a)(2).

233. 18 U.S.C. § 1595(a) provides that

> "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly

benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees."

234. Stillwell, an individual, is a victim of a violation of 18 U.S.C.1589(a)(2), 18 U.S. Code § 1594(a), and 18 U.S. Code § 1594(b), as described in 18 U.S.C § 1595(a).

235. Saghian, Meierhans, FN and FNL are the perpetrators that victimized and benefited from Stillwell's labor or services in violation of 18 U.S.C.1589(a)(2), 18 U.S. Code § 1594(a), and 18 U.S. Code § 1594(b).

236. Saghian, Meierhans, FN and FNL each knowingly benefitted, financially or received something of value from participation in ventures and schemes, which each of them knew or should have known, were in violation of the United States Code, Title 18, Chapter 77, specifically 18 U.S.C. § 1589(a)(2).

237. The Count I Defendants' conduct as described herein was malicious and oppressive and done with a conscious disregard of Stillwell rights. The Count I Defendants' acts were designed to humiliate and oppress Stilwell; and they had that effect.

238. Cal. Civil Code. Section 236.1(f) provides that a prevailing plaintiff may also be awarded reasonable attorney's fees and litigation costs including, but not limited to, expert witness fees and expenses as part of the costs.

239. The Count I Defendants knowingly provided or obtained $42,000.00 worth of labor or services from Stillwell by means of serious harm or threats of serious harm to Stillwell and Compliance Firm.

240. Pursuant to Cal. Civil Code. Section 1431, the Count I Defendants are jointly liable for economic damages, and severally labile for non-economic damages. *See* Cal. Civil Code. Section 1431.2.

241. But for, and as a direct and proximate result of each of the Count I Defendants' conduct as set forth above, Stillwell's emotional well-being has substantially suffered and will continue to suffer; Stillwell has experienced and continues to experience severe emotional distress, in an amount to be proven at trial. Stillwell alleges that she has and will continue to suffer substantial losses in earnings, other employment opportunities, employment benefits and other damages, the precise amounts to be proven at trial.

242. Defendants' actions were fraudulent, malicious, and oppressive. Plaintiff is thus entitled to and herein seeks punitive and exemplary

damages from Defendants, in an amount according to proof at trial, to punish Defendants and deter Defendants and others from engaging in similar future conduct.

243. Because of the violations described herein and pursuant to 18 U.S.C. § 1595(a), the Count I Defendants are each jointly and severally liable to Plaintiff for the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**

FORCED LABOR, 18 U.S.C. § 1589(a)(3) and

CIVIL REMEDY, 18 U.S. Code § 1595

(*Against Defendants Saghian, Meierhans, FN, FNL, Riordan, and Nixon Peabody*)

244. Plaintiff restates and incorporates the allegations from the above paragraphs as if they were stated in full herein.

245. This cause of action is against Defendants: (1) Richard D. Saghian, (2) Erica A. Meierhans, (3) Fashion Nova, (4) FN Logistics, (5) Riordan, and (6) Nixon Peabody (the "Count II Defendants").

246. 18 U.S.C. § 1589(a)(3) provides that it is unlawful to knowingly provide or obtain the labor or services of a person by means of the abuse or threatened abuse of law or legal process.

247. The term "abuse or threatened abuse of law or legal process" is defined in 18 USC § 1589(c)(1) as:

> "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action."

248. The Count II Defendants intentionally and knowingly recruited Stillwell for the purpose of obtaining forced labor or services from Stillwell by means of the abuse or threatened abuse of law or legal process.

249. The Count II Defendants obtained the labor or services of Stillwell by means of abuse or threatened abuse of law or legal process to Stillwell and Compliance Firm, as set described herein and set forth below.

250. Stillwell completed all projects and assignments Saghian, Meierhans, FN, FNL asked of her, out of fear of the abuse or threatened abuse of law or legal process against Stillwell or Compliance Firm, as threatened by the Count II Defendants.

251. Stillwell spent one hundred (100) hours providing the services described herein but was never compensated for her labor or services.

252. Saghian, Meierhans, FN and FNL each knowingly recruited

Stillwell for the purposes of obtaining forced labor or services from Stillwell by means of the abuse or threatened abuse of law or legal process against Stilwell and Stillwell's company, Compliance Firm.

