UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 21-7040-GW-MARx | Date | January 28, 2022 |
|---|---|---|---|
| Title | *Brittany A. Stillwell v. Fashion Nova, LLC, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:**    **IN CHAMBERS - TENTATIVE RULING ON DEFENDANTS' SPECIAL MOTION TO STRIKE FIRST AMENDED COMPLAINT UNDER C.C.P. § 425.16 [99]; DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT [100], and DEFENDANTS' MOTION FOR ATTORNEYS' FEES UNDER CAL. CIV. PROC. CODE § 425.16(c)(1) [101]**

Attached hereto is the Court's Tentative Ruling on above-entitled motions, presently set for January 31, 2022 at 8:30 a.m.

                                                                                    :

                                                Initials of Preparer    JG

***Stillwell v. Fashion Nova, LLC, et al.***, Case No. 2:21-cv-07040-GW-(MARx)
Tentative Rulings on: (1) Motion for Attorneys' Fees under Cal. Civ. Proc. Code §
425.16(c)(1), (2) Special Motion to Strike First Amended Complaint under § 425.16, and
(3) Motion to Dismiss First Amended Complaint

Three motions are now before the Court in this action:  a motion for attorney's
fees on an already-resolved anti-SLAPP motion directed at the original Complaint in this
action; a new anti-SLAPP motion directed at the First Amended Complaint ("FAC")
plaintiff Brittany A. Stillwell ("Plaintiff") filed on December 9, 2021; and a motion to
dismiss the FAC.

**A.   Fee Motion**

The Court first addresses the attorney fee motion filed by defendants Fashion
Nova LLC ("FN"), FN Logistics LLC ("FNL"), Richard D. Saghian ("Saghian"), Erica
A. Meierhans ("Meierhans") and Staci J. Riordan ("Riordan") (collectively, the "Fee
Movants") in connection with the earlier anti-SLAPP motion.  They seek fees in the
amount of $54,523.35, just over half of the $100,658.50 in fees they report having
incurred in assessing Plaintiff's *enormous* initial Complaint and in preparing and arguing
the anti-SLAPP motion directed at that initial Complaint.

An award of fees to a prevailing defendant on an anti-SLAPP motion is
mandatory.  *See Manufactured Home Cmtys., Inc. v. Cty. of San Diego*, 655 F.3d 1171,
1181 (9th Cir. 2011) ("Under California's anti-SLAPP statute, 'a prevailing defendant on
a special motion to strike shall be entitled to recover his or her attorney's fees and
costs.'") (quoting Cal. Code Civ. Proc. § 425.16(c)(1)); *Richmond Compassionate Care
Collective v. 7 Stars Holistic Found.*, 33 Cal.App.5th 38, 45 (2019); Cal. Code Civ. Proc.
§ 425.16(c)(1) ("Except as provided in paragraph (2), in any action subject to subdivision
(b), a prevailing defendant on a special motion to strike shall be entitled to recover his or
her attorney's fees and costs."); *see also* Weil & Brown, CALIFORNIA PRACTICE
GUIDE:  CIVIL PROCEDURE BEFORE TRIAL (The Rutter Group 2021) ("Weil &
Brown"), § 7:1120, at 7(II)-81 – 82.  Fees incurred on the fee motion(s) may also be
awarded.  *See Ketchum v. Moses*, 24 Cal.4th 1122, 1141 (2001) ("[A]n award of fees may
include not only the fees incurred with respect to the underlying claim, but also the fees
incurred in enforcing the right to mandatory fees under Code of Civil Procedure section

425.16."). However, to be awarded, fees must be reasonable, *see Robertson v. Rodriguez*, 36 Cal.App.4th 347, 362 (1995), and are measured under the lodestar method, *see Ketchum*, 24 Cal.4th at 1136. *See also* Weil & Brown, §§ 7:1138-1139.

The Court sees no reason to question whether the Fee Movants qualify as "prevailing defendant(s)" for purposes of obtaining anti-SLAPP fees. *See Mann v. Quality Old Time Serv., Inc.*, 139 Cal.App.4th 328, 339 (2006) ("[A] party need not succeed in striking every challenged claim to be considered a prevailing party within the meaning of section 425.16."); *id.* at 340 ("Where the results of the motion are 'minimal' or 'insignificant' a court does not abuse its discretion in finding the defendant was not a prevailing party.") (omitting internal quotation marks). The anti-SLAPP motion directed at Plaintiff's original Complaint resulted in the Court striking two of Plaintiff's 24 claims in that Complaint without leave to amend. The Court denied the motion as to eight of the 24 claims because those eight claims were claims based on federal law. *See* Docket No. 89; Docket No. 80, at pgs. 4-5 of 11. As to the other state-law causes of action in the original Complaint, the "size and unwieldiness" and "blunderbuss pleading-style" of Plaintiff's Complaint made it near-impossible – or at least an inefficient use of Court resources, as compared to simply dismissing with leave to amend – for the Court to conduct the "principal thrust or gravamen" analysis that the Court believed it was appropriate to apply on that motion. *See* Docket No. 80, at pgs. 2, 10 of 11.

Still, the Court noted how undeniably central the earlier litigation – *FN Logistics LLC v. The Compliance Firm LLC d/b/a Compliant Care Staffing*, No. 2:21-cv-03312-GW ("the *Compliance* Action") – and/or threats of litigation (the activity that gave rise to application of the anti-SLAPP statute) was to the allegations in Plaintiff's Complaint. *See id.* at pgs. 6-7 of 11. The Court consequently advised Plaintiff that her "pursuit of any claim that is based on actions taken in connection with the *Compliance* Action is almost-certain to fail" and that, "[i]n amending her Complaint, [she] would be wise to excise mention of the *Compliance* Action from her allegations." *See id.* at pg. 10 of 11; *see also* Docket No. 89. The Court further warned Plaintiff that "[i]f she does not do so, and simultaneously does not make it much clearer which of her allegations support each individual claim in her case, the Court would have to strongly-consider simply presuming that any remaining allegations concerning the *Compliance* Action are, in fact, the

'principal thrust or gravamen'" of her state-law claims.  *See* Docket No. 80, at pg. 10 of 11; *see also* Docket No. 89.

When she filed her FAC, Plaintiff reduced the number of her claims from 24 to 7, including only two claims based on California law.  Beyond the two claims that were stricken without leave to amend from the original Complaint, the Fee Movants now argue that the earlier anti-SLAPP motion led to Plaintiff removing 11 of the other state-law claims that were present in the original Complaint and that are now omitted from the FAC:  claims 5-9, 13-15, and 17-19 in the original Complaint.  This is, in fact, a recognized method of demonstrating "prevailing defendant" status under California's anti-SLAPP statute, as the Fee Movants argue in their motion.  *See Mireskandari v. Daily Mail & Gen. Trust PLC*, No. CV 12-02943 MMM (FFMx), 2014 WL 12586434, *10 (C.D. Cal. Nov. 7, 2014); *Art of Living Found. v. Does 1-10*, No. 5:10-cv-05022-LHK, 2012 WL 1565281, *24-25 (N.D. Cal. May 1, 2012).  Plaintiff does not argue otherwise.[1] Nevertheless, as to which of the claims removed from the case can be attributed to the earlier anti-SLAPP motion, the Court only agrees with the Fee Movants in-part.