253. Saghian, Meierhans, FN, FNL, Riordan and Nixon Peabody each condoned, ratified, and encouraged the unlawful conduct described herein.

254. 18 U.S.C. § 1594(a) provides that whoever attempts to violate 18 U.S.C. § 1589 shall be punishable in the same manner as a completed violation of that section.

255. Saghian, Meierhans, FN, FNL, Riordan and Nixon Peabody each knowingly attempted to obtain the labor or services of Stillwell by means of the abuse or threatened abuse of law or legal process against Stillwell and Stillwell's company, Compliance Firm, in violation of 18 U.S.C. § 1589(a)(3).

256. 18 U.S. Code § 1594(b) provides that whoever conspires with another to violate 18 U.S.C. § 1589 shall be punished in the same manner as a completed violation of such section.

257. Saghian, Meierhans, FN, FNL, Riordan and Nixon Peabody each knowingly conspired to obtain the labor or services of Stillwell by means of the abuse or threatened abuse of law or legal process against Stilwell and Stillwell's company, Compliance Firm, in violation of 18 U.S.C. §

1589(a)(3).

258. Stillwell, an individual, is a victim of a violation of 18 U.S.C.1589(a)(3), 18 U.S. Code § 1594(a), and 18 U.S. Code § 1594(b), as described in 18 U.S.C § 1595(a).

259. Saghian, Meierhans, FN, FNL, Riordan and Nixon Peabody are the perpetrators that victimized and benefited from Stillwell's labor or services in violation of 18 U.S.C.1589(a)(3), 18 U.S. Code § 1594(a), and 18 U.S. Code § 1594(b).

260. Saghian, Meierhans, FN, FNL, Riordan and Nixon Peabody each knowingly benefitted, financially or received something of value from participation in ventures and schemes, which each of them knew or should have known, were in violation of the United States Code, Title 18, Chapter 77, specifically 18 U.S.C. § 1589(a)(3).

261. The Count II Defendants knowingly provided or obtained $17,500.00 worth of labor or services from Stillwell by means of the abuse or threatened abuse of law or legal process against Stilwell and Stillwell's company, Compliance Firm, in violation of 18 U.S.C. § 1589(a)(3).

262. The Count II Defendants' conduct as described herein was malicious and oppressive and done with a conscious disregard of Stillwell rights. The Count II Defendants' acts were designed to humiliate and oppress Stilwell;

and they had that effect.

263. Because of the violations described herein and pursuant to 18 U.S.C. § 1595(a), the Count II Defendants are each jointly and severally liable to Plaintiff for the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

**THIRD CAUSE OF ACTION**

FORCED LABOR, 18 U.S.C. § 1589(b) and

CIVIL REMEDY, 18 U.S. Code § 1595

(*Against Defendants Saghian, Meierhans, FN, FNL, Riordan, and Nixon Peabody*)

264. Plaintiff restates and incorporates the allegations from the above paragraphs as if they were stated in full herein.

265. This cause of action is against Defendants: (1) Richard D. Saghian, (2) Erica A. Meierhans, (3) Fashion Nova, (4) FN Logistics, (5) Riordan, and (6) Nixon Peabody ("Count III Defendants").

266. 18 U.S.C. § 1589(b) provides that it is unlawful to knowingly benefit, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in 18 U.S.C. 1589(a), knowing or in reckless disregard of the fact that the venture has engaged in the providing

or obtaining of labor or services by any of such means.

267. Saghian, Meierhans, FN, and FNL engaged in the providing or obtaining of Stillwell's labor or services by means of serious harm or threats of serious harm to Stilwell and Stillwell's company, Compliance Firm, in violation of 18 U.S.C. § 1589(a)(2), and by means of the abuse or threatened abuse of law or legal process against Stilwell and Stillwell's company, Compliance Firm, in violation of 18 U.S.C. § 1589(a)(3), as described herein.

268. Saghian, Meierhans, FN, FNL, Riordan and Nixon Peabody each knew or had reckless disregard of the fact that Saghian, Meierhans, FN, and FNL had engaged in the providing or obtaining of Stillwell's labor or services by any of the means described in 18 U.S.C. 1589(a).