In reviewing again the original Complaint, the Court does not believe that the earlier anti-SLAPP motion was the source of Plaintiff's decision to omit the eighteenth and nineteenth causes of action, given the focus of those declaratory relief claims.  *See* Complaint ¶¶ 1272, 1274, 1278, 1280.  It reaches the same conclusion about claim

---

[1] In truth, Plaintiff's arguments in her Opposition to this motion have little relevancy to the merits of this motion.  They deal with: the defendants' alleged noncompliance with inapplicable-in-federal-court California procedural rules; whether Plaintiff herself is (or would have been) entitled to protection of the anti-SLAPP statute in the *Compliance* Action (or any non-existent lawsuit where she personally would have been sued); whether non-party to this action, The Compliance Firm should or could have enjoyed the protection of California's litigation privilege at some point in time, including in connection with the *Compliance* Action; whether there was substantive merit to, or a proper jurisdictional basis for, the *Compliance* Action; and whether the defendants should be sanctioned under 28 U.S.C. § 1927 and/or the Court's inherent authority.  None of these arguments have anything to do with whether the Fee Movants are prevailing defendants in connection with the earlier anti-SLAPP motion or what rates and work qualified as reasonable for purposes of arriving at a proper amount of a fee award.  With one exception, therefore, the Court sees no reason to even address them.  As to Plaintiff's argument that the defendants "were maintaining the [*Compliance*] Action for the improper purposes of claiming litigation privilege, claim preclusion and Anti-SLAPP defenses, in bad faith," Docket No. 104, at 12:10-14, 18:26-19:1, the contention makes no sense.  *Before* Plaintiff filed this lawsuit, the issues of litigation privilege and whether the defendants could move to strike under the anti-SLAPP procedure could not have been at issue because Plaintiff's suit *had not yet been filed*.  *After* Plaintiff filed this lawsuit, those issues were only to be adjudged by the contents of Plaintiff's lawsuit, not whether or not the defendants (or at least some of them) were *then-maintaining* the *Compliance* Action.

thirteen in the original Complaint, because that claim concerned the provision of legal services *to* Plaintiff.  *See id.* ¶¶ 1201-08.  Likewise, it appears unlikely that claims five and six in the original Complaint could have been successfully-targeted by an anti-SLAPP motion, as they appear to involve representations not related to the earlier litigation.  *See id.* ¶¶ 1076-83, 1085, 1091-1100.  The same conclusion would be reached about claims seven and eight in the original Complaint, which appear to have involved breaches of agreements, not statements made that would have been subject to protection by the anti-SLAPP law.  *See id.* 1107-10, 1112-15, 1122-29.[2]  In sum, the Court concludes that the reason Plaintiff abandoned each of these specific claims, none of which appear to have been clearly tied to the *Compliance* Action, must have been for some reason other than their potential exposure to the anti-SLAPP process.  The Court therefore does not consider the Fee Movants to be "prevailing defendant(s)" within the meaning of the anti-SLAPP law as to these particular claims.[3]  *See Area 51 Prods., Inc. v. City of Alameda*, 20 Cal.App.5th 581, 605 (2018) (indicating that determination whether defendant prevailed on anti-SLAPP motion is within the "broad discretion" of the court).

However, the same level of confidence is *not* possible with respect to claims nine, fourteen, fifteen, and seventeen.  As a result, the Court considers the omission of those four claims to indeed be traceable to the anti-SLAPP motion directed at the original Complaint, meaning that the Fee Movants should receive fees attributable to those claims in addition to the two claims (claims twenty and twenty-one) as to which their anti-SLAPP motion undeniably achieved success.

Plaintiff has not challenged the reasonableness of either the rates or the hours the fee motion requests.  The Court certainly could interpret that silence as conceding these points.  At the very least, Plaintiff has forfeited the opportunity to challenge any

---

[2] The Court recognizes that the original Complaint incorporated hundreds of paragraphs into each cause of action.  In some cases, however, consideration of the type of claim involved and the particular allegations that appeared, or were emphasized, within specific causes of action makes it relatively clear that this practice was the result of a somewhat-absent-minded over-inclusion, not a sincere belief that every one of the hundreds of incorporated paragraphs were relevant to each of the 24 causes of action in the Complaint.

[3] Alternatively, if it is deemed inappropriate under the law to make a "prevailing defendant" assessment on a claim-by-claim basis, the Court would conclude that fees incurred in connection with these particular claims – with a reminder that, as discussed further *infra*, in this motion the Fee Movants assigned fees to claims based on an equally-proportional division – were not "reasonable."

particular billing items as excessive or unreasonable.  *See Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 163 Cal.App.4th 550, 564 (2008) ("In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence.  General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice.").  Notwithstanding Plaintiff's lack of attention to the issue, however, the Court will still consider the reasonableness of the identified rates.

The rates the motion identifies are supported as within the range of reasonableness by independent evidence reflecting the range of rates charged by attorneys of varying levels of experience for matters in the Northern and Central District of California.  *See* Declaration of Dale A. Hudson in Support of Defendants' Motion for Attorney's Fees Under Cal. Civ. Proc. Code § 425.16(c)(1) ("Hudson Decl."), Docket No. 101-1, ¶ 5 & Exh. B.  The only hesitation the Court has in that regard concerns attorney Mark Zhai who charged $550 per hour as of April 2021,[4] but when he changed firms to his current firm began charging $695 later that same year.  *See* Declaration of Mark S. Zhai in Support of Defendants' Motion for Attorneys' Fees Under Cal. Civ. Proc. Code § 425.16(c)(1), Docket No. 101-2, ¶ 4 & Exh. A.  The Court understands that law firm economics may vary from firm-to-firm and working relationship-to-working relationship.  But the question here is the reasonableness of a *rate* full-stop, not the reasonableness of a rate taking into account a particular law firm's economic structure.  A rate-increase from $550 to $695 over the course of a few months does not gibe with any reasonable concept of reasonableness.  As a result, the Court will not issue fees at the $695 rate requested for Zhai, but will instead reduce that rate to $600 per hour.

The Fee Movants calculated the fees they request in this motion by simply multiplying all of the fees incurred in connection with the work on the earlier anti-SLAPP motion by a 13/24 fraction, in the belief that they could trace the omission from the FAC of 13 of the claims that were present in the original Complaint to their having filed and partially-succeeded on their first anti-SLAPP motion.  *See* Hudson Decl., ¶ 9.  As the Court has explained above, it believes that fraction should be 1/4, because in its

---

[4] The Fee Movants' motion papers reflect this rate as $500 per hour, but the court order attached to Zhai's declaration indicates the rate as $550 per hour.  *See* Declaration of Mark S. Zhai in Support of Defendants' Motion for Attorneys' Fees Under Cal. Civ. Proc. Code § 425.16(c)(1), Docket No. 101-2, ¶ 4 & Exh. A.

assessment only six of the now-missing claims can be reasonably-attributed to that motion.  In addition, taking into account the reduced rate for Zhai, the overall fee figure that the 1/4 fraction should be applied to would be $91,643.00, not $100,658.50.[5]  One-quarter of $91,643.00 is $22,910.75.  The Court will therefore award that amount as fees on the anti-SLAPP motion directed at the original Complaint (though before it finalizes that amount the Court will allow the Fee Movants to make a further *brief* submission on what additional amounts were incurred in connection with preparation of a Reply brief on this motion and their attorneys' "attendance" – virtually – at the hearing on the motion, which is one of *three* motions to be heard in the case on the day in question).

**B.  Anti-SLAPP Motion**

The Fee Movants together with defendant Nixon Peabody LLP ("Nixon") (collectively, "Defendants") move, pursuant to California Code of Civil Procedure § 425.16, to strike the fourth and/or seventh causes of action and/or the supporting allegations in the FAC.  The Court previously set forth the procedure and standards applicable to such a motion in its earlier ruling on the prior anti-SLAPP motion.  *See* Docket No. 80, at pgs. 2-4 of 11; *see also* Docket No. 89.  It incorporates that discussion herein to aid the succinct consideration of this motion.

The one issue about the applicable standard that the Court must revisit in this motion is whether or not the California Supreme Court's decision in *Baral v. Schnitt*, 1 Cal.5th 376 (2016), properly establishes the standard for consideration of anti-SLAPP motions in federal court.  The Court briefly considered that question in a footnote in its earlier anti-SLAPP ruling, concluding – perhaps especially because *Baral* had not been discussed in detail until the Reply brief on that motion – that it was "reluctant to adopt the approach reflected in *Baral*, especially in light of Ninth Circuit case law using the 'gravamen' analysis," citing a Ninth Circuit case that pre-dated *Baral*.  Docket No. 80, at pgs. 5-6 of 11, n.5.