269. Saghian, Meierhans, Riordan and Nixon Peabody each received bribes or kickbacks for their participation in the providing or obtaining of Stillwell's labor or services by any of the means described in 18 U.S.C. 1589(a). The actual amount each Count III Defendant received is known by the Count III Defendants and can be ascertained during discovery.

270. Saghian, Meierhans, FN, FNL, Riordan and Nixon Peabody each knowingly benefitted, financially or received something of value from participation in ventures and schemes, which each of them knew or should

have known, were in violation of the United States Code, Title 18, Chapter 77, specifically 18 U.S.C. § 1589(a)(2), 18 U.S.C. § 1589(a)(3), 18 U.S.C. § 1594(a), and 18 U.S.C. § 1594(b)

271. FN and FNL each shared and received $59,500.00 of labor and services for their participation in the providing or obtaining of Stillwell's labor or services by any of the means described in 18 U.S.C. 1589(a).

272. The Count III Defendants' conduct as described herein was malicious and oppressive and done with a conscious disregard of Stillwell rights. The Count III Defendants' acts were designed to humiliate and oppress Stilwell; and they had that effect.

273. Because of the violations described herein and pursuant to 18 U.S.C. § 1595(a), the Count III Defendants are each jointly and severally liable to Plaintiff for the damages Plaintiff has sustained, including the disgorgement of $59,5000, which is the benefit of Stillwell's labor or services that were unlawfully obtained, plus the cost of this suit, including reasonable attorneys' fees.

**FOURTH CAUSE OF ACTION**

<u>CALIFORNIA TRAFFICKING VICTIMS' PROTECTION ACT</u>

<u>Ca. Civil Code Section 52.5</u>

(*Against Defendants Saghian, Meierhans, FN, and FNL*)

274. Plaintiff restates and incorporates the allegations from the above paragraphs as if they were stated in full herein.

275. This cause of action is against Defendants: (1) Richard D. Saghian, (2) Erica A. Meierhans, (3) Fashion Nova, and (4) FN Logistics, (the "Count IV Defendants").

276. Cal. Civil Code. Section 236.1(a) states "a person who deprives or violates the personal liberty of another with the intent to obtain forced labor or services, is guilty of human trafficking."

277. Cal. Civil Code. Section 236.1. (h) For purposes of this chapter, the following definitions apply:

a) "Coercion" includes a scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; the abuse or threatened abuse of the legal process; debt bondage; or providing and facilitating the possession of a controlled substance to a person with the intent to impair the person's judgment.

b) "Deprivation or violation of the personal liberty of another" includes substantial and sustained restriction of another's liberty accomplished through force, fear, fraud, deceit,

coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person, under circumstances where the person receiving or apprehending the threat reasonably believes that it is likely that the person making the threat would carry it out.

c) "Duress" includes a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to cause a reasonable person to acquiesce in or perform an act which he or she would otherwise not have submitted to or performed; a direct or implied threat to destroy, conceal, remove, confiscate, or possess an actual or purported passport or immigration document of the victim; or knowingly destroying, concealing, removing, confiscating, or possessing an actual or purported passport or immigration document of the victim.

d) "Forced labor or services" means labor or services that are performed or provided by a person and are obtained or maintained through force, fraud, duress, or coercion, or equivalent conduct that would reasonably overbear the will of the person.

e) "Serious harm" includes any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor, services, or commercial sexual acts in order to avoid incurring that harm."

278. Saghian, Meierhans, FN and FNL knowingly recruited Stillwell to work on the OHN and COVID-19 lab for the purpose of obtaining forced labor or services from Stillwell. The Count IV Defendants deprived or violated the personal liberty of Stillwell with the intent to obtain forced labor or services from Stillwell.

279. Saghian, Meierhans, FN and FNL deprived or violated the personal liberty of Stillwell with the intent to obtain forced labor or services by devising multiple schemes to coerce Stillwell to provide forced labor or services.

280. The Count IV Defendants obtained forced labor or services from Stillwell through fraud, duress, and coercion, as described herein, in violation of Cal. Civil Code. Section 236.1.

281. The Count IV Defendants deprived or violated the personal liberty of

Stillwell by a substantial and sustained restriction of Stillwell's liberty, which was accomplished through fear, fraud, deceit, coercion, duress, and threat of unlawful injury to Stillwell and Compliance Firm.