As the Court noted in its footnote in the earlier anti-SLAPP ruling, only a single published Ninth Circuit decision had raised *Baral*, with the Ninth Circuit indicating that,

---

[5] In an ordinary case, this base fee amount in connection with a single anti-SLAPP motion would be unreasonable.  The length and detail of the Complaint in this action make plain that this is no ordinary case.  It is no small task to assess, analyze, strategize about, and respond to a Complaint of such density and length.

on remand, the district court in that case "should be aware" of *Baral*, "which explained that an anti-SLAPP motion may strike distinct claims within a cause of action, even if the entire cause of action is not subject to anti-SLAPP."  *Id.* at pg. 5 of 11, n.5 (citing *Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1189 n.4 (9th Cir. 2017)). The Ninth Circuit's limited official recognition of *Baral* remains true now (although the Circuit has applied *Baral*'s approach in unpublished, non-precedential and non-citable decisions).   Nevertheless, to the extent that there are any tea leaves to read on the question of whether *Baral is* consistent with the Federal Rules of Civil Procedure, that brief reference in *Jordan-Benel* certainly cannot be taken to imply that it is *not*. Moreover, Defendants have now argued in a timely fashion that *Baral*'s approach should apply, and Plaintiff has not contested that assertion.   The Court will not present arguments on this topic on Plaintiff's behalf.   In addition, district courts have applied *Baral*'s approach, without questioning whether doing so is inconsistent with any aspect of the Federal Rules of Civil Procedure.  *See, e.g.*, *Ramachandran v. City of Los Altos*, 359 F.Supp.3d 801, 810 (N.D. Cal. 2019); *Khai v. Cty. of L.A.*, No. CV 16-3124 PA (JCx), 2016 WL 11520701, *3 (C.D. Cal. Aug. 10, 2016).  As a result, the Court will apply *Baral*'s approach (though it encourages the Ninth Circuit to provide clarity on this question when possible).

The instant motion concerns only two of the seven causes of action pled in the FAC because there are only two state-law claims (and California's anti-SLAPP procedure cannot be applied to claims brought under federal law).[6]   The Court first considers claim seven, a claim for intentional infliction of emotional distress ("IIED").

### 1.  IIED – Seventh Cause of Action

There are only eight paragraphs found specifically within Plaintiff's IIED claim. *See* FAC ¶¶ 332-339.   As Defendants argue most-distinctly in their companion Rule 12(b)(6) motion, those paragraphs are devoid of facts.  However, paragraph 332 "restates and incorporates the allegations from the above paragraphs as if they were stated in full herein," thereby incorporating all the allegations in the preceding 331 paragraphs.  *Id.* ¶

---

[6] *See* Footnote 18, *infra* (noting the possibility that the Court may decline to consider this anti-SLAPP motion if it dismisses all federal-law causes of action without leave to amend in connection with pending motion to dismiss).

332.  In addition, paragraphs 334 and 336 refer to unspecified material that is "alleged herein," and paragraph 338 makes a reference to "similar future conduct."  *Id.* ¶¶ 334, 336, 338.  The question then is whether there are allegations in the first 331 paragraphs of the FAC reflecting activity that qualifies, at the first step of anti-SLAPP analysis, as free speech and/or petition activity and/or falls within one of the categories set forth in Cal. Code Civ. Proc. § 425.16(e).  Undeniably, there is.

Because of the lack of clarity in Plaintiff's IIED claim itself, the Court has again given its best effort to assess the first 331 paragraphs in Plaintiff's pleading, and has identified a number of paragraphs where Plaintiff is clearly still taking issue with the filing of the *Compliance* Action and/or threats of litigation.  This is the activity that the Court concluded, in its consideration of the prior anti-SLAPP motion, satisfied the first step of the anti-SLAPP test, and the Court sees no reason why it would reach any different conclusion here.[7]  In the FAC, those paragraphs are numbers 14-16, 65-66, 68, 72, 74, 78, 89-96, 99-100, and 115.  Thus, under *Baral*, those paragraphs[8] and any claim based upon them are subject to being stricken.  *See Baral*, 1 Cal.5th at 395 ("Thus, in cases involving allegations of both protected and unprotected activity, the plaintiff is required to establish a probability of prevailing on any claim for relief based on allegations of protected activity.  Unless the plaintiff can do so, the claim and its corresponding allegations must be stricken.").

With Defendants' satisfaction of the first step of the anti-SLAPP test as to the IIED claim (at least in part) and the foregoing paragraphs (to the extent they are incorporated into the IIED claim), the burden shifts to Plaintiff to demonstrate a reasonable probability that she will prevail on her IIED claim as it depends on these

---

[7] Plaintiff briefly attempts in her Opposition to liken the filing of the *Compliance* Action and threats to take legal action to "true threats" and asserts that such conduct does not enjoy the protection of the First Amendment.  But the First Amendment is not at issue here; the scope of California's anti-SLAPP statute is.  Beyond that basic point, there is nothing in the FAC which comes close to the type of "true threat" behavior at issue in the cases Plaintiff relies upon in her brief.  *See* Docket No. 102, at 19:14-25 (citing cases dealing with cross-burning and threatening the life of the President).

[8] The Court will hear from Defendants whether they believe other paragraphs in the FAC should be included in this grouping.  Certainly there are other paragraphs within the other six causes of action preceding Plaintiff's IIED claim which could be included, but rather than being stricken entirely (which they largely cannot be because they are used in connection with other claims that are not subject to the anti-SLAPP statute) Plaintiff will have to be much-more-careful and clear about which paragraphs she simply incorporates into – as she has done in the FAC, via paragraph 332 – any future version of her IIED claim.

allegations, under a Rule 12(b)(6) standard.  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833-35 (9th Cir. 2018).  For the same reasons the Court discussed in its consideration of the prior anti-SLAPP motion, Plaintiff has not and cannot do so because of application of California's litigation privilege.  *See Flatley v. Mauro*, 39 Cal.4th 299, 323 (2006); *see also Rubin v. Green*, 4 Cal.4th 1187, 1193 (1993); *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1249 (2007); *Kashian v. Harriman*, 98 Cal.App.4th 892, 913 (2002); *Smith v. Hatch*, 271 Cal.App.2d 39, 45 (1969); *Graham-Sult v. Clainos*, 756 F.3d 724, 741 (9th Cir. 2014). The Court briefly addresses Plaintiff's arguments, nonetheless.

Plaintiff's Opposition on this motion is largely committed to inapplicable issues. She argues that Defendants violated a Local Rule by not serving evidence with their motion and that Defendants filed the motion in violation of California Code of Civil Procedure § 128.7(c).  But Defendants' motion – specifically, their argument at the second step of the anti-SLAPP process – is not based on evidence, and Section 128.7(c) of the California Code of Civil Procedure does not govern litigants' conduct in federal court.  Plaintiff also argues that *her* conduct is/was protected by the anti-SLAPP statute and/or California's litigation privilege.  But whether a *plaintiff's* conduct is protected is not the question on an anti-SLAPP motion brought by defendants.  If there was an argument for application of the anti-SLAPP statute/litigation privilege in the *Compliance* Action, as Plaintiff seems to indicate is her belief, it would have had to have been raised in *that* case (and not by Plaintiff, who was not a party to that case).

Plaintiff only makes two contentions that arguably come close to actually bearing on the proper analysis here.  First is her assertion that the *Compliance* Action was filed for an improper purpose.  But as the Court explained in handling the prior anti-SLAPP motion, it does not appear that this would fit within a very-limited exception to California's litigation privilege.  *See* Docket No. 80, at pg. 9 of 11, n.9; see also *City of Montebello v. Vasquez*, 1 Cal.5th 409, 424 (2016).  Plaintiff has made no attempt in connection with the current motion to prove the Court's conclusion in this regard incorrect.  As a result, even if the Court found Plaintiff's "improper purpose" argument convincing – and there is nothing about the *Compliance* Action itself which makes that conclusion an obvious one (though it is not proper to measure or comment upon the

merits of that case here) – it would not aid Plaintiff's case under the glare of the anti-SLAPP statute.