282. The Count IV Defendants threatened Stillwell with serious harm, psychological, financial, or reputational harm. Under the circumstances described herein, Stillwell received and apprehended all threats alleged herein and reasonably believed that it was likely that the Count IV Defendants would carry it out the threats.

283. The Count IV Defendants intended, and did carry out their threats of reputational harm, financial harm, and threat of unlawful injury, as described herein.

284. Each of the Count IV Defendants is a person who deprived or violated the personal liberty of Stillwell with the intent to obtain forced labor or services and is guilty of human trafficking as defined in Cal. Civil Code. Section 236.1(a).

285. Cal. Civil Code. Section 52.5 states:

"(a) A victim of human trafficking, as defined in Section 236.1 of the Penal Code, may bring a civil action for actual damages, compensatory damages, punitive damages, injunctive relief, any

combination of those, or any other appropriate relief. A prevailing plaintiff may also be awarded attorney's fees and costs.

In addition to the remedies specified in this section, in an action under subdivision (a), the plaintiff may be awarded up to three times his or her actual damages or ten thousand dollars ($10,000), whichever is greater. In addition, punitive damages may be awarded upon proof of the defendant's malice, oppression, fraud, or duress in committing the act of human trafficking".

286. Stillwell is victim of human trafficking, as defined in Section 236.1 of the California Penal Code.

287. The Count IV Defendants' conduct as described herein was malicious and oppressive and done with a conscious disregard of Stillwell rights. The Count IV Defendants' acts were designed to humiliate and oppress Stilwell; and they had that effect.

288. As a direct and proximate result of each of the Count IV Defendants' conduct as set forth above, Stillwell's emotional well-being has substantially suffered and will continue to suffer; Stillwell has experienced and continues to experience severe emotional distress, in an amount to be proven at trial. Stillwell alleges that she has and will continue to suffer substantial losses in earnings, other employment opportunities, employment

benefits and other damages, the precise amounts to be proven at trial.

289. Because of the violations described herein and pursuant to Cal. Civil Code. Section 52.5, the Count IV Defendants are each jointly and severally liable to Plaintiff for the actual damages and compensatory damages in the amount of $112,812.50 that Stillwell has sustained as a result of Count IV Defendants conduct in violation of Cal. Civil Code. Section 236.1(a).

290. The Count IV Defendants conduct as described herein was malicious and oppressive and done with a conscious disregard of Plaintiff's rights. Each of the Count IV Defendants' acts were designed to humiliate and oppress Stillwell; and they had that effect. Each of the Count IV Defendants condoned, ratified, and encouraged the unlawful conduct. Thus, Stillwell is entitled to exemplary and punitive damages against each of the Count IV Defendants pursuant to Cal. Civil Code. Section 3294.

## FIFTH CAUSE OF ACTION

CIVIL RICO 18 U.S.C. § §1962(c), 1964(c)

Predicate Act: Honest Services Fraud, 18 U.S.C. § 1346

*(Defendants Saghian, Meierhans FN, FNL, Riordan, and Nixon Peabody, inclusive)*

291. Plaintiff restates and incorporates the allegations from the above paragraphs as if they were stated in full herein.

292. This cause of action is against Defendants: (1) Richard D. Saghian, (2) Erica A. Meierhans, (3) Fashion Nova, LLC, (4) FN Logistics, LLC, (5) Staci J. Riordan, (6) Nixon Peabody, inclusive (the "Count V Defendants").

293. Each of the Count V Defendants is a FNE RICO Defendant as described herein.

294. At all relevant times, each of the Count V Defendants were "person[s]" pursuant to 18 U.S.C. §§ 1961(3) and 1962(d).

295. At all relevant times, the Fashion Nova Enterprise, ("FNE") constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all relevant times, FNE was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).

296. At all times relevant hereto, the Count V Defendants and FNE RICO Defendants each held a position in or were otherwise affiliated with FNE as well as participated in the operation, management, and directed the affairs of FNE.

297. FNE, as alleged herein, was not limited to FNE RICO Defendants' predicate acts and has activities extending beyond the FNE RICO Defendants' racketeering activity.

298. FNE and its member corporations exists separate and apart from the

pattern of racketeering activity.

299. The FNE RICO Defendants have had and do have legitimate business plans outside the pattern of racketeering activity related to FNE.

300. The Count V Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1346 as described above, in violation of 18 U.S.C. § 1962(c).