Second is Plaintiff's brief contention that her state-law claims are not based upon the *Compliance* Action and Defendants' protected activity, but that the *Compliance* Action is instead simply mentioned "to provide context for schemes and artifices Defendants employed to defraud" her and thus those mentions are "merely incidental" and/or "collateral" to her claims. *See* Docket No. 102, at 1-15; *see also Baral*, 1 Cal.5th at 394 ("Assertions that are 'merely incidental' or 'collateral' are not subject to section 425.16. Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute.") (omitting internal citations). The problem with that argument is that it is by no means supported by a review of the actual FAC. The FAC makes no effort to clarify what Plaintiff's state-law claims are or are not based-upon, despite the Court having warned Plaintiff of this precise problem in connection with the earlier anti-SLAPP motion.[9] Moreover, within one page of this argument, Plaintiff contradicts herself, asserting that her state-law claims "arise Defendants' [*sic*] threats of legal action and abuse of process." *Id.* at 19:1-7.

For the foregoing reasons, Paragraphs 14-16, 65-66, 68, 72, 74, 78, 89-96, 99-100, and 115 in the FAC are stricken, and the IIED claim itself is stricken to the extent those paragraphs are relied upon as support for the IIED claim.[10] If the material remains in any future version of Plaintiff's complaint and Plaintiff does not specifically exclude the paragraphs/content in question from any version of an IIED claim in that future version of her complaint, she will only be inviting yet another anti-SLAPP motion.

---

[9] In the prior anti-SLAPP ruling in this case, the Court warned Plaintiff that:

> In amending her Complaint, Plaintiff would be wise to excise mention of the *Compliance* Action from her allegations. If she does not do so, and simultaneously does not make it much clearer which of her allegations support each individual claim in her case, the Court would have to strongly-consider simply presuming that any remaining allegations concerning the *Compliance* Action are, in fact, the "principal thrust or gravamen" of Plaintiff's state-law claims, as Defendants have currently-argued.

Docket No. 80, at pg. 10 of 11. She ignored this warning at her peril.

[10] Even if the Court were to conclude that the approach taken in *Baral* cannot apply in federal court because of a belief that it would conflict with certain aspects of the Federal Rules of Civil Procedure, and instead continued to apply a strict understanding of the "principal thrust or gravamen" test, the Court would very-likely still rule in favor of Defendants – for the reasons addressed *supra* – at least as to Plaintiff's IIED claim.

2.  Fourth Cause of Action

Other than with respect to the IIED claim, Defendants' anti-SLAPP motion challenges only Plaintiff's fourth claim for relief, for violation of the California Trafficking Victims' Protection Act ("CTVPA"), via Cal. Civ. Code § 52.5.  Section 52.5(a) of California's Civil Code allows that "[a] victim of human trafficking, as defined in Section 236.1 of the Penal Code," to "bring a civil action" for various forms of relief. Cal. Civ. Code § 52.5(a).

This fourth claim shares certain basic similarities with the IIED claim in that it includes a paragraph incorporating all foregoing paragraphs in the FAC (in this case 273 of them), *see* FAC ¶ 274, and is likewise entirely non-factual with respect to just what behavior Saghian, Meierhans, FN and/or FNL – the only defendants named on the claim – engaged in that Plaintiff asserts would support a violation of the CTVPA.  For the same reasons as Plaintiff's IIED claim, therefore, the paragraphs specified above would qualify for protection of the anti-SLAPP statute at the first step of the analytical process pertinent thereto.  *See also id.* ¶¶ 277(a), 279-281 (referencing the definition of "coercion" under Penal Code § 236.1(h), including that definition's inclusion of "the abuse or threatened abuse of the legal process," and stating that the defendants obtained forced labor or services through, among other things, coercion).  However, there is a distinct issue to address in contemplating an anti-SLAPP motion targeting this particular claim.

One of the arguments Plaintiff makes at the *second* step of the anti-SLAPP analysis is that exceptions to the litigation privilege have been found for specific statutes where such a statute is "'more specific than the litigation privilege and would be significantly or wholly inoperable if . . . enforcement were barred when in conflict with the privilege.'"  *See Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal.App.4th 324, 337 (2009) (quoting *Action Apartment*, 41 Cal.4th at 1246).  She asserts that the CTVPA qualifies for this exception because of Section 236.1(h)(1) of the California Penal Code. That subparagraph defines "[c]oercion" as "a scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; *the abuse or threatened abuse of the legal process*; debt bondage; or providing and facilitating the possession of a controlled substance to a person with the intent to impair the person's judgment."  Cal. Penal Code § 236.1(h)(1)

(emphasis added).  "Coercion," in turn, is a term used in defining "[d]eprivation or violation of the personal liberty of another" and "[f]orced labor or services," terms which are used in the definition of the activity that Section 236.1 penalizes:  "A person who deprives or violates the personal liberty of another with the intent to obtain forced labor or services, is guilty of human trafficking . . . ."  Cal. Penal Code § 236.1(a); *see also id.* § 236.1(h)(3), (h)(5).  Because of this definition of "coercion" to include "the abuse or threatened abuse of the legal process," there is at least a colorable argument that the CTVPA does indeed merit an exception from application of the litigation privilege under the more-specific-statute approach.

In Reply, Defendants do not deny the existence of the exceptions to the litigation privilege Plaintiff highlights, but instead argue simply – and correctly – that Plaintiff "failed to cite any authority holding the [CTVPA] is exempt from the litigation privilege."  Docket No. 106, at 9:16-18.  While that is true, however, Defendants never attempt to deal with the fact that Penal Code Section 236.1(h)(1) specifically includes "the abuse or threatened abuse of the legal process" within the definition of "coercion."  Without doing so, it is difficult to understand how they can take the position that "application of the [litigation] privilege does not render the CTVPA 'significantly or wholly inoperable' in any way."  *Id.* at 9:26-10:2.

Of course, even if Plaintiff is able to convince the Court that the litigation privilege cannot be applied as a defense to her claim under the CTVPA, she still must be able to show at the second anti-SLAPP step that her claim is "legally sufficient and factually substantiated," that her "showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment."  *Baral*, 1 Cal.5th at 396.  On this point, Defendants and Plaintiff both incorporate their briefing from their companion Rule 12(b)(6) motion to dismiss.  *See* Docket No. 12:27-13:5; Docket No. 102, at 22:8-19.

"Human trafficking is defined as the deprivation or violation of the personal liberty of another 'with the intent to obtain forced labor or services.'"  *Lofthus v. Long Beach Veterans Hosp.*, 214 F.Supp.3d 908, 916 (C.D. Cal. 2016).  At least one case has recognized the elements of such a claim – derived from criminal case law – as being: 1) the defendant either deprived another person of personal liberty or violated that other person's personal liberty; and 2) when the defendant did so, he or she intended to obtain

forced labor or services from that person.  *See Owino v. CoreCivic, Inc.*, No. 17-CV-1112 JLS (NLS), 2018 WL 2193644, *14-15 (S.D. Cal. May 14, 2018).  "Deprivation or violation of the personal liberty of another" is defined to:

> include[] substantial and sustained restriction of another's liberty accomplished through force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury to the victim or to another person, under circumstances where the person receiving or apprehending the threat reasonably believes that it is likely that the person making the threat would carry it out.

Cal. Penal Code § 236.1(h)(3).  Meanwhile, "[f]orced labor or services" "means labor or services that are performed or provided by a person and are obtained or maintained through force, fraud, duress, or coercion, or equivalent conduct that would reasonably overbear the will of the person."  *Id.* § 236.1(h)(5).