301. FNE's racketeering activity commenced at least as early as January of 2018 and remains ongoing.

302. The purpose of FNE's schemes against Stillwell and Compliance Firm was to defraud Plaintiff of money, property, and benefits of monetary value by using wire and mail frauds, devising multiple schemes to deceive, trick and defraud Stillwell.

303. Pursuant to 18 U.S.C. § 1962(d), "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section"

304. Each of the Count V Defendants conspired to deprive Plaintiff of honest services, as described herein.

305. Pursuant to 18 U.S.C. § 4, "Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States,

conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both."

306. Each of the Count V Defendants' were aware and had knowledge of FNE's unlawful schemes against Plaintiff. FNE's unlawful schemes against Plaintiff were felonies cognizable by a court of the United States.

307. Each of the Count V Defendants concealed and did not make FNE's felonious conduct against Plaintiff known to some judge or other person in civil or military authority under the United States, as required by law.

308. Each of the Count V Defendants violated 18 U.S.C. § 4 each time they had knowledge, but concealed, FNE's unlawful schemes against Plaintiff.

309. Each Count V Defendant committed at least two predicate acts in furtherance of the conspiracies and schemes against Stillwell and Compliance Firm.

310. These predicate acts described herein, were all in furtherance of FNE's conspiracies and schemes against Stillwell.

311. The Count V Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the

predicate acts were part of such racketeering activity, and the participation and agreement of each of RICO Defendants was necessary to allow the commission of this pattern of racketeering violation of 18 U.S.C. § 1346, in violation of 18 U.S.C. § 1962(c).

312. Each Count V Defendant knew about and agreed to facilitate the scheme to defraud Stillwell of her money, property, and other business property and business interests, including state and federal benefits of monetary value, by fraudulently depriving Stillwell of honest services, such salaries, revenues and monies that are owed to Stillwell.

313. It was part of the conspiracy that Count V Defendants would commit a pattern of racketeering activity in the conduct of the affairs of FNE, including the acts of racketeering set forth herein.

314. As a direct and proximate result of the Count V Defendants' conduct, the acts of racketeering activity of FNE, the predicate acts completed in furtherance of the schemes and artifices, and violations of 18 U.S.C. § 1962(c), Stillwll has been injured in her money and business property, in an amount of $9,315,242.75.

315. Pursuant to 18 U.S.C. § 1964(c), Stillwell is entitled to recover treble damages plus costs and attorneys' fees from Defendants as well

as any other relief authorized by statute.

## SIXTH CAUSE OF ACTION

CIVIL RICO 18 U.S.C. § §1962(c), 1964(c)

Predicate Act: Wire Fraud 18 U.S.C. § 1343

*(Against Defendants Saghian, Meierhans FN, FNL, Riordan, Nixon Peabody, Benaron, and Intrivo, inclusive)*

316. Plaintiff restates and incorporates the allegations from the above paragraphs as if they were stated in full herein.

317. This cause of action is against Defendants: (1) Richard D. Saghian, (2) Erica A. Meierhans, (3) Fashion Nova, LLC, (4) FN Logistics, LLC, (5) Staci J. Riordan, (6) Nixon Peabody, and (7) Reeve Benaron, inclusive (the "Count VI Defendants").

318. Each of the Count VI Defendants is a FNE RICO Defendant as described herein.

319. At all relevant times, each of the Count VI Defendants were "person[s]" pursuant to 18 U.S.C. §§ 1961(3) and 1962(d).

320. At all relevant times, the Fashion Nova Enterprise, ("FNE") constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). At all relevant times, FNE was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning

of 18 U.S.C. § 1962(c).

321. At all times relevant hereto, the Count VI Defendants and FNE RICO Defendants each held a position in or were otherwise affiliated with FNE as well as participated in the operation, management, and directed the affairs of FNE.

322. FNE, as alleged herein, was not limited to FNE RICO Defendants' predicate acts and has activities extending beyond the FNE RICO Defendants' racketeering activity. FNE and its member corporations exists separate and apart from the pattern of racketeering activity. The FNE RICO Defendants have had and do have legitimate business plans outside the pattern of racketeering activity related to FNE.

323. The Count VI Defendants have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. § 1343 as described above, in violation of 18 U.S.C. § 1962(c).