Reviewing the allegations in the FAC with these statutory provisions and the recognized claim elements in-mind, and even considering the material included in the declaration Plaintiff filed in connection wither her Opposition to this motion, *see* Docket No. 102-1, the Court does not believe that Plaintiff has demonstrated a reasonable probability that she will prevail on her fourth cause of action even ignoring California's litigation privilege (meaning that the Court has no need, in the end, to consider whether the CTVPA qualifies for an exception from the litigation privilege at least where allegations concern threatened or actual litigation).  The Court sees no sign of any "substantial and sustained restriction" of Plaintiff's liberty and no sign of conduct that would "reasonably overbear the will" of Plaintiff (apparently a law school graduate, *see* FAC ¶¶ 99-101).  Instead, what the Court observes are a series of workplace and/or contract disputes, accompanied with non-payment and threats of lawsuits.  Plaintiff was not, in that context, *forced* to work for any of the Defendants, nor was her "liberty" "restrained" in a "substantial and sustained" manner.  Plaintiff clearly had the choice to stop working and face legal action – which is what eventually happened, at least in the form of the *Compliance* Action.  To the extent Plaintiff and/or The Compliance Firm were not paid for their work, she and/or they had the option of taking legal action against one or more of the Defendants.  These are not facts which remotely give rise to a CTVPA claim, in this Court's opinion.

As a result, like the IIED claim, to the extent Plaintiff's fourth cause of action is

based upon the paragraphs identified *supra*, that claim and those allegations are stricken in accordance with California's anti-SLAPP law.

### C.  Motion to Dismiss

Defendants also have filed a motion to dismiss, pursuant to Federal Rules of Civil Procedure 8(a)(2), 12(b)(1) and 12(b)(6).

#### 1.  Applicable Standards

Under Rule 12(b)(6), a court must: (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).  However, a plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Johnson*, 534 F.3d at 1122 (quoting *Twombly*, 550 U.S. at 570); *see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases").  A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

Dismissal pursuant to Rule 12(b)(1) is appropriate when either the complaint or

evidence extrinsic to the complaint demonstrates that the court lacks subject matter jurisdiction over the action. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Standing pertains to a federal court's subject-matter jurisdiction, and therefore is properly the subject of a Rule 12(b)(1) motion. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also* Phillips & Stevenson, RUTTER GROUP PRAC. GUIDE: FEDERAL CIV. PRO. BEFORE TRIAL (The Rutter Group 2020) ("Phillips & Stevenson"), ¶ 9:76.2.

"Article III of the Constitution requires that a plaintiff have standing before a case may be adjudicated." *Covington v. Jefferson Cnty.*, 358 F.3d 626, 637 (9th Cir. 2004). For Article III standing, plaintiffs must show: (1) they have suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendants; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See, e.g., Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941, 949 (9th Cir. 2006); *see also Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011) ("The 'irreducible constitutional minimum of standing' includes three elements: (1) injury in fact; (2) causation; and (3) redressability."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Article III standing is a threshold issue, *see Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 94-95, 102 (1998), and Plaintiff bears the burden of demonstrating her standing for each claim. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

"Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White*, 227 F.3d at 1242. "With a factual Rule 12(b)(1) attack, . . . a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *Id.* "It also need not presume the truthfulness of the plaintiffs' allegations." *Id.* For a facial Rule 12(b)(1) challenge, the court must consider the allegations in the FAC as true. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *see also* Phillips & Stevenson, ¶ 9:84.

Defendants' motion to dismiss seeks the dismissal of all seven claims for relief.

The Court will address the claims in order.[11]

### 2. Federal Forced Labor Claims

Plaintiff's first three causes of action are for "Forced Labor," pursuant to 18 U.S.C. §§ 1589(a)(2), 1589(a)(3), 1589(b), and 1595. Section 1595 of Title 18 gives any "individual who is a victim" of a violation of Chapter 77 of Part 1 of Title 18 the right to bring a civil action against "the perpetrator" or "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of" Chapter 77. 18 U.S.C. § 1595(a). Subsections 1589(a)(2), 1589(a)(3), and 1589(b) are all part of Chapter 77.

Subsection 1589(a)(2) provides that "[w]hoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means – . . . (2) by means of serious harm or threats of serious harm to that person or another person" is subject to the prescribed punishment set forth elsewhere in Section 1589. *Id.* § 1589(a)(2). Subsection 1589(a)(3) describes another covered "means" – "by means of the abuse or threatened abuse of law or legal process." *Id.* § 1589(a)(3). Meanwhile, subsection 1589(b) provides for punishment for:

> [w]hoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means.

*Id.* § 1589(b). Section 1589 also defines the terms "abuse or threatened abuse of law or legal process" and "serious harm," respectively, as follows:

> the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action;
> and
> any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue

---

[11] Defendants have filed a request for judicial notice in connection with this motion, and Plaintiff has presented arguments in opposition to that request. The Court has no need to consider any of the material submitted with that request in order to rule on this motion, and therefore does not address or resolve the dispute about whether any of the materials are properly judicially-noticeable.

performing labor or services in order to avoid incurring that harm.

*Id.* §§ 1589(c)(1), (c)(2).

Defendants' arguments regarding these first three claims[12] in the FAC are all made pursuant to Rule 12(b)(6).  They argue that it is very obvious that what occurred here was something far-different than what the statutes in question are designed to cover – "threats . . . made on both sides to terminate the relationship," Docket No. 100, at 9:12-13, and eventually a filed-lawsuit (that led to a default judgment before that judgment was voluntarily-vacated following further proceedings and discussions regarding subject matter jurisdiction) involving a plaintiff who is a registered nurse, law school graduate, sole owner of The Compliance Firm and its subsidiaries, and who reports a base annual salary of $750,000 (plus bonuses).  *See* FAC ¶¶ 81, 99-101, 118, 121.  Defendants continue on to make the case that the claims in question are particularly-frivolous with respect to Saghian, Meierhans, Nixon and Riordan.  The Court likely has no need to particularly consider the relative frivolity of claims against Saghian, Meierhans, Nixon and/or Riordan, because – with one possible exception mentioned *infra*, Footnote 14 -- it otherwise agrees with Defendants that what Plaintiff has pled does not remotely qualify as "forced labor" under the identified statutes.

First, Plaintiff's allegations (with the one possible exception just-referenced) fail under subsection 1589(a)(2) because she has not pled any type of harm "that is sufficiently serious, under all the surrounding circumstances, to compel a *reasonable person of the same background and in the same circumstances*" to perform or continue to perform the labor and/or services in question.  As Defendants point out, Plaintiff is both a registered nurse and law school graduate.  The "harm" Plaintiff alleges she faced would not compel a "reasonable person" of her "background" to continue a working relationship with Saghian, Meierhans, FN or FNL.  *See United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011) ("[T]he threat [is] considered from the vantage point of a reasonable person in the place of the victim [and] must be 'sufficiently serious' to compel that person to remain.'").  A reasonable person in her circumstances would have: a) walked away from the relationship, b) filed a lawsuit/defended a lawsuit/counter-sued to enforce

---

[12] Saghian, Meierhans, FN and FNL are the only defendants named in the first claim, for violation of 18 U.S.C. § 1589(a)(2).  All Defendants are named on the second and third causes of action, for violation of 18 U.S.C. §§ 1589(a)(3) and 1589(b).

what she believed were her (or her company's) rights, and/or c) found somebody else – given her skills and education – to employ and pay her for working.  Indeed, FN/FNL ultimately terminated The Compliance Firm's contracts, and Plaintiff obviously stopped working for it/them.  *See Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012) ("But the record does not suggest that the defendants obtained the Headleys' labor 'by means of' those features of Sea Org life.  To the contrary, the record supports the conclusion that such features caused Mar and Claire to *leave* the Sea Org and thus to stop providing labor."); *Martinez-Rodriguez v. Giles*, 391 F.Supp.3d 985, 994 (D. Id. 2019) ("If Funk Dairy was truly forcing Plaintiffs to perform labor, they would not have allowed three Plaintiffs to quit, nor terminated three Plaintiffs themselves.").