324. FNE's racketeering activity commenced at least as early as January of 2018 and remains ongoing.

325. The purpose of FNE's schemes against Stillwell and Compliance Firm was to defraud Stillwell of money, property, and benefits of monetary value by using wire and mail frauds, devising multiple schemes to deceive,

trick and defraud Stillwell.

326. Each Count VI Defendant committed at least two predicate acts in furtherance of the conspiracies and schemes against Stillwell and Compliance Firm. These predicate act in furtherance of the conspiracies and schemes against Stillwell and Compliance Firm include, but are not limited to, the acts set forth herein.

327. The Count VI Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of RICO Defendants was necessary to allow the commission of this pattern of racketeering violation of 18 U.S.C. § 1343, in violation of 18 U.S.C. § 1962(c).

328. Each Count VI Defendant knew about and agreed to facilitate the scheme to defraud Stillwell and Compliance Firm of their money, property, and other business property and business interests, including state and federal benefits of monetary value by fraudulently depriving Stillwell of honest services, such as salaries, revenues, other monies including but not limited to, state and federal tax refunds that are owed to Stillwell, and unpaid invoices for services provided by Stillwell.

329. It was part of the conspiracy that Count VI Defendants would

commit a pattern of racketeering activity in the conduct of the affairs of FNE, including the acts of racketeering set forth herein.

330. As a direct and proximate result of the Count VI Defendants' conduct, the acts of racketeering activity of FNE, the predicate acts completed in furtherance of the schemes and artifices, and violations of 18 U.S.C. § 1962(c), Stillwell has been injured in her money and business property, in an amount to be determined at trial.

331. Pursuant to 18 U.S.C. § 1964(c), Stillwell is entitled to recover treble damages plus costs and attorneys' fees from the Count VI Defendants as well as any other relief authorized by statute.

**SEVENTH CAUSE OF ACTION**

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(*Against Defendants Saghian, Meierhans FN, FNL, Riordan, Nixon Peabody, Benaron, and Intrivo, inclusive*)

332. Plaintiff restates and incorporates the allegations from the above paragraphs as if they were stated in full herein.

333. This cause of action is against Defendants: (1) Richard D. Saghian, (2) Erica A. Meierhans, (3) Fashion Nova, LLC, (4) FN Logistics, LLC, (5) Staci J. Riordan, (6) Nixon Peabody, and (7) Reeve Benaron, inclusive (the "Count VII Defendants").

334. The extreme and outrageous conduct by the Count VII Defendants against Stillwell, alleged herein, was done with the intention of causing, or reckless disregard of the probability of causing, Stillwell emotional distress.

335. Stillwell suffered, and continues to suffer, severe and extreme emotional distress as an actual and proximate causation of the Count VII Defendants' outrageous conduct.

336. But for, and as a direct and proximate result of each of the Count VII Defendants' conduct as alleged herein, Stillwell's emotional well-being has substantially suffered and will continue to suffer.

337. Stillwell has experienced and continues to experience severe emotional distress, in an amount to be proven at trial. Stillwell alleges that she has and will continue to suffer substantial losses in earnings, other employment opportunities, employment benefits and other damages, the precise amounts to be proven at trial

338. The Count VII Defendants actions were fraudulent, malicious, and oppressive. Plaintiff is thus entitled to and herein seeks punitive and exemplary damages from the Count VII Defendants, in an amount according to proof at trial, to punish Defendants and deter Defendants and others from engaging in similar future conduct.

## VI. REQUEST FOR JURY TRIAL

339. Plaintiff requests a jury trial on all causes of action for which she has the right to jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. AS TO THE FIRST CAUSE OF ACTION, **Forced Labor, 18 U.S.C. § 1589(a)(2) and Civil Remedy, 18 U.S.C. § 1595**, Stillwell prays for judgment on her claims against *Defendants Saghian, Meierhans, FN and FNL*, and monetary damages in the amount of $42,000.00 for labor or services obtained by Stillwell Labor in violation of 18 U.S.C. § 1589(a)(2). Stillwell also prays for a judgment for Plaintiff on her claims in an amount to be proven at trial, for economic, monetary, consequential, compensatory, or statutory damages caused by the Count I Defendants' conduct, along with punitive damages;