In short, a reasonable person would not have simply continued performing labor or services for these defendants under these circumstances, at least not *because of* the acts Plaintiff attributes to Defendants.  Plaintiff simply has not plausibly-alleged a claim under subsection 1589(a)(2) given the definition of "serious harm" in subsection 1589(c)(2).  *See Muchira v. Al-Rawaf*, 850 F.3d 605, 618-19 (4th Cir. 2017) ("Typically . . . 'forced labor' situations involve circumstances such as squalid or otherwise intolerable living conditions, extreme isolation (from family and the outside world), threats of inflicting harm upon the victim or others (including threats of legal process such as arrest or deportation), and exploitation of the victim's lack of education and familiarity with the English language, all of which are 'used to prevent [vulnerable] victims from leaving and to keep them bound to their captors.'") (quoting *United States v. Callahan*, 801 F.3d 606, 619 (6th Cir. 2015)).[13]   Plaintiff makes no attempt to cite any cases which, by comparison, show that this conclusion would be incorrect.

Second, Plaintiff's allegations fail (again, with the one possible exception) under subsection 1589(a)(3) because she has not established the "abuse" of law or legal process, aside from the use of conclusory buzzwords and the fact that the *Compliance* Action ultimately was voluntarily-dismissed because of subject matter jurisdiction-based

---

[13] While Plaintiff also discusses a definition of "coercion" and the concept of "restraint" in her Opposition brief, the term "coercion" is not used in Section 1589, and "restraint" is only mentioned in subsections – 18 U.S.C. §§ 1589(a)(1), (4) – that are not encompassed by Plaintiff's federal forced labor claims.  *See* Docket No. 130, at 6:19-7:27.

uncertainty.[14]   Even if the Court were to ultimately conclude not only that the subject matter jurisdiction allegations involving the *Compliance* Action were wrong *and* that they were *knowingly* wrong, this would not mean that the merit of the lawsuit itself was frivolous, flawed, or doomed-to-fail.   The Compliance Firm's allowing the case to proceed to default judgment certainly does not aid Plaintiff in that conclusion.

FNL pursued largely breach-of-contract-based litigation in the Compliance Action.   It may ultimately be successful, or not, if the case is ever re-filed in state court. But there is nothing that Plaintiff has pled which clearly demonstrates the impropriety of FNL having attempted to enforce what it believed to be its rights, or that it did so "for any purpose for which the law was not designed."   18 U.S.C. § 1589(c)(1).   And if subject matter jurisdiction were improper in federal court, this would simply mean that the FNL could have and should have filed the action in state court, where it ultimately – presumably – would have been resolved on the merits, that is if The Compliance Firm chose to participate.   This does not come close to demonstrating the abuse of law or legal process, and Plaintiff has not cited any case that suggests otherwise.   *See Headley*, 687 F.3d at 1180 ("In applying the Act, we must distinguish between '[]improper threats or coercion and permissible warnings of adverse but legitimate consequences.'") (quoting *United States v. Bradley*, 390 F.3d 145, 151 (1st Cir. 2004)); *compare Ruelas v. Cty. of Alameda*, 519 F.Supp.3d 636, 649 (N.D. Cal. 2021) (finding allegations under subsection 1589(a)(3) sufficient where plaintiff alleged that private prison contractor threatened to report prisoner-employees to Sheriff's deputies – who have the power to put them in solitary confinement or impose lengthier sentences – for punishment if they refuse to work); *Lesnik v. Eisenmann SE*, 374 F.Supp.3d 923, 952 (N.D. Cal. 2019) (finding allegations sufficient under subsections 1589(a)(2) and (3) where defendant alleged to have "threatened to withhold pay if workers became too sick to work or reported a job

---

[14] Though Plaintiff asserts that her "FAC alleges multiple instances of threatened use of a law or legal process" that meets the definition of Subsection 1589(c)(1), she cites no paragraphs in support of that contention, and never explains how any of those alleged threats forced her to provide labor or services, let alone why any of those threats were made in a manner or for a purpose "for which the law was not designed," or how (in terms applicable to Subsection 1589(a)(2)) any "reasonable person" of her background would have viewed the threats as posing sufficiently "serious harm."   *See* Docket No. 103, at 8:10-9:4.   Notwithstanding Plaintiff's lack of detailed attention, the Court would ask Defendants for their view of why the allegations found in paragraphs 78-82 of the FAC – which Plaintiff does not appear to have cited at all in her Opposition, at least with respect to her three federal forced labor claims – do not suffice under Subsections 1589(a)(2) and (a)(3).

injury," "threatened to withhold medical benefits if workers reported a job injury," "threatened to withhold visas and immigration status," "threatened to file a civil suit against [the plaintiff] while he was hospitalized," and told Plaintiff "this will not go well for you").

Even if the threats allegedly made to Plaintiff were sufficient to overcome a reasonable person of her background, *they were not threats made to compel her to continue providing labor or services* (with the possible exception discussed in the final sentence of Footnote 14, *supra*).  See FAC ¶ 11 ("Fashion Nova further threatened it had the means to make Plaintiff 'disappear' if she ever pursued or participated in any legal claims against Fashion Nova."); ¶ 65 ("On or about September 8, 2020, Ott, Meierhans, FNL and FN threatened to sue Stillwell and Compliance Firm for breach of contract, negligence, and fraud after Stillwell raised concerns about worker compensation fraud."); *id.* ¶ 66 (reflecting threat to terminate agreements and sue for breach of contract, negligence, and fraud if Plaintiff reported worker compensation schemes); *id.* ¶ (reflecting threat to sue for breach of fiduciary duties if Plaintiff reported concealment of positive COVID-19 cases).  One allegation that might, at first glance, potentially qualify in that regard – though, again, Plaintiff made no detailed attempt in her Opposition brief to explain why this would/might be the case – would not appear to amount to "abuse or threatened abuse of law or legal process" and occurred less than a week before FN/FNL terminated its agreements with The Compliance Firm, indicating that it/they were not, in fact, forcing a labor relationship thereby.  *See id.* ¶ 74 (alleging that, on December 31, 2020, "Dill warned that FN and FNL would not pay its outstanding invoices and would sue Stillwell and Compliance Firm for breach of contract if Stillwell 'quit the team.'"); *see also id.* ¶ 85 (indicating that Meierhans emailed Plaintiff a "Notice of Termination for all existing agreements" on January 6, 2021).

The statutory language itself makes clear that a claim under subsection 1589(b) – the source of Plaintiff's third claim for relief – depends upon demonstrating the existence of "a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection [1589(a)]."  18 U.S.C. § 1589(b).  Having failed – subject to the possible exception already-mentioned – to sufficiently allege that underlying circumstance, Plaintiff's arguments directed towards demonstrating that she

need not "pierce the corporate veil" are irrelevant, and her third cause of action also fails. For the same reason, Plaintiff's arguments regarding liability for an *attempt* to violate Section 1589 are also unnecessary to consider or address.

The Trafficking Victims Protection Act – which is what Section 1589 is part of – was enacted "to implement the Thirteenth Amendment against slavery or involuntary servitude." *See United States v. Toviave*, 761 F.3d 623, 629 (6th Cir. 2014); *Ruelas*, 519 F.Supp.3d at 645, 647. It is relatively clear that what happened here does not fall within the intended scope of that legislation. Unless the Court can be convinced that paragraphs 78-82 of the FAC support a federal forced labor claim, Plaintiff has failed, thus far, to demonstrate that she has sufficiently pled one in any of her first two causes of action. Her third cause of action is dependent upon her successfully pleading a Section 1589(a) claim. As a result, as it now stands the Court would dismiss Plaintiff's first three causes of action.