2. AS TO THE SECOND CAUSE OF ACTION, **Forced Labor, 18 U.S.C. § 1589(a)(3) and Civil Remedy, 18 U.S.C. § 1595**, Stillwell prays for judgment on her claims against *Defendants Saghian, Meierhans, FN, FNL, Riordan, and Nixon Peabody* and monetary damages in the amount of $17,500.00 for labor or services obtained by Stillwell Labor in violation of 18 U.S.C. § 1589(a)(3). Stillwell also prays for a judgment for Plaintiff on her

claims in an amount to be proven at trial, for economic, monetary, consequential, compensatory, or statutory damages caused by the Count II Defendants' conduct, along with punitive damages;

3. AS TO THE THIRD CAUSE OF ACTION, **Forced Labor, 18 U.S.C. § 1589(b) and Civil Remedy, 18 U.S.C. § 1595**, Stillwell prays for judgment on her claims against *Defendants Saghian, Meierhans, FN, FNL, Riordan, and Nixon Peabody* and monetary damages in the amount of $59,000.00 for labor or services obtained by Stillwell Labor in violation of 18 U.S.C. § 1589(a) and 18 U.S.C § 1589(b). Stillwell also prays for a judgment for Plaintiff on her claims in an amount to be proven at trial, for economic, monetary, consequential, compensatory, or statutory damages caused by the Count II Defendants' conduct, along with punitive damages;

4. AS TO THE FOURTH CAUSE OF ACTION, **California Trafficking Victims' Protection Act, Ca. Civil Code Section 52.5**, Stillwell prays for judgment on her claims against *Defendants Saghian, Meierhans, FN, and FNL* and monetary damages in the amount of $338,437.50 for labor or services obtained by Stillwell in violation of Cal. Civil Code. Section 236.1(a). Stillwell also prays for a judgment for Plaintiff on her claims in an amount to be proven at trial, for economic, monetary, consequential, compensatory, or statutory damages caused by each of the Count IV Defendants' conduct, along

with exemplary or punitive damages. Plaintiff prays for an awarded up to three times her actual damages pursuant to Cal. Civil Code. Section 52.5(b);

5. AS TO THE FIFTH CAUSE OF ACTION **CIVIL RICO, 18 U.S.C. § 1962(c), Predicate Act: HONEST SERVICES FRAUD, 18 U.S.C. § 1346**, Stillwell prays for judgment on her claims against *Defendants Saghian, Meierhans FN, FNL, Riordan, and Nixon Peabody, inclusive,* and monetary damages in the amount of $27,945,728.20, which is equal to three times the amount of damages Stillwell has sustained because of the Count V Defendants' actions, plus a civil penalty for each violation of 18 U.S.C. § 1964;

6. AS TO THE SIXTH CAUSE OF ACTION, **CIVIL RICO 18 U.S.C. § 1962(c), Predicate Act: WIRE FRAUD 18 U.S.C. § 1343**, Stillwell prays for judgment on her claims against *Defendants Saghian, Meierhans FN, FNL, Riordan, Nixon Peabody, Benaron, and Intrivo, inclusive,* and monetary damages in an amount equal to three times the amount of damages Stillwell has sustained because of the Count VI Defendants' actions, plus a civil penalty for each violation of 18 U.S.C. § 1964;

7. AS TO THE SEVENTH CAUSE OF ACTION, **Intentional Infliction of Emotional Distress**, Stillwell prays for judgment on her claims against *Defendants Saghian, Meierhans FN, FNL, Riordan, Nixon Peabody,*

*Benaron, and Intrivo, inclusive,* and an amount to be proven at trial, for economic, monetary, consequential, compensatory, or statutory damages caused by the Count VII Defendants' conduct, along with punitive damages;

8. Actual and compensatory damages in a sum according to proof at time of trial;

9. Consequential and incidental damages in a sum according to proof at time of trial;

10. General damages, including damages for mental and emotional distress, in a sum according to proof at time of trial;

11. Payment of Plaintiff's costs and reasonable attorneys, to the full extent authorized by statute, or law, with interest;

12. Prejudgment interest at the legal prevailing rate;

13. For punitive and exemplary damages in a sum according to proof at trial;

14. For costs of suit herein incurred; and

15. For any such other and further relief as the court deems proper.

Dated: December 9, 2021

______________________________,
Brittany Stillwell, *Plaintiff*
Appearing in *Pro Per*