Although it is theoretically-possible that Plaintiff would be able to amend these claims, the Court would ask Plaintiff to indicate what more she can add that would change the relatively-clear nature of her dispute into one plausibly alleging circumstances of forced labor within the meaning of the federal statute. If she is unable to do so, the Court may very well conclude that a dismissal of these claims should be without leave to amend.

### 3.  CTVPA Claim

Plaintiff's fourth cause of action, under the CTVPA, appears deficient even if she is able to successfully persuade the Court regarding the impact of paragraphs 78-82 discussed *supra* in connection with the federal forced labor claims and that those circumstances could be said to have reasonably overcome Plaintiff's will within the meaning of Penal Code Section 236.1(h)(5). This is because, as discussed in connection with Defendants' anti-SLAPP motion, the CTVPA covers "substantial and sustained restriction of [Plaintiff's] liberty" and has "confinement or restraint" as a required element. *See also People v. Oliver*, 54 Cal.App.5th 1084, 1096 (2020). This was never true as to Plaintiff. Plaintiff always had the choice to walk away, even if it would have meant being sued or being reported to government agencies for allegedly doing something improper. Even specifically with respect to the circumstances discussed in

paragraphs 78 through 82 of the FAC, to the extent anyone would consider her "liberty" to have been restrained thereby, such restriction could never be considered "sustained" – her company's contracts were terminated within a matter of two days following the statements/threats in question.  *See* FAC ¶¶ 77-78, 85.

Plaintiff's response on this motion, with respect to this claim, is limited to a single paragraph.  In that paragraph, she quotes statutory language and argues the issue of whether a claim under the statute can be barred by the litigation privilege, before, in a final sentence, making the assertion "[p]ersonal liberty of another can be violated without confinement, contrary to Defendants' argument."  Docket No. 103, at 11:6-27.  Plaintiff provides no citation to support this contention and, as discussed below, the Court seemingly has no need to consider the question of the litigation privilege's application/non-application to the CTVPA.  In other words, her limited arguments regarding this claim are not in-the-least persuasive.

Given the foregoing, the Court has no need to consider: 1) whether Plaintiff has plausibly alleged intent, 2) whether the entirety of Plaintiff's CTVPA claim is barred by California's litigation privilege (for reasons discussed in connection with the anti-SLAPP motion, the resolution of that issue may be less than straight-forward) or 3) whether the claim is, as Defendants argue, "extremely frivolous" as to Saghian, Meierhans and FN. The claim will be dismissed.  As is the case with her federal forced labor claims (although those claims have one potential viable path, as discussed), unless Plaintiff gives the Court some reason to think that she can fundamentally alter the nature of her allegations to demonstrate that her relationship with Defendants was something significantly-beyond what she has alleged thus far, it is likely that the dismissal of this claim will be without leave to amend.

### 4. Civil RICO Claims

Plaintiff's fifth and sixth claims are for civil enforcement of the Racketeer Influenced and Corrupt Organizations Act ("Civil RICO").  "To establish a civil RICO claim, a plaintiff must establish:  '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property.'"  *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th

Cir. 2005)).  In addition, Civil RICO claims relying upon fraud must comply with Rule 9(b)'s demands.  *See, e.g.*, *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004) ("Rule 9(b)'s requirement that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity' applies to civil RICO fraud claims."); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557-58 (9th Cir. 2010); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553-54 (9th Cir. 2007).

Defendants advance a series of reasons why they believe Plaintiff's Civil RICO claims must fail.  They argue, as to the fifth cause of action specifically, that "honest services fraud" is not a predicate act under RICO.  They argue that Plaintiff lacks standing with respect to certain of the "schemes" she alleges in support of her Civil RICO claims.  They assert that Plaintiff has insufficiently alleged the existence of an "enterprise."  They contend that Plaintiff has not sufficiently alleged a "pattern" of racketeering activity.  Finally, they argue that Plaintiff has not sufficiently pled the existence of a specific intent to defraud, which they assert is necessary when acts of fraud constitute the alleged predicate RICO acts.

With the exception of a paragraph devoted to the issue of standing (purporting to cover *all* of Plaintiff's claims based in federal law), Plaintiff devotes only slightly more than two pages of her Opposition brief to her Civil RICO claims.  *See* Docket No. 103, at 12:1-14:2.  Much of that response is limited to the argument of whether honest services fraud can serve as a RICO predicate.  *See id.* at 12:2-13:4.  As best the Court can tell, four sentences, and a general reference to paragraphs 179-217, make up the entirety of Plaintiff's un-detailed attempt to establish the sufficiency of her "pattern" allegation.  *See id.* at 13:12-18, 13:20-14:1.  Defendants aptly-summarize the effort:  "[r]ather than describing the particular facts which she claims constitute a RICO Claim, Plaintiff provides generalized citations to the First Amended Complaint, and insists that somewhere within the litany of words and paragraphs there is factual support for her claim."  Docket No. 105, at 8:9-12.  This is problematic for Plaintiff, because – while this should by-no-means be taken as an indication that it is the *only* flaw the Court perceives with Plaintiff's Civil RICO claims, as they are currently pled – it is the pattern element that the Court finds most-problematic, and least-likely for Plaintiff to be able to explain how she can successfully amend.

For a "pattern of racketeering activity" to exist, the racketeering predicates must be "'related'" and "'amount to or pose a threat of continued criminal activity.'" *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). "'Related' conduct 'embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000). Having the same "participants" is "insufficient to establish relatedness." *Id.* The same is true with respect to a similar common purpose of making money. *See, e.g.*, *Sairam v. Mercy Retirement & Care Ctr.*, No. 21-cv-04335-EMC, 2021 WL 4170770, at *6 (N.D. Cal. Sept. 14, 2021).

With respect to the "continuity" requirement in particular, it "can be demonstrated by proving either 'a series of related predicates extending over a substantial period of time' or 'past conduct that by its nature projects into the future with a threat of repetition.'" *Religious Tech.*, 971 F.2d at 366 (quoting *H.J. Inc.*, 492 U.S. at 241-42); *see also H.J., Inc.*, 492 U.S. at 242 (indicating that it is "RICO's predicate acts or offenses" that "must be continuous"). A continuation of the alleged activity over the course of at most six months, or even less than a year, does not suffice. *See Religious Tech.*, 971 F.2d at 366-67; *see also H.J.*, 492 U.S. at 242 ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."); *Turner v. Cook*, 362 F.3d 1219, 1229-31 (9th Cir. 2004); *Howard*, 208 F.3d at 750; *Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996) ("[C]ontinuity cannot usually be proven unless the scheme has been in existence for at least one year."); *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995) ("The Court [in *H.J. Inc.*] concluded that 'Congress was concerned in RICO with long-term criminal conduct.").

The Court has examined the paragraphs Plaintiff identified in her generalized Opposition in support of her Civil RICO claims. Paragraph 186 of the FAC alleges that Defendants engaged in the alleged enterprise affairs "through a pattern of racketeering activity and for the unlawful purpose of using internet and wire to intentionally defraud Compliance Firm and [Plaintiff] of money." FAC ¶ 186. The FAC then identifies "specific schemes and instances" that Plaintiff says make up the "pattern of racketeering

activity," *id.* ¶ 187, beginning (temporally-speaking) with the use of undocumented workers in warehouses in or about January 2018.  *See id.* ¶ 191.  That scheme, along with two others Plaintiff describes (tax fraud and a worker's compensation-related scheme), *see id.* ¶¶ 188-190, have nothing to do with Plaintiff or The Compliance Firm.  The remainder of the "schemes," which *do* have a connection to Plaintiff/The Compliance Firm, cover a period of a few months in late 2020/early 2021, up to the filing of the Compliance Action.  *See id.* ¶¶ 192(a)-193, 194, 199.[15]

Plaintiff also alleges that the alleged enterprise in question "functioned as a continuing unit because the formal and informal relationships that [*sic*] lasted for a long of [*sic*] period of time, at least from April 2018, until the date this lawsuit was filed on August 30, 2021" and that the enterprise "also qualifies as a closed-ended enterprise because the predicate acts occurred over a period exceeding a year and a half, from April 2018, to the date suit was filed."  Id. ¶¶ 211-12.  In addition, she alleges that the enterprise "qualifies as an open-ended enterprise" because "it was actively continuing to commit predicate acts as of the date of the filing of this lawsuit, including actively enforcing a default judgment against Compliance Firm."  *Id.* ¶ 213.  According to Plaintiff's allegations, the enterprise's past conduct "poses a threat of repetition" because "the conduct has continued post-suit" and because the enterprise members and Defendants' businesses "have been structured around fraud and schemes" as she has described them, which has "become a regular way of doing business" for the enterprise and Defendants.  *Id.* ¶¶ 214-15.

The only alleged racketeering predicates that are "related" – and certainly the only ones that are "related" to the "purpose" of the enterprise's/Defendants activities – extend over a few short months.  Plaintiff has identified no way in which the alleged "schemes" identified in paragraphs 188-191 of the FAC qualify in this regard.  Not only is the appropriately-considered temporal scope thus limited to a few short months – thereby not "extending over a substantial period of time" – and to defrauding a single entity/person,

---

[15] Paragraph 192 refers to "December 1, 2019" as the date on which Saghian, Meierhans and unidentified "Doe" defendants "devised a scheme" to withhold over $10 million in payments owed to unspecified "FN vendors," but there is absolutely no explanation for why that date is chosen (or who any such vendors are, other than Plaintiff and/or The Compliance Firm), and that date consequently appears to be a typo, as Plaintiff immediately thereafter refers to "December 1, 2020," and otherwise makes clear that her/The Compliance Firm's relationship with Defendants began at some point in the Summer of 2020.  *See* FAC ¶¶ 192, 192(a), 192(b); *see also, e.g., id.* ¶¶ 42-44.

but with the end of the relationship between Plaintiff and Defendants (outside of this continuing litigation) there is no threat of "past conduct that by its nature projects into the future with a threat of repetition."  *See Ravet v. Solomon, Ward, Seidenwurm & Smith, LLP*, No. 07 CV 0031 JM (CAB), 2007 WL 2088381, *4-5 (S.D. Cal. July 17, 2007) (indicating that "a personal vendetta against one person" implemented, for example, through "litigation brought for the improper purpose of harming" that one person, is insufficient to plead pattern); *see also United States v. Koziol*, 993 F.3d 1160, 1174 (9th Cir. 2021) (recognizing cases concluding that "RICO does not authorize suits by private parties asserting claims against business or litigation adversaries, based on litigation activities"); *First Pac. Bancorp, Inc. v. Bro*, 847 F.2d 542, 547 (9th Cir. 1988).

At a minimum, Plaintiff's Civil RICO claims therefore flounder with respect to her "pattern" allegations.  The Court sees no obvious way in which Plaintiff can change the story in this regard, and consequently will almost-certainly dismiss Plaintiff's Civil RICO claims without leave to amend.

### 5.  IIED

Plaintiff's seventh cause of action is an IIED claim.  An IIED claim under California law requires:  1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; 2) the plaintiff's suffering severe or extreme emotional distress; and 3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *See Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009); *Wassmann v. S. Orange Cty. Cmty. Coll. Dist.*, 24 Cal.App.5th 825, 852 n.4 (2018).  To be sufficiently "outrageous," conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Corales*, 567 F.3d at 571; *Belen v. Ryan Seacrest Prods., LLC*, 65 Cal.App.5th 1145, 1164 (2021).

Defendants' argument in their motion to dismiss with respect to this cause of action is that Plaintiff simply has not pled conduct that clears the high bar of "extreme and outrageous conduct."  Again, the Court must agree with Defendants.  None of the conduct or actions reflected in the 331 paragraphs incorporated into the IIED claim come close to meeting this standard.  There are threats, name-calling, refusals to pay, and termination of contracts/agreements, but this type of conduct is simply not sufficient.

Certainly it may be said that Plaintiff has not presented to the Court any case that concludes otherwise in these or similar circumstances.[16]  That the other elements of the claim may or may not be plead in an insufficiently-factual manner is effectively beside the point (though if Plaintiff attempts to amend, she should consider Defendants' criticism in that regard carefully).[17]

For the foregoing reasons, Plaintiff's IIED claim is dismissed.  While Plaintiff's allegations fall short of the necessary "extreme and outrageous" conduct necessary for such a claim, the Court is more-inclined to believe there may be room for Plaintiff to improve on this claim than on her federal forced labor, CTVPA and Civil RICO claims. However, Plaintiff's failure to even address the claim in her Opposition brief gives the Court some pause in that regard, as it might suggest abandonment/concession.  The Court will hear from the parties at oral argument whether or not to allow amendment.

### 6.  Conclusion re Motion to Dismiss

Each of the seven claims in the FAC will be dismissed.  The CTVPA and Civil RICO claims will almost-certainly be dismissed without leave to amend (assuming, with respect to the CTVPA claim, that the Court has not declined supplemental jurisdiction over the claim due to any dismissal with prejudice that might occur with respect to all of the Civil RICO and federal forced labor claims[18]).  Unless Plaintiff can convince the

---

[16] Indeed, Plaintiff's Opposition brief does not even discuss her IIED claim.  Some courts have concluded or recognized that false and malicious accusations can constitute sufficiently-outrageous conduct, but – ignoring, for the moment, Plaintiff's failure to respond to this motion with respect to her IIED claim – at this point in time Plaintiff has not sufficiently alleged at least the falsity of any accusations made against her.  *See Williams v. Integon Nat'l Ins. Corp.*, 191 F.Supp.3d 1126, 1133 (S.D. Cal. 2016); *Mitan v. Feeney*, 497 F.Supp.2d 1113, 1125 (C.D. Cal. 2007); *Ochoa v. Superior Court*, 39 Cal.3d 159, 165 n.5 (1985).  *But see Walker v. Boeing Corp.*, 218 F.Supp.2d 1177, 1184 (C.D. Cal. 2002) ("Defamatory accusations are insufficient to give rise to an action for intentional infliction of emotional distress."); *Comstock v. Aber*, 212 Cal.App.4th 931, 954 (2012).

[17] While Defendants also argue that Plaintiff's IIED claim is barred by the litigation privilege, it is by no means clear that the full range of conduct Plaintiff has in mind consists of activity that would fall within the litigation privilege.  The Court therefore rejects that argument as a basis for a dismissal of the claim in its entirety, and it will not *partially* dismiss the claim (though the claim in this regard has been partially-stricken via the anti-SLAPP motion under the approach the California Supreme Court took in *Baral*.

[18] If the Court dismisses claims 1-3 and 5-6 without leave to amend, it will decline supplemental jurisdiction over Plaintiff's remaining claims at that point.  Though Plaintiff makes an attempt to allege the existence of diversity jurisdiction, *see* FAC ¶¶ 31(a), 32, her allegations in this regard are insufficient, and there plainly is not complete diversity between all of the parties to the case (even with Plaintiff having failed to properly allege the citizenship of all parties).  *See id.* FAC ¶¶ 18, 22-24, 26, 28.  In fact, if that is the route the Court is likely to take, it may wind up dismissing Plaintiff's federal claims without leave to

Court that paragraphs 78-82 of the FAC (or a further amendment of the allegations contained therein) can provide her with a colorable claim, her federal forced labor claims will suffer the same result.  If there is a continuing basis for federal question jurisdiction in this case, the Court will most-likely give Plaintiff leave to amend her IIED claim.  If there is no longer a continuing basis for federal question jurisdiction, the Court will simply dismiss Plaintiff's CTVPA and IIED claims without prejudice to Plaintiff re-filing those claims in an appropriate state court.

---

amend, declining supplemental jurisdiction over her remaining state-law claims, and then denying Defendants' current anti-SLAPP motion as moot.